1

Leon B. Silver  (SBN:  012884)
Andrew S. Jacob  (SBN:  022516)

2

**GORDON & REES LLP**
111 W. Monroe Street, Suite 1600

3

Phoenix, AZ 85003
Telephone:  (602) 794-2460

4

Facsimile:  (602) 265-4716
lsilver@gordonrees.com

5

ajacob@gordonrees.com
*Attorneys for Plaintiffs ~~Norton~~*

6

7

**IN THE UNITED STATES DISTRICT COURT**

8

**FOR THE DISTRICT OF ARIZONA**

9

Bret Frimmel; Pishka, Inc.; and BRF
Enterprises, LLC; Lisa and William Bruce

10

Norton, wife and husband~~,~~;

11

                                  *Plaintiffs,*

12

            vs.

13

Joseph M. and Ava Arpaio, husband and wife,
personally and in the capacity as Sheriff of

14

Maricopa County; Joshua and Jane Doe
Henderson, husband and wife, personally and

15

in the capacity as a Deputy Sheriff  of
Maricopa County; Brandon and Jane Doe

16

Jones, husband and wife, personally and in

17

the capacity as a Deputy Sheriff  of Maricopa
County; Christopher and Jane Doe Hegstrom,

18

husband and wife, personally and in the
capacity as a Deputy Sheriff  of Maricopa

19

County; Daniel and Jane Doe Gandara,

20

husband and wife, personally and in the
capacity as a Deputy Sheriff  of Maricopa

21

County; Sean and Jane Doe Locksa, husband
and wife, personally and in the capacity as a

22

Deputy Sheriff  of Maricopa County; and
Christopher and Jane Doe Hechavarria,

23

husband and wife, personally and in the
official capacity as a Deputy Sheriff  of

24

Maricopa County; and Maricopa County,

25

Arizona

26

                                  *Defendants.*

27

28

) CASE  2-15-cv-00087-SPL
)
)
)
)
) **~~FIRST~~SECOND AMENDED**
) **COMPLAINT (CORRECTED)**
)
) **(Federal Question:**
)
)  **42 USC §§ ~~1983~~1981, 1983,  1985, &**
) **1988)**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

-1-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

Plaintiffs ~~Lisa and~~Bret Frimmel, Pishka, Inc., BRF Enterprises, LLC, and Lisa & William Bruce Norton allege as follows:

**PRELIMINARY STATEMENT**

1.      This is an action seeking compensatory and punitive damages for wrongful arrest and wrongful prosecution in violation of 42 U.S.C. §§ ~~1983,~~1981, 1983 & 1985, attorneys' fees pursuant to § 1988, and for torts arising from gross negligence and intentional infliction of emotional distress.

2.      These claims arise from specific harm that occurred during the course of the ongoing notorious, illegal and abusive attempts by Maricopa County Sheriff's Office ("MCSO"), a law enforcement agency of Defendant Maricopa County, to enforce immigration laws in the face of a federal injunction prohibiting them from such enforcement. MCSO has openly demonstrated contempt for this federal court order, calling it "ludicrous" and "absurd," and referring to the order itself as "crap."

3.      In furtherance of its feud with the federal court, in July ~~2013,~~2013 MCSO raided Mr. Frimmel's home and two restaurants that operate under the name "Uncle Sam's" ~~and Mr. Frimmel's home~~ to investigate alleged employment of aliens who lack federal authorization to work in the United States of America ("Unauthorized Aliens"), something that was prohibited by the aforementioned court order, under the guise of investigating whether there was so-called "identity theft."

4.      Plaintiff Bret Frimmel owns and operates Uncle Sam's restaurants through ~~various~~other Plaintiff entities.

5.      Within a few days after the aforementioned raids, the U.S. Department of Justice reached out to Mr. Frimmel to see if he would cooperate in its investigation of MCSO and Sheriff Arpaio.

6.      Upon information and belief, MCSO arrested ~~Mr.~~Plaintiffs Bret Frimmel and ~~Plaintiff~~ Lisa Norton, the general manager of the Uncle Sam's restaurants, after it

-2-

1   learned that Mr. Frimmel was communicating with the Department of Justice in regard to

2   that investigation.

3       7.      MCSO charged Mr. Frimmel, in regard to four specific former Uncle Sam's

4   employees, with: (a) knowingly taking the identity of another; (b) knowingly trafficking in

5   the identity of another; (c) forgery; and (d) conspiracy to commit taking the identity of

6   another.

7       8.      ~~7.~~ MCSO charged Mrs. Norton, in regard to the same four specific former

8   Uncle Sam's employees, with: (a) knowingly: ~~(a)~~ taking the identity of another; and (b)

9   conspiracy to commit taking the identity of another.

10      9.      ~~8.~~ Upon information and belief, MCSO arrested and charged Mr. Frimmel

11  and Mrs. Norton as retaliation for Mr. Frimmel communicating with the Department of

12  Justice and/or to dissuade ~~Mr. Frimmel and her~~ them from further communicating with the

13  Department of Justice.

14      10.     ~~9.~~ The Maricopa County Attorneys' Office ("MCAO") obtained grand jury

15  indictments of Mr. Frimmel and Mrs. Norton solely based on the testimony of Defendant

16  Henderson, a MCSO Detective.

17      11.     ~~10.~~ In the course of its investigation, MCSO and individual defendants made

18  false and misleading statements in both search warrant affidavits and probable cause

19  statements and gave materially false and misleading testimony to the grand jury that

20  indicted Mr. Frimmel and Mrs. Norton.

21      12.     ~~11.~~ In fact, MCSO's investigation failed to find evidence that could establish

22  that either Mr. Frimmel or Mrs. Norton had the requisite knowledge element of the charged

23  offenses.

24      13.     ~~12.~~ Regardless, Sheriff Arpaio engaged in a media campaign in which he

25  knowingly and/or recklessly defamed Mr. Frimmel and Mrs. Norton with false allegations

26  of illegal activity.

27      14.     ~~13.~~ As a result of Defendants' wrongful conduct, Mr. Frimmel and Mrs.

28  Norton suffered, and ~~continues~~ continue to suffer, emotional distress, reputational damage,

*First* Second Amended Complaint, *Norton* *Frimmel* v. Arpaio

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

and financial damage, including unnecessarily incurring ~~hundreds of thousands of~~more than a million dollars in attorneys' fees and other expenses defending against unfounded charges.

15. ~~14.~~ Plaintiffs bring this action seeking substantial compensatory damages to remedy, among other things, injury to business interests and personal reputation, personal injuries including emotional distress damages, loss of consortium, lost past and future earnings and profits, and attorneys' fees and expenses incurred defending against ~~the~~ wrongful arrest and prosecution.

16. ~~15.~~ Plaintiffs also seek substantial punitive damages to deter Defendants and others similarly situated from engaging in such abusive use of their powers to investigate and prosecute crimes.

**JURISDICTION AND VENUE**

17. ~~16.~~ This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343. This Court has supplemental jurisdiction over the state law claims pursuant 28 U.S.C. § 1367.

18. ~~17.~~ Venue is proper in this Court pursuant to 28 U.S.C. § 1391b(1) & (2).

**PARTIES**

19. ~~18. Plaintiffs Lisa and William Bruce Norton are a married couple who reside~~Plaintiff Bret Frimmel is an Arizona citizen who resides in Maricopa County, Arizona.

20. ~~19.~~ Mr. ~~Bret~~ Frimmel owns Plaintiff Pishka, Inc., an Arizona corporation.

21. ~~20.~~ Pishka, Inc. owns and operates restaurants located in Maricopa County that do business as "Uncle Sam's."

22. Mr. Frimmel also owns Plaintiff BRF Enterprises, LLC, an Arizona limited liability company.

23. BRF Enterprises owns real estate and is the landlord to Uncle Sam's and other tenants.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-4-

1   24.     Plaintiffs Lisa and William Bruce Norton are married and reside in Maricopa

2   County, Arizona.

3       25.     ~~21.~~ Mrs. Norton is the manager of the Uncle Sam's restaurants.

4       26.     ~~22.~~ MCSO is a law enforcement agency of Maricopa County, Arizona.

5       27.     ~~23.~~ Defendant Joseph M. Arpaio is the Sheriff of Maricopa County, Arizona.

6       28.     ~~24.~~ Sheriff Arpaio is sued in both his personal and official capacities.

7       29.     ~~25.~~ Sheriff Arpaio is the final decision maker for Maricopa County in the

8   area of law enforcement.

9       30.     ~~26.~~ Sheriff Arpaio is responsible for setting and implementing MCSO

10  policies and practices that are used to prosecute and deter the employment of Unauthorized

11  Aliens.

12      31.     ~~27.~~ Sheriff Arpaio is responsible for setting and implementing MCSO

13  policies and practices that tolerate, if not encourage, MCSO spokespersons to knowingly

14  and/or recklessly defame the targets of MCSO investigations with unwarranted and

15  unsubstantiated accusations of wrongdoing, where doing so furthers his political agenda.

16      32.     ~~28.~~ Sheriff Arpaio is responsible for setting and implementing MCSO

17  policies and practices that tolerate, if not encourage, MCSO detectives to provide

18  materially false and/or incomplete affidavits in support of search warrants, where doing so

19  furthers his political agenda.

20      33.     ~~29.~~ Sheriff Arpaio is responsible for setting and implementing MCSO

21  policies and practices that tolerate, if not encourage, MCSO detectives to provide

22  materially false and/or incomplete testimony to grand juries, where doing so furthers his

23  political agenda.

24      34.     ~~30.~~ Upon information and belief, Sheriff Arpaio participated in the

25  authorization, planning, and supervision of the actions of MCSO employees involved in the

26  events described in this Complaint.

27      35.     ~~31.~~ To the extent that Sheriff Arpaio acted within the scope of his

28  employment, Maricopa County is liable for damages attributed to his actions.

~~First~~Second Amended Complaint, ~~Norton~~Frimmel v. Arpaio

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

36.   32. To the extent that Sheriff Arpaio acted outside the scope of his official capacity, he is personally liable for the damages attributable to those actions.

37.   33. Sergeant Joshua Henderson is a Maricopa County law enforcement officer.

38.   34. Sergeant Henderson is sued in both his official and individual capacities.

39.   35. To the extent that Sergeant Henderson acted within the scope of his employment, Maricopa County is liable for damages attributed to his actions.

40.   36. To the extent that Sergeant Henderson acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

41.   37. Defendant Lieutenant Brandon Jones is a Maricopa County law enforcement officer working as an MCSO public information officer.

42.   38. Lieutenant Jones is sued in both his official and individual capacities.

43.   39. To the extent that Lieutenant Jones acted within the scope of his employment, Maricopa County is liable for damages attributed to his actions.

44.   40. To the extent that Lieutenant Jones acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

45.   41. Defendant Deputy Christopher Hegstrom is a Maricopa County law enforcement officer working as an MCSO spokesman.

46.   42. Deputy Hegstrom is sued in both his official and individual capacities.

47.   43. To the extent that Deputy Hegstrom acted within the scope of his employment, Maricopa County is liable for damages attributed to his actions.

48.   44. To the extent that Deputy Hegstrom acted outside the scope of his employment, he is personally liable for damages attributed to his actions.

49.   Defendant Daniel Gandara is a Maricopa County law enforcement officer working as an MCSO detective.

50.   Detective Gandara is sued in both his official and individual capacities.

51.   To the extent that Detective Gandara acted within the scope of his employment, Maricopa County is liable for damages attributed to his actions.

First Second Amended Complaint, Norton Frimmel v. Arpaio

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

1    52.     To the extent that Detective Gandara acted outside the scope of his

2    employment, he is personally liable for damages attributed to his actions.

3    53.    45. Defendant Daniel GandaraSean Locksa is a Maricopa County law

4    enforcement officer working as an MCSO detective.

5    54.    46. Detective GandaraLocksa is sued in both his official and individual

6    capacities.

7    55.    47. To the extent that Detective GandaraLocksa acted within the scope of his

8    employment, Maricopa County is liable for damages attributed to his actions.

9    56.    48. To the extent that Detective GandaraLocksa acted outside the scope of

10   his employment, he is personally liable for damages attributed to his actions.

11   57.    49. Defendant Christopher Hechavarria is a Maricopa County law

12   enforcement officer working as an MCSO detective.

13   58.    50. Detective Hechavarria is sued in both his official and individual

14   capacities.

15   59.    51. To the extent that Detective Hechavarria acted within the scope of his

16   employment, Maricopa County is liable for damages attributed to his actions.

17   60.    52. To the extent that Detective Hechavarria acted outside the scope of his

18   employment, he is personally liable for damages attributed to his actions.

19   61.    53. Sheriff Arpaio and MCSO failed to adequately train the aforementioned

20   detectivesofficers and spokespersons in conducting the investigation of the kinds of

21   offenses alleged against Mr. Frimmel and Mrs. Norton and in making public

22   pronouncement concerning such investigations.

23   62.    54. Sheriff Arpaio and MCSO failed to adequately supervise the

24   aforementioned detectivesofficers and spokespersons in their investigation of Mr. Frimmel

25   and Mrs. Norton and in the making of public pronouncements concerning those

26   investigations.

27

28

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

63. 55. Defendant Maricopa County, Arizona, is a political subdivision of the State of Arizona that can sue and be sued in its own name and is liable for the acts and omissions of MCSO, a non-jural entity.

64. 56. Upon information and belief, Maricopa County through MCSO has agreed with, accepted, acquiesced in, and sanctioned Defendants' actions that are alleged herein.

## GENERAL ALLEGATIONS

### Premises Search Warrants

65. 57. On July 16, 2013, MCSO obtained three search warrants (the "Premises Search Warrants") using a materially false and incomplete affidavit provided by Sergeant Henderson.

66. 58. True and correct copies of the applications for the Premises Search Warrants were are attached hereto as Exhibits "A," "B," and "C" to the Complaint. (Doc. 1-1 at 1-20 (Ex. "A"); id. at 21-40 (Ex. "B"); id. at 41-66 (Ex. "C")). ."

67. 59. Sergeant Henderson did not state any of the following material facts, all of which were known to him, in the affidavits that he used to apply for the Premises Search Warrants:

a. That the so-called tip instigating the investigation came from Said Ishak and Denee Porter Ishak, married ex-employees of Uncle Sam's;

b. That Said Ishak and Denee Porter Ishak had strong motivation to fabricate lies about Mr. Frimmel, Mrs. Norton and Uncle Sam's;

c. That Said Ishak had earlier been arrested for felony theft of funds from Uncle Sam's on August 2, 2012 2012, and was convicted of those charges in early 2013;

d. That Denee Porter Ishak placed her tip call to MCSO the same day that her husband was arrested;

e. That Denee Porter Ishak, was a convicted criminal (possession of drug paraphernalia);

-8-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

f.  That neither of the Ishaks had worked at the Phoenix Uncle Sam's;

g.  That  Denee Porter Ishak quit working at Uncle Sam's in January 2011 after Mr. Frimmel admonished her for poor work behavior;

h.  That Denee Porter Ishak subsequently lost a claim against Uncle Sam's for unemployment benefits;

i.  That Said Ishak did not work at any Uncle Sam's after ~~the third quarter of~~June 2012;

j.  That neither Said Ishak nor Denee Porter Ishak had any material information regarding Mr. Frimmel's personal residence;

k.  That Arizona Department of Economic Security records did not link any of Uncle Sam's business operations to Mr. Frimmel's home address; and

l.  That MCSO surveillance of Mr. Frimmel's home showed no business activity.

68.  ~~60.~~ Instead, Sergeant Henderson made the following materially false statements in the affidavits that he used to apply for the Premises Search Warrants:

a.  That MCSO detectives saw Uncle Sam's employee vehicles at Mr. Frimmel's home; and

b.  That County Assessor records linked Mr. Frimmel's home to the Uncle Sam's business.

69.  ~~61.~~ All three of the aforementioned affidavits made in support of the Premises Search Warrants, therefore, had material omissions of facts that showed ~~the Ishaks,~~ the sole source of allegations that Mr. Frimmel and Mrs. Norton knew that Uncle Sam's employees were Unauthorized Aliens, the Ishaks, were highly unreliable informants.

70.  ~~62.~~ All three of the aforementioned affidavits made in support of the Premises Search Warrants, therefore, contained materially false statements that were the sole basis linking Mr. Frimmel's personal residence to the business of Uncle Sam's restaurants.

-9-

1   71.   63. In a published special action opinion, the Arizona Court of Appeals ruled

2   that the evidence obtained using the three Premises Search Warrants is inadmissible if the

3   allegations that Mr. Frimmel made in his briefing are proven at an evidentiary hearing.

4   *Frimmel v. Sanders*, 2014 Ariz. App. LEXIS 227, 23-24, ¶ 43, 700 Ariz. Adv. Rep. 28

5   (App. Nov. 25, 236 Ariz. 232, 242, ¶ 43, 338 P.3d 972, 982 (App. 2014).

6   64.   This evidentiary hearing was held on January 30, 2015.

7   72.   65. On July 17, 2013, MCSO used the three Premises Search Warrants to raid

8   two restaurants that operate under the name "Uncle Sam's" and Mr. Frimmel's home.

9   73.   66. MCSO conducted these raids to determine whether Uncle Sam's was

10  employing Unauthorized Aliens who took were working at Uncle Sam's using the identities

11  of another others.

12  74.   67. During those raids, MCSO arrested nine employees for being

13  Unauthorized Aliens who took working using the identities of another others.

14  75.   68. MCSO charged four of these nine arrested employees with identity theft.

15  76.   69. MCSO released the other five arrested employees without charges.

16  77.   After reviewing evidence and interviewing a number of Uncle Sam's

17  employees, Sergeant Henderson told Mr. Frimmel and his attorney that he considered Mr.

18  Frimmel a victim of Uncle Sam's employees' use of the identities of others and related

19  crimes, and that he did not suspect Mr. Frimmel of any crimes.

20  78.   70. Mr. Frimmel and Mrs. Norton was only were later charged with crimes

21  related only to the employment of four former Uncle Sam's employees (the "Cooperating

22  Witnesses").

23  79.   71. These Cooperating Witnesses each entered into plea agreements for one

24  count of identity theft.

25  80.   72. In these plea agreements, the Cooperating Witnesses agreed to cooperate

26  with the MCSO investigation and prosecution of Mr. Frimmel and Mrs. Norton.

27  81.   73. MCSO had federal authorities provide the Cooperating Witnesses the

28  benefits of deferred deportation status and authorization to work in the United States.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-10-

**MCSO Investigation and Arrest of Plaintiffs**

82. 74. On May 10, 2012, the Department of Justice filed a Complaint in federal court alleging that MCSO and Sheriff Arpaio "have engaged and continue to engage in a pattern or practice of unlawful discriminatory police conduct directed at Latinos in Maricopa County."

83. Upon information and belief, at all times relevant to this action, MCSO and Sheriff Arpaio were conducting a clandestine investigation seeking to prove that the Department of Justice was conspiring with the federal courts and others to prevent them from investigating and prosecuting alien Latinos from working in Maricopa County, without federal authorization.

84. 75. A few days after MCSO's July 17, 2013, raid on the Uncle Sam's restaurants, a Department of Justice investigator, Sarah Lopez, contacted Mr. Frimmel to ask for his assistance with the Department's ongoing investigation of MCSO, related to the May 10, 2012, litigation.

85. 76. Sometime between July 17, 2013, and January 22, 2014, MCSO learned that Mr. Frimmel was cooperating with the Department of Justice in its investigation of MCSO's unlawful discriminatory police conduct directed at Latinos in Maricopa County.

86. 77. On January 22, 2014, MCSO arrested both Mr. Frimmel and Mrs. Norton, the general manager of the Uncle Sam's restaurants.

87. 78. MCSO charged Mrs Mr. Frimmel with knowingly taking the identity of another, conspiracy to take the identity of another, forgery, and knowingly trafficking in the identity of another.

88. MCSO charged Ms. Norton with knowingly taking the identity of another and conspiracy to take the identity of another.

89. 79. Upon information and belief, MCSO made the aforementioned arrests and charges to retaliate against arrested and charged Mr. Frimmel and Mrs. Norton for cooperating to retaliate for what MCSO perceived as their cooperation with the Department of Justice investigation of MCSO.

-11-

1    90.    80. Upon information and belief, MCSO made the aforementioned arrests

2    and charges to dissuade Mr. Frimmel and Mrs. Norton from further cooperating with the

3    Department of Justice investigation of MCSO.

4                              **Cell Phone Search Warrants**

5    91.    81. MCSO obtained three search warrants of cell phone data and records (the

6    "Cell Phone Search Warrants").

7    92.    82. On January 22, 2014, MCSO obtained a search warrant for Mrs. Norton's

8    cell phone records.

9    93.    83. A true and correct copy of the supporting affidavit for the

10   aforementioned search warrant was is attached to the Complaint hereto as Exhibit "D."

11   (Doc. 1-1 at 67-70.)

12   94.    84. On February 4, 2014, MCSO obtained a search warrant for Mr.

13   Frimmel's cell phone records.

14   95.    85. A true and correct copy of the supporting affidavit for the

15   aforementioned search warrant was is attached to the Complaint hereto as Exhibit "E." (Id.

16   at 71-82.)

17   96.    86. On January 22, 2014, MCSO obtained a search warrant allowing them to

18   extract information directly from the cellular phones belonging to Mr. Frimmel and Mrs.

19   Norton.

20   97.    87. A true and correct copy of the supporting affidavit for the

21   aforementioned search warrant was is attached to the Complaint hereto as Exhibit "F." (Id.

22   at 83-93.)

23   98.    88. Detective Hechavarria falsely stated in one Cell Phone Search Warrant

24   affidavit that Mrs. Norton and Mr. Frimmel committed crimes on or about September 30,

25   2013, something not alleged anywhere else in the criminal case, nor supported by any

26   evidence. (Ex. F at 4.)

27   99.    89. Detective Gandara Locksa falsely stated in a Cell Phone Search Warrant

28   affidavit that Mrs. Norton and Mr. Frimmel committed crimes on or about October 1, 2013,

-12-

1 something neither alleged anywhere else in the criminal case, nor supported by any
2 evidence. (Ex. ~~D~~E at. 4.)

3    100.    ~~90.~~ The only evidence that MCSO produced of statements by the four
4 Cooperating Witnesses is recordings and transcripts of free-talk interviews.

5    101.    Detective Gandara falsely stated in a Cell Phone Search Warrant affidavit
6 that the Cooperating Witnesses made "collaborating statements" that Mrs. Norton and Mr.
7 Frimmel knowingly hired Unauthorized Aliens and conspired to commit identity theft and
8 forgery. (Ex. D at.6.)

9    102.    ~~91.~~ Detective ~~Gandara~~Locksa falsely stated ~~in~~ a Cell Phone Search Warrant
10 affidavit that the Cooperating Witnesses made "collaborating statements" that Mrs. Norton
11 and Mr. Frimmel knowingly hired Unauthorized Aliens and conspired to commit identity
12 theft and forgery. (Ex. ~~D~~E at. 6.)

13    103.    ~~92.~~ In fact, none of the four Cooperating Witnesses made such statements in
14 their free-talk interviews.

15    104.    ~~93.~~ Rather, each of the Cooperating Witnesses ~~each~~ stated that they did not
16 know whether Mrs. Norton and Mr. Frimmel had such knowledge.

17    105.    ~~94.~~ Detectives Gandara, Locksa, and Hechavarria falsely stated in Cell
18 Phone Search Warrant affidavits that the Cooperating Witnesses "were convicted of
19 identity theft and forgery charges." (Ex. D at 6; Ex. E at 6; & Ex. F at 7.)

20    106.    ~~95.~~ The court docket shows the convictions of the Cooperating Witnesses.

21    107.    ~~96.~~ A true and correct copy of this court docket ~~was~~is attached ~~to the~~
22 ~~Complaint~~hereto as Exhibit "G." ~~(Doc. 1-1 at 94-95.)~~

23    108.    ~~97.~~ This court docket shows that the Cooperating Witnesses were only
24 convicted of identity theft, not forgery. (Ex. G at 1.)

25    109.    ~~98.~~ Detective Hechavarria falsely stated in his affidavit that "illegal drugs"
26 and "illegal drug trafficking" were part of the criminal activity under investigation. (Ex. F
27 at 7-8.)

28

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

110. ~~99.~~ Detective Hechavarria omitted from his affidavit that he had no evidence that cell phones (or any telephones) were used to facilitate any of the alleged criminal activity.

111. ~~100.~~ Detective Hechavarria falsely stated in his affidavit that Mrs. Norton "owned" Uncle Sam's. (Ex. F at 7.)

112. ~~101.~~ All ~~of the aforementioned~~three affidavits made in support of the Cell Phone Search Warrants failed to disclose:

    a. That Mr. Frimmel had been asked to cooperate with the Department of Justice investigation of MCSO;

    b. That disgraced MCSO detective Ramon Armendariz was involved in the investigation at the Peoria Uncle Sam's location, where three of the four ~~convicted employees~~Cooperating Witnesses were working;

    c. That the State obtained deferred deportation status and work authorization documents for the Cooperating Witnesses; and

    d. That there was no evidence that cell phones were used in the hiring process at Uncle Sam's.

113. ~~102.~~ All three of the aforementioned affidavits made in support of the Cell Phone Search Warrants, therefore, contained materially false and misleading statements.

114. ~~103.~~ Without the false and misleading statements that Sergeant Henderson and Detectives Hechavarria, ~~and~~ Gandara, and Locksa made in their Cell Phone Search Warrant affidavits, those affidavits would not have made the requisite showing of probable cause.

115. ~~104.~~ In a published special action opinion, the Arizona Court of Appeals ruled that all of the evidence obtained using the three Cell Phone Search Warrants is inadmissible if the allegations that Mr. Frimmel made in his briefing are proven at an evidentiary hearing. *Frimmel v. Sanders*, ~~2014 Ariz. App. LEXIS 227, 23-24, ¶ 43, 700 Ariz. Adv. Rep. 28 (App. Nov. 25,~~236 Ariz. 232, 242, ¶ 43, 338 P.3d 972, 982 (App. 2014).

~~105.     This evidentiary hearing was held on January 30, 2015.~~

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

**Lack of Probable Cause to Arrest**

116. 106. Sergeant Henderson made a Probable Cause Statement to support the arrest of Mr. Frimmel and Mrs. Norton.

117. 107. A true and correct copy of the aforementioned Probable Cause Statement was is attached to the Complaint hereto as Exhibit "H." (Doc. 1-1 at 96-99.)

118. 108. The Probable Cause Statement contains the following materially false factual assertions, assertions for which Sergeant Henderson had no evidence whatsoever:

a. That Mr. Frimmel entered four social security numbers into his computer and transmitted them to ADP while knowing these numbers were fictitious or forged;

b. That five of the individuals arrested on July 17, 2013 came forward with information that Mr. Frimmel knowingly committed forgery or identity theft and/or conspiracy to commit forgery and identity theft;

c. That both current and former Uncle Sam's employees stated that Mr. Frimmel knowingly hired employees that were using forged identities;

d. That Sergeant Henderson was contacted by four former Uncle Sam's employees with information consistent with information provided by the five arrested employees;

e. That one Uncle Sam's employee told Sergeant Henderson that Mr. Frimmel instructed him to forge the hiring date on another employee's W-4 to say he was hired in 2007, rather than 2010;

f. That Uncle Sam's employees claimed that Mr. Frimmel was present during the hiring process and that he hired them without requiring them to provide a valid identification or social security number;

g. That Mr. Frimmel knew some Uncle Sam's employees were working without current food handler's cards;

h. That Uncle Sam's employees were advised to sign and date blank "applications" and tax forms;

-15-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

i. h. That Uncle Sam's later provided social security numbers that were entered into those applications and tax forms;

j. i. That Uncle Sam's employees heard Mr. Frimmel state that he didn't care about employees' immigration status;

k. j. That Uncle Sam's employees heard Mr. Frimmel call restaurant staff "illegals";

l. k. That Mrs. Norton made derogatory statements regarding Latino workers; and

m. l. That Mrs. Norton directed that work applications be given to Latinos (as if she had discretion to withhold applications from them).

119. 109. Sergeant Henderson and the MCSO made these statements either knowing them to be materially false or with a reckless disregard for the truth.

120. 110. In fact, no Uncle Sam's employee (past or present) claimed to have been hired by either Mr. Frimmel or Mrs. Norton.

121. 111. No Uncle Sam's employee (past or present) claimed that Mr. Frimmel or Mrs. Norton participated were present when they were hired.

122. 112. All Uncle Sam's employees interviewed by MCSO stated that lower level managers other than Mr. Frimmel or Mrs. Norton hired new employees.

123. 113. All Uncle Sam's employees interviewed by MCSO stated that lower level managers other than Mr. Frimmel or Mrs. Norton obtained the requisite proof of identity and authorization to work from new employees.

124. 114. All but one of the Uncle Sam's employees interviewed by MCSO stated that they were required to provide the requisite proof of identity and authorization documents as part of Uncle Sam's hiring process.

125. 115. Several employees, including long time managers, told MCSO that Uncle Sam's required valid identification for all new hires and that Mr. Frimmel would fire a manager who hired someone without valid identification.

-16-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

126.     No employee interviewed by MCSO said they signed a blank employment application at the direction of Uncle Sam's.

127.     ~~116.~~ MCSO did not obtain any evidence that Mr. Frimmel was personally involved in accepting identification documents from any employee or that he knew that any such documents were false.

128.     ~~117.~~ MCSO did not obtain any evidence that Mrs. Norton was personally involved in accepting identification documents from any employee or that she knew that any such documents were false.

129.     To be guilty of trafficking in the identity of another Mr. Frimmel had to knowingly transmit identifying information without the consent of the person. A.R.S. § 13-2010; *see also id.* at § 13-2008 (knowingly taking another's identity without consent for unlawful purpose); *id.* at § 13-2002 (falsely made, completed, or altered a written instrument with intent to defraud); *id.* at § 13-1003 (knowledge of criminality required for conspiracy).

130.     MCSO did not obtain any evidence that Mr. Frimmel knew that the Cooperating Witnesses provided false or forged identification documents.

131.     MCSO did not obtain any evidence that Mr. Frimmel wrote anything on any employee's application.

132.     MCSO did not obtain any evidence that Mr. Frimmel caused or encouraged any employee-applicant or hiring-manager to make any false entries on an employment application.

133.     In the one and only instance identified by MCSO where an employee's W-4 had an incorrect date, Mr. Frimmel caused the correct date of hire to be entered into Uncle Sam's payroll system.

134.     Consequently, MCSO did not have any basis to prove the requisite knowledge element of any of the offenses for which it arrested and charged Mr. Frimmel.

135.     MCSO did not obtain any evidence that Mrs. Norton knew that the Cooperating Witnesses provided false or forged identification documents.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

136.     MCSO did not obtain any evidence that Mrs. Norton wrote anything on any employee's application.

137.     MCSO did not obtain any evidence that Mrs. Norton caused or encouraged any employee-applicant or hiring-manager to make any false entries on an employment application.

138.     Consequently, MCSO did not have any basis to prove the requisite knowledge element of any of the offenses for which it arrested and charged Mrs. Norton.

**Defamation**

139.     At all times relevant to this action, Sheriff Arpaio personally and directly supervised the MCSO public relations department and its spokespersons.

140.     ~~118.~~  Immediately after arresting Mr. Frimmel and Mrs. Norton, Sheriff Arpaio and MCSO spokespersons publicly defamed them by falsely stating that Mr. Frimmel and Mrs. Norton knowingly hired Unauthorized Aliens at Uncle Sam's.

141.     ~~119.~~ Sheriff Arpaio and MCSO spokespersons provided several interviews for television, spoke with newspaper reporters, and issued press releases in which they repeatedly made defamatory false statements regarding ~~the~~ Mr. Frimmel and Mrs. Norton.

142.     ~~120.~~ MCSO and Sheriff Arpaio also posted defamatory false statements on social media, including Sheriff Arpaio's Facebook page.

143.     ~~121.~~ These defamatory false statements included, among other things, false statements that Mr. Frimmel and Mrs. Norton: (a) committed criminal offenses; (b) knowingly hired undocumented workers; (c) assisted undocumented workers in obtaining false documents; and (d) intentionally solicited Unauthorized Aliens to work at Uncle Sam's.

144.     ~~122.~~ A January 22, 2014, MCSO press release stated: "Maricopa County Sheriff's detectives have questioned several witnesses who claimed to have first-hand knowledge that Norton and Frimmel colluded together to acquire false identification documents in order to provide those IDs to undocumented workers wishing to be employed at both restaurants."

-18-

145.   ~~123.~~ A true and correct copy of this press release ~~was~~is attached ~~to the Complaint~~hereto as Exhibit "I." ~~(Doc. 1-1 at 100-01.)~~

146.   ~~124.~~ At the time, MCSO knew that it had no such evidence.

147.   ~~125.~~ At the time, MCSO knew that it had no such witnesses.

148.   ~~126.~~ Major newspapers and television stations in Arizona repeated the false statements made in this MCSO press release and otherwise made by MCSO, Arpaio, Jones and/or Hegstrom on January 22, and 23, 2014, in the following publications that are available on-line:

    a. 01/22/14 ABC 15 article "Uncle Sam's Restaurant Owner Bret Frimmel Arrested for Identity Theft, according to MCSO"

       http://www.abc15.com/news/region-west-valley/peoria/uncle-sams-restaurant-owner-bret-frimmel-arrested-for-identity-theft-according-to-mcso

    b. 01/22/14 Arizona Newszap article "Sheriff's Office arrests Uncle Sam's Owner"

       http://arizona.newszap.com/westvalley/129058-114/sheriffs-office-arrests-uncle-sams-owner-at-peoria-location

    c. 01/23/14 Arizona Daily Independent article "Uncle Sam's Owner Arrested for Identity Theft

       http://www.arizonadailyindependent.com/2014/01/23/uncle-sams-owner-arrested-for-identity-theft/

    d. 01/23/14 AZ Central article "Records: Info from Uncle Sam's Restaurant Workers Led to Owner's Peoria Arrest"

       http://www.azcentral.com/community/peoria/articles/20140123peoria-uncle-sams-owner-arrest-abrk.html

    e. 01/23/14 AZfamily.com article "Uncle Sam's Owner Appears in Court, Released on Own Recognizance"

       http://www.azfamily.com/news/Police-Uncle-Sams-owner-knowingly-hired-illegal-workers-forged-documents-241704801.html

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

*First*Second Amended Complaint, *Norton*Frimmel v. Arpaio

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

f.  01/23/14 AZfamily.com article "Uncle Sam's restaurant Owner Arrested for IDTheft"

http://www.azfamily.com/news/Uncle-Sams-restaurant-owner-arrested-for-ID-theft-241533741.html

g.  01/23/14 My Fox Phoenix article "Uncle Sam's Owner Arrested for Alleged ID Trafficking"

http://www.myfoxphoenix.com/story/24529851/2014/01/23/uncle-sams-owner-arrested-for-alleged-id-trafficking

h.  01/23/14 New Times article "Joe Arpaio's Workplace Raid of Uncle Sam's Results in First Arrest of Business Owner"

http://blogs.phoenixnewtimes.com/valleyfever/2014/01/joe_arpaio_immigration_raid_uncle_sams_employer.php

i.  01/23/14 KPHO, Channel 5 article "AZ Restaurant Owner Accused of Forging IDs for Employees"

http://www.kpho.com/story/24530789/az-restaurant-owner-accused-of-forging-ids-for-employees

j.  01/23/14 Video from Channel 3 of coverage of Frimmel arrest

http://www.youtube.com/watch?v=BbDEKExbvxs

149.   127. Sheriff Arpaio provided a televised interview regarding the arrests at Uncle Sam's that aired on local Phoenix TV station on January 22, 2014, and was reposted online at the following link: http://www.azfamily.com/news/10-arrested-in-Uncle-Sams-ID-theft-investigation-216084731.html

150.   128. The news report that used this video mentioned Uncle Sam's by name, and showed footage of the July 17, 2014 raid.

151.   129. This news report showed Sheriff Arpaio stating that MrsMr. NortonFrimmel "was knowingly hiring employees with fake social security numbers."

-20-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

152.   This news report showed Sheriff Arpaio stating that Mrs. Norton "was knowingly hiring employees with fake social security numbers."

153.   ~~130.~~ Mr. Arpaio made ~~that statement~~those statements knowing that he did not have conclusive evidence that Mr. Frimmel or Mrs. Norton had such knowledge.

154.   ~~131.~~ Sheriff Arpaio and other MCSO personnel defamed Mr. Frimmel and Mrs. Norton, as set out above.

155.   ~~132.~~ Sheriff Arpaio and other MCSO personnel knew that these defamatory statements were materially inconsistent with the results of the MCSO investigation or had a reckless disregard for the truth of such statements.

**Wrongful Indictment**

156.   ~~133.~~ Although lacking evidence for the requisite knowledge element of the charged offenses, on February 7, 2014, ~~Maricopa County Attorneys' Office~~MCAO sought and obtained grand jury indictments of Mr. Frimmel and Mrs. Norton on 13 felony charges.

157.   ~~134.~~ True and correct copies of these indictments ~~were~~are attached ~~to the Complaint~~hereto as Exhibits "J" and "K." ~~(Doc. 1-1 at 102-09 (Ex. "J"); *id.* at 110-17 (Ex. "K".)~~

158.   ~~135.~~ A true and correct copy of the grand jury transcript ~~was~~is attached ~~to the Complaint~~hereto as Exhibit "L." ~~(*Id.* at 118-164.)~~

159.   ~~136.~~ The indictments against Mr. Frimmel and Mrs. Norton charge them with two counts of conspiracy to commit taking the identity of another and four counts of taking the identity of another.

160.   ~~137.~~ The indictment against Mr. Frimmel also charges him with two additional counts of taking the identity of another, four counts of trafficking in the identity of another, and one count of forgery.

161.   ~~138.~~ On September 30, 2013, Sergeant Henderson obtained information from former Uncle Sam's employee Fernando Gonzalez in a free-talk interview.

-21-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

162. ~~139.~~ A true and correct copy of the transcript of Mr. Henderson's free-talk interview with Fernando Gonzalez ~~was~~is attached ~~to the Complaint~~hereto as Exhibit "M." ~~(Doc. 1-1 at 165-98.)~~

163. ~~140.~~ Sergeant Henderson testified to the grand jury that "[Fernando] Gonzales [sic] told me he was hired by Brett [sic] and that Brett [sic] made the decision to hire him." (Ex. L at 32:11to 32:14.)

164. ~~141.~~ The foregoing testimony by Sergeant Henderson was false because in his Free-talk interview, Fernando Gonzalez actually told Mr. Henderson that he was hired by someone named Lalo and never stated that Mr. Frimmel or Mrs. Norton met with applicants during the hiring process. (Ex. M at 2-3.)

165. ~~142.~~ Sergeant Henderson testified to the grand jury that Fernando Gonzalez "stated that he did not sign any forms or present any identification at the time of hire." (Ex. L at 32:12 to 32:14.)

166. ~~143.~~ No one told the grand jury that Mr. Gonzalez was not legally required to present identification or work authorization documents until three days after hire.

167. ~~144.~~ Sergeant Henderson testified that Fernando Gonzalez said, when he was a manager hiring for Uncle Sam's, Mrs. Norton instructed him "to give Latinos applications". (~~Id~~Ex. L at 32:20 to 32:21.)

168. ~~145.~~ Fernando Gonzalez did not state that Mrs. Norton instructed him to provide applications to persons known to be Unauthorized Aliens.

169. ~~146.~~ The foregoing testimony was misleading because it invited the grand jury to wrongly equate hiring Latinos with hiring Unauthorized Aliens.

170. ~~147.~~ No one told the grand jury that Fernando Gonzalez denied knowing what happened to documents that were submitted by Uncle Sam's applicants. (Ex. M at 18.)

171. ~~148.~~ On September 30, 2013, Sergeant Henderson obtained information from former Uncle Sam's employee ~~Emidgio~~Emigdio Munoz Gonzalez.

-22-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

1   172. 149. A true and correct copy of a report of Mr. Henderson's interview with

2   Emidgio Emigdio Munoz Gonzalez was is attached to the Complaint hereto as Exhibit "N."

3   (Doc. 1-1 at 199-204.)

4   173. 150. Sergeant Henderson testified to the grand jury that Emigdio Munoz

5   Gonzalez used a social security number that did not belong to him when he was hired at

6   Uncle Sam's. (Ex. L at 29:7 to 29:10.)

7   174. 151. The foregoing testimony was misleading because no one told the grand

8   jury that Emidgio Emigdio Munoz Gonzalez stated that he obtained a social security

9   number (and a social security card) 18 years ago, well before he was hired at Uncle Sam's.

10  (Ex. N at 2.)

11  175. 152. No one told the grand jury that Emidgio Emigdio Munoz Gonzalez had a

12  valid Arizona driver's license. (Id. Ex. N at 2.)

13  176. 153. No one told the grand jury that Emidgio Emigdio Munoz Gonzalez

14  stated that someone named Manuel, not Mr. Frimmel or Mrs. Norton, hired him to work at

15  Uncle Sam's. (Id.) Ex. N at 2.)

16  177. 154. No one told the grand jury that Emidgio Emigdio Munoz Gonzalez

17  stated that Mr. Frimmel instructed Uncle Sam's managers to: (a) ask applicants for social

18  security cards and picture IDs; (b) watch applicants fill out their applications; and (c)

19  collect applications when they were done. (Ex. N at 3.)

20  178. 155. On September 30, 2013, Sergeant Henderson obtained information

21  from former Uncle Sam's employee Victor Vargas in a free-talk interview.

22  179. 156. A true and correct copy of a report of Mr. Henderson's interview of

23  Victor Vargas was is attached to the Complaint hereto as Exhibit "O." (Doc. 1-1 at 205-42.)

24  180. 157. No one told the grand jury that Victor Vargas stated that he provided a

25  social security card and photo identification to Uncle Sam's within the requisite three-days

26  after hiring. (Ex. O at 4.)

27

28

-23-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

181. 158. No one told the grand jury that Mr. Vargas stated that he obtained a forged social security card from an unknown person who had no relation to Uncle Sam's. (*Id*Ex. O at 7-8.)

182. 159. No one told the grand jury that Mr. Vargas stated that neither Mr. Frimmel nor Mrs. Norton knew that he was using a forged social security card. (*Id*Ex. O at 7-8.)

183. 160. Sergeant Henderson testified to the grand jury that, in his free-talk interview, former Uncle Sam's employee Valentin Villanueva-Fernan stated Mr. Frimmel hired him to work at Uncle Sam's. (Ex. L at 23:12 to 23:13.)

184. 161. The foregoing testimony was false because Mr. Villanueva-Fernan actually stated that some Uncle Sam's employee whose name he did not remember hired him, not Mr. Frimmel.  (Untranscribed recording of free talk with Villanueva-Fernan.)

185. 162. No one told the grand jury that Mr. Villanueva-Fernan stated that he had no dealings with Mr. Frimmel beyond "just a few words." (*Id*Ex. L.)

186. 163. No one told the grand jury that Mr. Frimmel and MrsMs. Norton had good reason to believe that Mr. Villanueva-Fernan was a legitimate immigrant because Arizona Courts did not appear to treat him as an Unauthorized Alien when he was convicted for, and/or found him responsible for, civil and criminal offenses while he was working at Uncle Sam's. (*Id*Ex. L at 41:23 to 42:6.)

187. 164. On January 15, 2014, Sergeant Henderson obtained information from former Uncle Sam's employee Manuel Arredondo in a free-talk interview.

188. 165. A true and correct copy of a report of Mr. Henderson's interview of Manuel Arredondo wasis attached to the Complainthereto as Exhibit "P." (Doc. 1-1 at 243-302.)

189. 166. No one told the grand jury that Manuel Arredondo, stated that an unknown Spanish speaking Uncle Sam's manager required him to produce a social security card and identification when he was hired. (Ex. P at 5.)

-24-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

190. ~~167.~~ No one told the grand jury that Mr. Arredondo admitted that he purchased a forged social security card prior to applying at Uncle Sam's. (*~~Id~~*Ex. P at 6.)

191. ~~168.~~ No one told the grand jury that Mr. Arredondo stated that Mr. Frimmel required employees to obtain a food handler's card.  (*~~Id~~*Ex. P at 16.)

192. ~~169.~~ No one told the grand jury that Mr. Arredondo stated that he did not tell Mr. Frimmel or Mrs. Norton that his food handler's card had expired. (*~~Id~~*Ex. P at 17.)

193. ~~170.~~ No one told the grand jury that Mr. Arredondo stated that, during his 15 years as a kitchen staff member and manager, he never witnessed mistreatment or heard any racial comments from Mr. Frimmel or Mrs. Norton. (*~~Id~~*Ex. P at 49-50.)

194. ~~171.~~ MCAO treated Mr. Arredondo like ~~it treated~~ the Cooperating Witnesses by providing him with deferred deportation status and authorization to work.

195. ~~172.~~ But Sergeant Henderson did not present any of the exculpatory evidence he obtained from Mr. Arredondo to the grand jury.

196. ~~173.~~ When a member of the grand jury asked whether "making the social security cards" was "part of the forgery," the MCAO attorney merely asked Sergeant Henderson if he had any evidence of Mr. Frimmel making the social security cards, something that he disavowed. (Ex. L at 41:23 to 42:17.)

197. ~~174.~~ Both MCAO and Sergeant Henderson, in response to the grand juror's question, wrongfully failed to explain what they were alleging Mr. Frimmel forged.

198. ~~175.~~ Sergeant Henderson testified to the grand jury that Mr. Frimmel's ADP contract did not contain explicit E-Verify services language.

199. ~~176.~~ The foregoing testimony was misleading because no one told the grand jury: (a) that Sergeant Henderson was referring to a pre-2007 contract; and (b) that Arizona did not require employers to use E-Verify prior to 2007.

200. ~~177.~~ The foregoing testimony was also misleading because no one told the grand jury that, starting in 2007, ADP provided something called "New Hire Reporting Service" to Uncle Sam's.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

201.   178. The foregoing testimony was also misleading because no one told the grand jury that Mr. Frimmel believed that ADP's New Hire Reporting Service met E-Verify requirements.

202.   179. Sergeant Henderson testified to the grand jury that, in "approximately the year 2009," the Arizona Office of Environmental Health began to require ana Arizona valid identification card to renew a food handler's card. Such cards expire after three years.

203.   180. The forgoing testimony was misleading and irrelevant because all the Cooperating Witnesses had valid food handler's cards issued after February 2009; there was no basis, therefore, to infer that inability to get a food handler's card put Mr. Frimmel and Mrs. Norton on notice that one of these Cooperating Witnesses was an Unauthorized Alien.

204.   181. No one told the grand jury that Mr. Frimmel and Mrs. Norton repeatedly denied knowing that the former Uncle Sam's workers at issue in this case were Unauthorized Aliens.

205.   182. No one told the grand jury that, within a few days of the July 17, 2013 raids, the Department of Justice contacted Mr. Frimmel to assist it in regard to its on-going investigation into MCSO.

206.   183. No one told the grand jury that, shortly after that contact, MCSO turned its investigation against Mr. Frimmel and Mrs. Norton.

207.   184. Sergeant Henderson testified to the grand jury that former Uncle Sam's employee Sabrina Stark told him "the reason she left [Uncle Sam's] was because the owner, Brett [sic] Frimmel, treated his employees bad." (IdEx. L at 35:17 to 35:19.)

208.   185. The foregoing testimony was misleading because it omitted telling the grand jury that Ms. Stark subsequently returned to work at Uncle Sam's at her request.

209.   186. Sergeant Henderson also testified to the grand jury that Ms. Stark told him "that every employee that Brett [sic] hires and puts in the kitchen is not legal." (IdEx. L at 35:19 to 35:20.)

-26-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

1  210.  187. Sergeant Henderson knew that Ms. Stark was making a false allegation

2  given that MCSO determined that many of Uncle Sam's kitchen employees were properly

3  authorized to work.

4  211.  188. Sergeant Henderson testified to the grand jury that Ms. Stark told him

5  that Mr. Frimmel would "pay them whatever he wants." (*Id*Ex. L at 35:20 to 35:23.)

6  212.  189. The foregoing testimony was misleading because no one told the grand

7  jury that there was no evidence to corroborate that accusation.

8  213.  190. Sergeant Henderson testified to the grand jury that Mr. Frimmel told

9  former Uncle Sam's employee Fabian Alejandro Rodriguez to disregard what Mr.

10  Rodriguez thought were forged identifications.

11  214.  191. The foregoing testimony was misleading because no one explained to

12  the grand jury that Mr. Rodriguez was not qualified to assess whether identification

13  documents were forged and that Uncle Sam's could face significant liability if it rejected

14  applicants based upon Mr. Rodriguez's unqualified suspicions.

15  215.  192. No one told the grand jury that Mr. Rodriguez was strongly motivated to

16  lie to harm Uncle Sam's.

17  216.  193. For example, no one told the grand jury that: (a) Mr. Rodriguez had an

18  extra-marital affair with another employee, Christina Hopkins, while working at Uncle

19  Sam's; (b) Ms. Hopkins subsequently made a sexual harassment complaint against Mr.

20  Rodriguez; (c) Mr. Rodriguez then quit Uncle Sam's; and (ed) Ms. Hopkins later filed a

21  paternity complaint against Mr. Rodriguez in Maricopa County Superior Court, case no.

22  FC2011-052844.

23  217.  194. When asked by a grand juror about whether "there should be some kind

24  of photocopy of ID" made during the hiring process, Sergeant Henderson answered that

25  "there should be some kind of photocopy of ID" and "there was no photocopies done."

26  (*Id*Ex. L at 38:22 to 39:7.)

27

28

218. 195. MCAO then misled the grand jury by vaguely stating "I don't know it is a requirement for the company to make a photocopy of the identification." (*Id*Ex. L at 39:13 to 39:18.)

219. 196. MCAO should not have left this point unresolved because neither Arizona law nor federal law requires that an employer photocopy employee identification.

220. 197. Sergeant Henderson testified to the grand jury that his investigation began "in October of 2012 [when] I received an anonymous tip that referenced an Uncle Sam's restaurant. . . ." (*Id*Ex. L at 12:4 to 12:8.)

221. 198. The foregoing testimony was false and/or misleading because MCSO received the tip on August 2, 2012, and it was not anonymous.

222. 199. No one told the grand jury any of the following material facts:

    a. That the so-called tip came from Said Ishak and Denee Porter Ishak, married ex-employees of Uncle Sam's;

    b. That Said Ishak and Denee Porter Ishak had strong motivation to fabricate lies about Mr. Frimmel, Mrs. Norton and Uncle Sam's;

    c. That Said Ishak was arrested for felony theft of funds from Uncle Sam's on August 2, 2012 and was convicted of that charge in early 2013;

    d. That Denee Porter Ishak placed her tip call to MCSO the same day that her husband was arrested;

    e. That Denee Porter Ishak was convicted of criminal possession of drug paraphernalia;

    f. That Denee Porter Ishak quit working at Uncle Sam's in January 2011 after Mr. Frimmel admonished her for poor work behavior; and

    g. That Denee Porter Ishak subsequently lost her claim against Uncle Sam's for unemployment benefits.

223. 200. Sergeant Henderson and MCAO misled the grand jury by failing to disclose these that there were substantial reasons to question the truthfulness of statements made by the Ishaks.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

-28-

1    224. ~~201.~~ MCAO improperly allowed Sergeant Henderson to present false

2    testimony to the grand jury, in violation of Arizona Ethical Rule 3.3(a)(3).

3    225. ~~202.~~ MCAO improperly sought indictments from the grand jury knowing

4    that there was no evidence for the requisite knowledge element of the charged offenses, in

5    violation of Arizona Ethical Rule 3.8(a).

6    226. ~~203.~~ MCAO improperly omitted materially exculpatory evidence from its

7    presentation to the grand jury.

8                              **Wrongful Criminal Prosecution**

9    227. The State of Arizona filed a criminal complaint against Mr. Frimmel on

10   January 27, 2014, stating counts for taking the identity of another, trafficking in the identity

11   of another, forgery, and conspiracy.

12   228. ~~204.~~ In the pre-trial phase of criminal litigation against Mr. Frimmel and

13   Mrs. Norton (Maricopa County CR2014-103633-001 and -002), MCSO, Sheriff Arpaio,

14   and Detective Henderson withheld material exculpatory evidence and willfully committed

15   perjury in sworn testimony and made Plaintiffs file multiple motions and related brief to

16   compel the production of materials that they had no right to withhold.

17   ~~205.   On January 16, 2014, the Superior Court dismissed all charges against Mrs.~~

18   ~~Norton.~~

19                              ~~**Wrongful Criminal Prosecution**~~

20   ~~206.   The State of Arizona filed a criminal complaint against Mr. Frimmel on~~

21   ~~January 27, 2014, stating counts for taking the identity of another, trafficking in the identity~~

22   ~~of another, forgery, and conspiracy.~~

23   229. ~~207.~~ On January 15, 2015, the Court dismissed the counts for taking the

24   identity of another, A.R.S. 13-2008, as preempted by federal law.

25   230. ~~208.~~ After an evidentiary hearing held on March 6, 2015, the Court found, as

26   stated in an April 15, 2015 minute entry ruling, that the premises and cell phone search

27   warrants, when properly reformed to account for the affiant's "reckless disregard for the

28   truth," did not establish probable cause, voided the search warrants on that basis, and

-29-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

1    "order[ed] that the evidence seized pursuant to each warrant be suppressed."  A true and

2    correct copy of the April 15, 2015, minute entry is attached hereto as Exhibit "Q."

3    231.    209. As stated in the April 15, 2015 minute entry, the Court found that it was

4    "unreasonable and reckless" for Sergeant Henderson to, among other things:

5         a.    "not inquire into the time frame from which the information provided

6            by [Ms. Ishak] and contained in the affidavit was gained, and to present

7            the affidavit to the magistrate without any indication that the timeliness

8            of the information therein was unknown";

9         b.    "not inquire into the history, background, or motivations of the

10           complainant[s] [Said Ishak and Denise Porter Ishak], and to present the

11           affidavit to the magistrate without any indication that the motivations

12           of the complainants were suspect";

13        c.    "discuss tax irregularities in the affidavits";

14        d.    "intentionally or unintentionally" make a "significant and material

15           misstatement" that Said Ishak was "positive that no employees had to

16           fill out the A-4 state tax form";

17        e.    "to include … reference to the Cochise address" when stating that he

18           observed parked employee vehicles; and

19        f.    "not to acknowledge in the affidavit that the complainants were

20           anonymous, their identities were unknown at that time, and little was

21           known/verified about their backgrounds."

22   210.    After an evidentiary hearing held on January 30, 2015, the Court found, as

23   stated in a minute entry dated April 15, 2015, that it was "unreasonable and reckless" for

24   Detective Hechavarria and/or Detective Locksa and/or Detective Gandara to do the

25   following in obtaining the cell phone search warrant affidavits:

26        a.    "suggest that nearly half of employees of Uncle Sam's had been

27           convicted of [identity theft and forgery]";

28

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-30-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

b.   "suggest that four employees of Uncle Sam's had been convicted of [identity theft and forgery] if no information beyond charging information was known";

c.   "suggest that four employees of Uncle Sam's provided corroborating information that [Mr.] Frimmel knowingly hired undocumented workers" because they knew that "at least one employee stated that for fear of being fired, he would never bring to [Mr. Frimmel's] attention that unauthorized persons were being hired";

d.   omit that "[Mr. Frimmel] told the detective that he submitted employment records to ADP for verification of immigration status";

e.   omit that "in an incident arranged by law enforcement but unable to be confirmed due to faulty recording equipment, [Mr.] Frimmel was asked for a job by an undocumented person, and that [he] told the man to get legal papers first and then come back for a job"; and

f.   include "a reference to illegal drugs and illegal drug trafficking organizations when this investigation contained no evidence of illegal drugs or illegal drug trafficking organizations."

232. 211. On April 17, 2015, the State moved to dismiss all charges against Mr. Frimmel.

233. 212. On April 23, 2015, the Court dismissed all remaining charges against Mr. Frimmel.

234.   On June 1, 2015, the Superior Court ordered the State to pay $15,000.00 to Mr. Frimmel as a sanction for some but not all of the State's discovery and disclosure violations.

## CLAIMS FOR RELIEF

### I. Malicious Arrest and/or Prosecution (42 U.S.C. § 1983)

235. 213. Plaintiffs incorporate all prior allegations.

-31-

236. 214. Plaintiffs Norton bring this claim under 42 U.S.C. § 1983 to redress violations of Mrs. Norton's their "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.

237. 215. The MCSO investigation here did not show probable cause for the search warrants, arrests, or indictments.

238. 216. The grand jury would not have found probable cause if truthful, material evidence had been properly presented.

239. 217. The decision to prosecute may not be based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights.

240. 218. Upon information and belief, Sheriff Arpaio, MCAO, and/or Sergeant Henderson have animus towards individuals with Jewish ancestry.

241. 219. In the course of investigating this matter, Sergeant Henderson recorded a February 18, 2014, telephone conversation with Denee Porter Ishak, wherein the following was said (referring to Mr. Frimmel in the third person):

| Henderson | So it's like you know, and again, I doubt he'll want to go to trial and he's spending a lot of money right now on lawyers and he's gonna get lots of fines from ICE from just all his paperwork has been so bad so we'll see how long it goes. I'm sure you probably know he's pretty tight with his money? |
|-----------|---|
| Porter | Yes. |
| Henderson | So. |
| Porter | I do. |
| Henderson | Yeah. So . . . |
| Porter | He's Jewish. We know. |
| Henderson | (Laughs) Yeah. So he's - yeah. We'll see what, what happens but I doubt it's gonna go to trial but worse case, or in case it does, I just have to ask. That way the county attorney knows and I can tell them too – well if you guys want to take this to trial so many people are gonna come in and testify and again you know um all of you guys from the statements I've been getting are all saying the same thing about him so the jury that sees that and hears that is gonna be like well who are we gonna believe, this one guy saying no |

-32-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

|  | it's not true or all these other employees that have been there several years they're all saying the same thing? |
|---|---|

242. 220. Sergeant Henderson, thereby, manifested animus towards individuals with Jewish ancestry in the course of investigating this matter.

243. 221. Mr. Frimmel has Jewish Ancestry.

244. 222. Upon information and belief, Defendants' decisions to provide false and/or misleading affidavits and grand jury testimony were wrongfully motivated by: (a) animus towards individuals with Jewish ancestry; and (b) an intention to retaliate for Mr. Frimmel and Mrs. Norton cooperating with the Department of Justice and discourage further cooperation.

245. 223. Upon information and belief, Defendants' decisions to arrest and prosecute Mr. Frimmel and Mrs. Norton was_were wrongfully motivated by: (a) animus towards Mr. Frimmel based on his_individuals with Jewish ancestry; and (b) an intention to retaliate against_for Mr. Frimmel and Mrs. Norton for_cooperating with the Department of Justice and discourage further cooperation.

246. 224. Upon information and belief, Defendants' decisions to defame Mr. Frimmel and Mrs. Norton were wrongfully motivated by: (a) animus towards Mr. Frimmel based on his_individuals with Jewish ancestry; and (b) an intention to retaliate against_for Mr. Frimmel and Mrs. Norton for_cooperating with the Department of Justice and discourage further cooperation.

247. 225. Defendants' wrongful actions violated multiple rights, any one of which can fully support this claim. These include_This includes rights protected by the United States Constitution first, fourth, fifth and fourteenth amendments as well as rights protected by the Arizona Constitution Article 2, Section 4 (Due Process), Article 2, Section 6 (Free Speech), Article 2, Section 8 (Right to Privacy), and Article 2, Section 13 (Civil Rights).

248. 226. As a consequence of the illegal searches and seizures carried out by Defendants and the malicious arrest and/or prosecution of Mr. Frimmel and Mrs. Norton, Mrs. Norton_Plaintiffs suffered substantial economic and personal injury, including (a)

-33-

emotional distress; (b) medical expenses incurred to treat such emotional distress; (c) wages and other income lost as a consequence of such emotional distress; (d) medical expenses and lost wages and income that will result in the future from such emotional distress; (e) the value of lost personal and business reputations; and (f) the expenditure of substantial attorneys' fees and other litigation expenses incurred defending against unwarranted criminal charges (collectively "Special Damages").

249.    227. Sheriff Arpaio, Maricopa County, and Sergeant Henderson, and Detectives Gandara, Locksa, and Hechavarria are liable to Plaintiffs Norton foreach Plaintiff so injured for compensatory damages and Special Damages in amounts to be proven at trial. 42 U.S.C. § 1983.

## II. Malicious Prosecution (Arizona Law)

250.    228. Plaintiffs incorporate all prior allegations.

251.    229. Under Arizona law, "the elements of a malicious prosecution claim are: (1) a criminal prosecution, (2) that terminates in favor of the plaintiff, (3) with the defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 112 Ariz. 298, 300, 541 P.2d 550, 552 (1975).

252.    230. Each of the foregoing elements is satisfied here.

253.    231. Maricopa County, therefore, is liable to Mr. Frimmel and Mrs. Norton for compensatory damages and Special Damages in amounts to be proven at trial.

## III. Abuse of Process (Arizona law and 42 U.S.C. § 1983)

254.    232. Plaintiffs incorporate all prior allegations.

255.    233. A person who uses a criminal legal process primarily for a purpose for which it was not designed, is subject to liability to the other for harm caused by abuse of process.

256.    234. MCSO and Sheriff Arpaio willfully caused the arrest and prosecution of Mr. Frimmel and Mrs. Norton primarily for the improper purposes of retaliation for hertheir perceived and actual cooperation with the Department of Justice Investigation of MCSO and deterrence of further cooperation.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

257. ~~235.~~ The presence or absence of probable cause is immaterial to a claim seeking compensatory damages for abuse of process.

258. ~~236.~~ MCSO, Sheriff Arpaio and Sergeant Henderson withheld material exculpatory evidence and committed related perjuries in sworn testimony and discovery responses for the wrongful purpose of drawing out the criminal prosecution of Mr. Frimmel and Mrs. Norton so as to keep pressure on ~~her~~them to not cooperate with the Department of Justice investigation of MCSO and to deprive ~~her~~them of ~~her~~their constitutional right to a speedy trial .

259. ~~237.~~ As a consequence of these actions, Mr. Frimmel and Mrs. Norton needlessly incurred litigation related expenses, particularly as incurred to compel production of wrongfully withheld material exculpatory evidence.

260. ~~238.~~ As a consequence of these actions, ~~Mrs. Norton~~Plaintiffs needlessly lost personal earnings, opportunities and business profits.

261. ~~239.~~ Also, as a consequence of these actions, Mr. Frimmel and Mrs. Norton had emotional suffering, and they and the other Plaintiffs lost value of personal and business reputations.

262. ~~240.~~ Sheriff Arpaio ~~and~~, Maricopa County, are liable to ~~Mrs. Norton~~Plaintiffs for damages in an amount sufficient to compensate them for compensatory damages and Special Damages, including expenses incurred as a result of Defendants withholding exculpatory evidence during the criminal litigation against Mr. Frimmel and Mrs. Norton.

### IV. Illegal Search and Seizure: Cell Phones (42 U.S.C. § 1983)

263. ~~241.~~ Plaintiffs incorporate all prior allegations.

264. ~~242.~~ Plaintiffs bring this claim under 42 U.S.C. § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.

265. ~~243.~~ Mr. Frimmel and Mrs. Norton had reasonable expectations of the privacy of ~~her~~their cell phone records and data.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

-35-

244.      Mrs. Norton had a constitutional right to not be searched as a result of judicial deception by MCSO.

266.      245. MCSO, therefore, needed a search warrant to search Mr. Frimmel's and Mrs. Norton's cell phone records and data.

267.      246. Detectives Hechavarria and, Gandara, and Locksa did not have probable cause to obtain search warrants authorizing them to search and seize Mr. Frimmel's and Mrs. Norton's cell phone records and data.

268.      247. Because Detectives Hechavarria and, Gandara, and Locksa knew that they did not have probable cause to obtain these search warrants, they intentionally provided false, incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

269.      248. In the alternative, because Detectives Hechavarria and, Gandara, and Locksa knew that they did not have probable cause to obtain these search warrants, they recklessly disregarded the truth when they provided false, incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

270.      249. MCSO would not have obtained valid search warrants if Detectives Hechavarria and, Gandara, and Locksa had provided truthful and complete affidavits in support of their applications for such warrants.

271.      250. The search and seizure of Mr. Frimmel's and Mrs. Norton's cell phone records and data, therefore, violated the United States Constitution, amendments four and fourteen, and analogous articles of the Arizona Constitution.

272.      251. As a result of the illegal searches and seizures of cell phone records and data, Mrs. NortonPlaintiffs suffered injuries and hashave a valid claim for Special Damages against Sheriff Arpaio, Maricopa County, and Detectives Hechavarria and, Gandara, and Locksa in an amount to be proven at trial.

**V. Illegal Search and Seizure: Business Records (42 U.S.C. § 1983)**

273.      Plaintiffs incorporate all prior allegations.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

274.     Plaintiffs bring this claim under 42 U.S.C. § 1983 to redress violations of his "rights, privileges, or immunities secured by the Constitution and [federal] laws" by a person or entity, including a municipality, acting under the color of state law.

275.     Mr. Frimmel had reasonable expectations of the privacy of his home and business records kept therein.

276.     MCSO, therefore, needed a valid search warrant to search Mr. Frimmel's home and to seize business records found therein.

277.     Sergeant Henderson did not have probable cause to obtain search warrants authorizing him to search Mr. Frimmel's home or to seize Uncle Sam's business records found therein.

278.     Because Sergeant Henderson knew that he did not have probable cause to obtain these search warrants, he intentionally provided false, incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

279.     In the alternative, because Sergeant Henderson knew that he did not have probable cause to obtain these search warrants, he recklessly disregarded the truth when he provided false, incomplete, and/or misleading information in the affidavits made to support applications for those warrants.

280.     MCSO would not have obtained valid search warrants if Sergeant Henderson had provided truthful and complete affidavits in support of his applications for such warrants.

281.     The search of Mr. Frimmel's home and the seizure of Uncle Sam's business records found therein, therefore, violated the United States Constitution, amendments four and fourteen, and analogous articles of the Arizona Constitution.

282.     As a result of the illegal search of Mr. Frimmel's home and the illegal seizure of business records found therein, Plaintiffs suffered injuries and have a valid claim for compensatory damages and Special Damages against Sheriff Arpaio, Maricopa County, and Sergeant Henderson in an amount to be proven at trial.

## VI. Violation of Civil Rights (42 U.S.C. § 1981)

283.    Plaintiffs incorporate all prior allegations.

284.    Mr. Frimmel is of Jewish ancestry.

285.    Upon information and belief, Sheriff Arpaio, MCSO, and Sergeant Henderson have animus towards those of Jewish ancestry.

286.    Upon information and belief, Sheriff Arpaio and Sergeant Henderson were motivated by such animus when they decided to give false, incomplete and/or misleading affidavits and testimony in this matter.

287.    Upon information and belief, Sheriff Arpaio and Sergeant Henderson were motivated by such animus when they decided to selectively prosecute Mr. Frimmel and Mrs. Norton.

288.    In so doing, these defendants violated Mr. Frimmel's right to enjoy the same security of persons and property as is enjoyed by other citizens.

289.    In so doing, these defendants violated Mr. Frimmel's right to be subject to no more punishment, pains, and penalties than other citizens.

290.    Sheriff Arpaio and Sergeant Henderson are liable in their individual capacities for damages arising from the violation of Mr. Frimmel's rights.

291.    Mr. Frimmel has a valid claim against Sheriff Arpaio, Maricopa County, and Sergeant Henderson to compensate him, to the extent caused by violation of 42 U.S.C. § 1981, for injury to business interests (including lost profits, good will and value) and attorneys' fees and other expenses incurred responding to the raids and defending against charges brought against him.

## VII. Conspiracy to Interfere with Civil Rights (42 U.S.C. § 1985)

292.    Plaintiffs incorporate all prior allegations.

293.    Defendants were motivated to selectively prosecute Mr. Frimmel by animus towards persons with Jewish ancestry and faith.

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

294.     Defendants all: (a) provided false, incomplete and/or misleading affidavits and testimony; (b) made defamatory public statements; and/or (c) selectively prosecuted; and/or (d) encouraged the other defendants to do so.

295.     Those Defendants who were not personally motivated by animus towards persons of Jewish ancestry had reason to know that one or more of the other defendants were so motivated.

296.     Defendants, therefore, were all acting in concert to interfere with civil rights as defined by 42 U.S.C. § 1985.

297.     Mr. Frimmel, therefore, has an action for the recovery of damages caused by such actions, against any one or more Defendants.

298.     Mr. Frimmel is entitled to sufficient damages to compensate him for compensatory damages and Special Damages in an amount to be proven at trial.

**VIII. Attorneys' Fees (42 U.S.C. § 1988)**

299.     ~~252.~~ Plaintiffs incorporate all prior allegations.

300.     ~~253.~~ Plaintiffs have stated valid claims pursuant to 42 U.S.C. ~~§ 1983~~ §§ 1981, 1983, and/or 1985.

301.     ~~254.~~ To the extent that Plaintiffs are the prevailing party under any or all of these claims, they are entitled to be awarded their reasonable attorney's fees and expert witness expenses incurred pursuing those claims, pursuant to 42 U.S.C. §1988.

**~~VII~~IX. Defamation (Arizona Law)**

302.     ~~255.~~ Plaintiffs incorporate all prior allegations.

303.     ~~256.~~ Sheriff Arpaio, Sergeant Henderson and MCSO spokespersons Brandon Jones and Christopher Hegstrom made multiple false factual assertions to news media, and in other public forums, with either knowledge that such statements were false or with reckless disregard for the truth of those statements.

304.     ~~257.~~ A reasonable person with these defendants' knowledge at the time would expect that such statements would harm ~~Mrs. Norton's reputation~~ Plaintiffs' reputations and business interests.

-39-

305.   258. As a result of such statements, Mrs. NortonPlaintiffs did suffer harm to reputation and business interests.

306.   259. Sheriff Arpaio, Maricopa County, and DetectiveSergeant Henderson and MCSO spokespersons Brandon Jones and Christopher Hegstrom are liable for compensatory damages and Special Damages in an amount to be proven at trial.

**X. Grossly Negligent Restraint During Arrest (Arizona Law)**

307.   Plaintiffs incorporate all prior allegations.

308.   When Mr. Frimmel was arrested, Sergeant Henderson had a duty to restrain him in handcuffs in a reasonably safe manner.

309.   Sergeant Henderson placed Mr. Frimmel in handcuffs in an unnecessarily rough manner that caused discomfort in Mr. Frimmel's right arm and shoulder.

310.   At the time, Mr. Frimmel calmly complained that he was suffering significant discomfort in his right arm and shoulder.

311.   Sergeant Henderson ignored Mr. Frimmel's complaints of such discomfort.

312.   Sergeant Henderson had no reason to ignore Mr. Frimmel's complaints or to restrain Mr. Frimmel to the point of causing such an injury.

313.   A reasonable person would expect that someone restrained in such a manner would suffer physical injury.

314.   As a result of being restrained in an unnecessarily rough manner Mr. Frimmel did suffer a physical injury, an acute compression of his right thoracic outlet region.

315.   This acute thoracic outlet compression resulted in weakness to muscles innervated by the median nerve in Mr. Frimmel's right hand.

316.   Mr. Frimmel required medical treatment and physical therapy for this injury.

317.   Mr. Frimmel incurred medical expenses for such treatment.

318.   This injury and its subsequent treatment caused Mr. Frimmel needless pain and suffering.

**Gordon & Rees LLP**
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

319.     A reasonable person would have known that restraining Mr. Frimmel in such a manner was highly likely to cause him significant injury.

320.     Sergeant Henderson and Maricopa County, therefore, were grossly negligent.

321.     Sergeant Henderson and Maricopa County are jointly liable for the physical injuries and emotional distress that resulted from the grossly negligent manner in which Mr. Frimmel was restrained.

322.     Sergeant Henderson and Maricopa County are also liable to Mr. Frimmel for special damages in an amount to be proven at trial to compensate him for the resultant medical expenses, pain and suffering, and value of the loss of the full use of his right hand.

### ~~VII~~XI. Intentional Infliction of Emotional Distress (Arizona Law)

323.     ~~260.~~ Plaintiffs incorporate all prior allegations.

324.     ~~261.~~ The conduct by Sheriff Arpaio, MCSO~~, Sergeant Henderson~~ and Detectives Henderson, Gandara, Locksa, and Hechavarria was extreme and outrageous because they intentionally presented false, incomplete and misleading information in sworn affidavits and testimony ~~conducted~~conduct for the purpose of obtaining search warrants and grand jury indictments in the absence of probable cause~~,~~ all of which was designed to cause injury to personal reputation, injury to business interests, and great emotional distress.

325.     ~~262.~~ The conduct by Sheriff Arpaio, MCSO, Sergeant Henderson and MCSO spokespersons Brandon Jones and Christopher Hegstrom was extreme and outrageous because they intentionally presented false, incomplete and misleading information concerning Plaintiffs to the public that was designed to defame Plaintiffs and cause them emotional distress.

326.     ~~263.~~ In so doing each ~~of the Defendants~~Defendant either intended to cause emotional distress or recklessly disregarded the near certainty that such distress will result from their conduct.

327. 264. Defendants' wrongful conduct did cause Mr. Frimmel and Mrs. Norton severe emotional distress.

328. 265. Mrs. Norton's severe emotional distress was manifested by substantial physical symptoms and required a course of medical treatment.

329. 266. Sheriff Arpaio, Maricopa County, Sergeant Henderson, and Detectives Locksa, Gandara, and Hechavarria, and MCSO spokespersons Jones and Hegstrom are liable to Mr. Frimmel and Mrs. Norton for Special Damages in an amount to be proven at trial damages in an amount sufficient to compensate them for: (a) suffering emotional distress; (b) medical expenses incurred to treat such emotional distress; (c) for wages and other income lost as a consequence of such emotional distress; and (d) medical expenses and lost wages and income that will result in the future from such emotional distress.

**VIII XII. Grossly Negligent Supervision (Arizona Law)**

330. 267. Plaintiffs incorporate all prior allegations.

331. 268. Sheriff Arpaio, MCSO, and Maricopa County failed to adequately supervise and train Sergeant Henderson, and Detectives Locksa, Gandara, and Hechavarria and Gandara, and MCSO Spokespersons Jones and Hegstrom to ensure that they understood and abided by their duty to provide truthful, complete and accurate affidavits and testimony and avoided making public defamatory statements concerning those not yet convicted of crimes.

332. 269. MCSO has a long history of both violations of civil rights and covering up its misconduct in such cases. Upon information and belief, examples of such misconduct follow in subparagraphs (a) to (e):

    a. After MCSO jail personnel fractured the larynx of Scott Norberg in 1996, causing his death, MCSO destroyed Mr. Norberg's autopsy-obtained larynx specimen and x-rays to hide that fact (evidence regarding the destruction of such evidence can be found at Doc. 208 and 233 of 2:97-CV-00866-PGR);

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

b.  After MCSO jail personnel used unnecessary force against Charles Agster in 2001, causing his death, MCSO destroyed recordings of telephone calls and surveillance videos and falsified other evidence to hide MCSO misconduct;

c.  After MCSO jail personnel beat Brian Crenshaw to death in 2003, MCSO destroyed several pieces of evidence including surveillance videos and use of force reports;

d.  The Maricopa County Attorney recently withdrew charges in *Arizona v. Flake* CR2014-002799-003 & -004 because MCSO personnel blatantly lied to the grand jury to get an indictment; and

e.  As shown in *Melendres v. Arpaio*, CV 07-2513-PHX-GMS, MCSO and Sheriff Arpaio have a long history of tolerating, indeed encouraging, unconstitutional racial profiling in connection with immigration enforcement activities.

333. 270. The MCSO and Sheriff Arpaio, therefore, have a long history of tolerating, if not promoting, an atmosphere of contempt for constitutional rights within MCSO.

334. 271. Contrary to the their duty to supervise and train, therefore, Sheriff Arpaio, MCSO, and Maricopa County created an atmosphere of contempt for constitutional rights within MCSO that affected other Defendants.

335. 272. Sheriff Arpaio, MCSO, and Maricopa County knew or had reason to know facts which would lead a reasonable person to realize that such an atmosphere of contempt and such failure to properly supervise and/or train detectives would create an unreasonably high risk of harm to Mrs. Norton Plaintiffs.

336. 273. Sheriff Arpaio and Maricopa County, therefore, are liable to Mrs. Norton Plaintiffs for gross negligence in the performance of their duties to supervise and train detectives.

-43-

337. ~~274.~~ Sheriff Arpaio and Maricopa County are liable to ~~Mrs. Norton for~~each Plaintiff so injured for compensatory damages and Special Damages in amounts to be proven at trial.

### ~~IX~~XXIII. Punitive Damages

338. ~~275.~~ Plaintiffs incorporate all prior allegations.

339. ~~276.~~ The conduct here by Sheriff Arpaio, MCSO, Sergeant Henderson, and Detectives Locksa, Gandara, and Hechavarria ~~and Gandara~~ was outrageous, aggravated, malicious, and fraudulent because it was intentionally undertaken to subject Mr. Frimmel and Mrs. Norton to an unwarranted arrest and criminal prosecution as retaliation for their cooperation with the Department of Justice's investigation of MCSO and out of religious and racial prejudice.

340. ~~277.~~ This conduct was undertaken with an evil mind because each of these Defendants surely should have been consciously aware of the evil nature of his actions, of the spitefulness of his motives and/or that such conduct is outrageous, oppressive or intolerable because it creates a substantial risk of tremendous harm to others.

341. ~~278.~~ Sheriff Arpaio, Maricopa County, Sergeant Henderson, and Detectives Locksa, Gandara, and Hechavarria ~~and Gandara~~, therefore, are liable for punitive damages in an amount sufficient to deter them and others similarly situated from engaging in such misconduct in the future.

### PRAYER FOR RELIEF

Based on the foregoing claims, Plaintiffs ~~Norton~~ ask for the following relief:

A.     Compensatory damages and ~~special damages~~Special Damages to be awarded jointly against all Defendants in an amount sufficient to fully compensate ~~Mrs. Norton~~each Plaintiff for: (a) injury to business interests (including lost profits and diminution in the value of business assets and opportunities); (b) emotional distress; (c) ~~loss of consortium; (d)~~ injury to reputation; and (d) physical injuries incurred during the unwarranted rough restraint of Mr. Frimmel, and medical expenses and other special damages related thereto; (e) attorneys' fees and other expenses incurred defending against unwarranted criminal

-44-

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

charges; and (f) attorneys' fees and other related litigation expenses incurred pursuing this action.

B. Punitive damages to be awarded jointly against Sheriff Arpaio, Maricopa County, Sergeant Henderson, and Detectives Locksa, Gandara, and Hechavarria in an amount sufficient to deter them and others similarly situated from engaging in such misconduct in the future.

C. Attorneys' fees and expert witness fees and related expense incurred pursuing the claims made herein.

D. Further relief as the Court deems just.

DATED this ~~23rd~~12th day of ~~April~~June, 2015.

GORDON & REES LLP

By:  ___*s/ Leon B. Silver*___
Leon B. Silver
Andrew S. Jacob
111 W. Monroe St., Suite 1600
Phoenix, AZ  85003

Attorneys for Plaintiffs
*~~LISA and WILLIAM BRUCE NORTON, husband and wife~~*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ  85003

-45-

*~~First~~*Second Amended Complaint, *~~Norton~~Frimmel v. Arpaio*

Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, AZ 85003

# Addendum

### Exhibits[1]

| Ex. | Description | Bates |
|---|---|---|
| A | 3217 E. Shea Blvd., Phoenix, Search Warrant | GR000001 |
| B | 13325 E. Cochise Rd., Scottsdale, Search Warrant | GR000021 |
| C | 18913 N. 83rd Ave., Search Warrant | GR000041 |
| D | Norton Cell Records, Search Warrant | GR000067 |
| E | Frimmel Cell Records, Search Warrant | GR000071 |
| F | Cell Data, Search Warrant | GR000083 |
| G | Docket Charges Against Witnesses | GR000094 |
| H | Probable Cause Statement | GR000096 |
| I | MCSO Press Release | GR000100 |
| J | Frimmel Indictment | GR000102 |
| K | Norton Indictment | GR000110 |
| L | Grand Jury Transcript | GR000118 |
| M | Fernando Gonzalez, Free-Talk transcript | GR000165 |
| N | Emigdio Munoz Gonzalez, Free-Talk report | GR000199 |
| O | Victor Vargas, Free-Talk transcript | GR000205 |
| P | Manuel ~~Arrendo~~Arredondo, Free-Talk transcript | GR000243 |
| Q | Minute Entry, April 15, 2015 | GR000303 |

---

[1] ~~Exhibits "A" through "P" were filed as Doc. 1-1, attachments to Complaint, Doc. 1. Exhibit "Q" is filed as an attachment to this First Amended Complaint.~~

~~First~~Second Amended Complaint, ~~Norton~~Frimmel v. Arpaio

1

2

## CERTIFICATE OF SERVICE

3       I hereby certify that on June 19, 2015, I electronically transmitted the Second

4   Amended Complaint to the Clerk's Office using the CM/ECF System for filing and
    transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

5

6       Michele M. Iafrate
        **IAFRATE & ASSOCIATES**

7       649 North Second Avenue
        Phoenix, AZ 85003

8       *Attorneys for Individual Defendants and MCSO*

9

10      William G. Montgomery
        **MARICOPA COUNTY ATTORNEY**

11      By: Ann Thompson Uglietta
        Deputy County Attorney

12      CIVIL SERVICES DIVISION

13      222 North Central Avenue, Suite 1100
        Phoenix, AZ 85004

14      *Attorneys for Maricopa County*

15                                          *s/ Helena Lipski*

16

17

18

19

20

21

22

23

24

25

26

27

28

-47-

*Gordon & Rees LLP*
*111 W. Monroe Street, Suite 1600*
*Phoenix, AZ 85003*

Document comparison by Workshare Compare on Friday, June 19, 2015 2:24:41 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://DMS/LEGAL/23271366/1 |
| Description | #23271366v1<LEGAL> - 1st Amended Complaint - Norton v  Arpaio |
| Document 2 ID | interwovenSite://DMS/LEGAL/23971116/1 |
| Description | #23971116v1<LEGAL> - Corrected Second Amended Complaint Frimmel v  Arpaio |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 390 |
| Deletions | 476 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 872 |