1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7             FOR THE DISTRICT OF ARIZONA
8
Lisa Norton, et al.,                    )    No.  CV-15-00087-PHX-SPL
9                                        )
                    Plaintiffs,          )
10                                       )    **ORDER**
    vs.                                  )
11                                       )
                                         )
12  Joseph M. Arpaio, et al.,            )
                                         )
13                  Defendants.          )
                                         )
14  _____ )

15          Before the Court is Defendants Joseph M. Arpaio, Joshua Henderson, Brandon

16  Jones, Christopher Hegstrom, Daniel Gandara, Sean Locksa, and Christopher

17  Hechavarria, (collectively, the "individual Defendants") and Defendant Maricopa

18  County's Motions to Dismiss. (Docs. 28, 32.) The motions are fully briefed and are ready

19  for decision. For the reasons that follow, the motions will be granted in part and denied in

20  part.

21  **I.     Background**

22          **A.     Factual Background[1]**

23          Plaintiff Bret Frimmel owns and operates Uncle Sam's restaurants through

24  Plaintiffs Pishka, Inc., and BRF Enterprises, LLC. (Doc. 25-1 ¶¶ 4, 20-23.) Plaintiff Lisa

25  Norton is the general manager of the Uncle Sam's restaurants. (Doc. 25-1 ¶ 6.) Denee

26  Porter Ishak stopped working for Uncle Sam's in January 2011 after being admonished

27  _____

28  [1]     For purposes of the Motions to Dismiss, the Court takes Plaintiffs' well-pleaded
    allegations as true. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

for poor work behavior. (Doc. 25-1 ¶ 67(g).) Her husband, Said Ishak, continued working for Uncle Sam's until June 2012. (Doc. 25-1 ¶ 67(a), (i).) On August 2, 2012, Said was arrested for felony theft of funds from Uncle Sam's. (Doc. 25-1 ¶ 67(c).) On the same day, Denee placed a tip call to the Maricopa County Sheriff's Office ("MCSO"). (Doc. 25-1 ¶ 67(d).) On July 16, 2013, Joshua Henderson, a sergeant with MCSO, applied for three search warrants, one for Uncle Sam's restaurant located on Shea Boulevard in Phoenix (Doc. 25-2 at 1-20), one for Uncle Sam's restaurant located on 83rd Avenue in Peoria (Doc. 25-2 at 41-60), and one for Frimmel's personal residence in Scottsdale (Doc. 25-2 at 21-40). In the applications for search warrants, Henderson stated that he learned of the crimes on October 30, 2012 (Doc. 25-2 at 2, 5, 22, 25, 42, 45); however, this date does not correlate with any other records. The next day, Henderson executed the search warrants. (Doc. 25-1 ¶ 72.) MCSO personnel arrested nine employees for being unauthorized aliens working using the identities of others. (Doc. 25-1 ¶ 74.) Out of the nine arrested employees, four were charged with identity theft; the remaining employees were released without charges. (Doc. 25-1 ¶¶ 75-76.) The four employees eventually pleaded guilty to Taking the Identity of Another, in violation of A.R.S. § 13-2008. (Doc. 25-2 at 94-95.) Frimmel and Norton were not arrested, nor was there any indication that they were suspected of any crimes. (Doc. 25-1 ¶ 77.) A few days after the raid, a Department of Justice ("DOJ") investigator, Sarah Lopez, asked Frimmel for his assistance with their ongoing investigation of MCSO. (Doc. 25-1 ¶ 84.) Plaintiffs allege that at some point prior to January 22, 2014, Defendants learned of Frimmel's cooperation with the DOJ. (Doc. 25-1 ¶ 85.)

On January 22, 2014, Frimmel and Norton were arrested. (Doc. 25-1 ¶ 86.) MCSO issued a press release detailing the arrest and the charges. (Doc. 25-2 at 100-01.) Sheriff Arpaio granted a televised interview regarding the arrests. (Doc. 25-1 ¶ 149.) On the same day, at the direction of Henderson and Detective Darren Frei, Detective Gandara requested a search warrant to obtain Norton's cell phone records. (Doc. 25-2 at 62.) Additionally, Henderson directed Detective Hechavarria to obtain a search warrant for

Frimmel and Norton's cell phones. (Doc. 25-2 at 87-91.) On February 4, 2014, Detective Locksa, at Henderson's direction, obtained a search warrant for Frimmel's cell phone records. (Doc. 25-2 at 72-75.) On February 7, 2014, Frimmel and Norton were indicted by a grand jury including charges for Conspiracy to Commit Taking Identity of Another, Taking Identity of Another, Trafficking in the Identity of Another, and Forgery. (Doc. 25-2 at 102-164.) On January 15, 2015, the Maricopa County Superior Court ("Superior Court") dismissed the violations for taking the identities of another as preempted by federal law. (Doc. 25-1 ¶ 229.) On the same day, all criminal charges against Norton were dismissed. (Doc. 32 at 13.)

On March 6, 2015, the Superior Court held an evidentiary hearing regarding the search warrants obtained on July 16, 2013; January 22, 2014; and February 4, 2014. (Doc. 25-2 at 303.) On April 15, 2015, Judge Sam J. Meyers of the Superior Court found numerous errors in the affidavits, found no probable cause to issue the warrants, and voided the warrants. (Doc. 25-2 at 303-11.) On April 23, 2015, all remaining charges against Frimmel were dismissed. (Doc. 25-1 ¶ 233.)

**B.    Procedural History**

On January 20, 2015, Plaintiffs filed complaints in federal court. (Doc. 1 of 2:15-cv-00087-SPL and Doc. 1 of 2:15-cv-00088-SRB.) On June 5, 2015, the cases were consolidated under Case No. 2:15-cv-00087-SPL. On June 19, 2015, Plaintiffs filed a Corrected Second Amended Complaint ("SAC"). (Doc. 25-1.) Plaintiffs bring thirteen state and federal claims against Defendants Maricopa County, Joseph M. Arpaio, Joshua Henderson, Brandon Jones, Christopher Hegstrom, Daniel Gandara, and Christopher Hechavarria. Count I and II are state and federal claims for malicious arrest and prosecution against Maricopa County, Arpaio, Henderson, Gandara, Locksa, and Hechavarria. Count III is a state and federal claim for abuse of process against Maricopa County, Arpaio, and Henderson. Counts IV and V are § 1983 claims for illegal search and seizure. Count IV is regarding the cell phone warrants and is brought against Maricopa County, Arpaio, Hechavarria, Gandara, and Locksa. Count V is regarding the

raid of Frimmel's personal residence and is brought against Maricopa County, Arpaio, and Henderson. Counts VI and VII are for a violation of civil rights under 42 U.S.C. § 1981 and conspiracy to interfere with civil rights under 42 U.S.C. § 1985. Count VI is brought against Maricopa County, Arpaio, and Henderson, and Count VII is brought against all Defendants. Count IX is a state-law claim for defamation brought against Maricopa County, Arpaio, Henderson, Jones and Hegstrom. Count X is a state-law claim for grossly negligent restraint during arrest against Maricopa County and Henderson. Count XI is a state-law claim for intentional infliction of emotional distress brought against all Defendants. Count XII is a state-law claim for grossly negligent supervision brought against Maricopa County and Arpaio. Counts VIII and XIII are for attorneys' fees and punitive damages, respectively.

The individual Defendants bring a partial motion to dismiss pursuant Federal Rules of Civil Procedure 8(a) and 12(b)(6), and A.R.S. §§ 12-821, 12-821.01, 12-820.04. (Doc. 28.) Maricopa County brings a motion to dismiss all claims for failure to state a claim under 12(b)(6). (Doc. 32.) Additionally, Maricopa County moves to dismiss the state-law claims pursuant to A.R.S. §§ 12-821, 12-821.01. Plaintiffs oppose the motions (Docs. 34-35), and Defendants replied (Docs. 36-37). The motions are ready for decision.

**II.    Standard of Review**

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The Court may dismiss a complaint for failure to state a claim under 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

A complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678

(2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility requires the plaintiff to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (internal citations omitted). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Thus, Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

In deciding a motion to dismiss the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, *id.*, and "are insufficient to defeat a motion to dismiss for failure to state a claim," *In re Cutera Sec. Litig.,* 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). A plaintiff need not prove the case on the pleadings to survive a motion to dismiss. *OSU Student Alliance v. Ray,* 699 F.3d 1053, 1078 (9th Cir. 2012).

## III.   Maricopa County

### A.   Federal Claims

#### 1.   Legal Standard

A local governmental unit may not be held responsible for the acts of its employees under a respondeat superior theory of liability. *See Connick v. Thompson*, 131

S. Ct. 1350, 1359 (2011); *Monell v. Dep't of Soc. Servs. of the City of N.Y.,* 436 U.S. 658, 691 (1978). A plaintiff must go beyond the respondeat superior theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality, and not the actions of the employees of the municipality. *Id.* Under *Monell*, local governmental liability may be based on any of three theories: (1) an expressly adopted official policy; (2) a longstanding practice or custom; or (3) the decision of a person with final policymaking authority. *Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir. 2004).

A policy "promulgated, adopted, or ratified by a local governmental entity's legislative body unquestionably satisfies *Monell*'s policy requirement." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc). Moreover, a policy of inaction may be a governmental policy within the meaning of *Monell*. *See Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). Even if there is not an explicit policy, a plaintiff may establish liability upon a showing that there is a permanent and well-settled practice by the governmental unit that gave rise to the alleged constitutional violation. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Allegations of random acts, or single instances of misconduct, however, are insufficient to establish a municipal custom.  *See Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995).

With regard to policy-making authority, "a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346-47 (9th Cir. 1992)). A choice among alternatives by an official with final decision-making authority may also serve as the basis of municipal liability. *See Waggy*, 594 F.3d at 713. To identify officials with final policy-making authority, the court should look to

1  state law; it is not a question for the jury.  *See Praprotnik*, 485 U.S. at 124-126.

2  "In this circuit, a claim of municipal liability under § 1983 is sufficient to

3  withstand a motion to dismiss even if the claim is based on nothing more than a bare

4  allegation that the individual officers' conduct conformed to official policy, custom, or

5  practice." *AE ex rel. Hernandez v. Cnty. of Tulare,* 666 F.3d 631, 636 (9th Cir. 2012)

6  (citation omitted).

7  **2.  Discussion**

8  **a.  42 U.S.C. § 1983 Claims**

9  Maricopa County alleges that Plaintiffs have failed to state a claim because the

10  County is not liable for the acts of its employees under a respondeat superior theory and

11  that Plaintiffs have failed to identify a policy or custom to support liability against it.

12  (Doc. 32 at 2.) Here, however, Plaintiffs brought federal claims against Maricopa County

13  based on policy, custom and practice, and the final decision-making authority of Arpaio.

14  (Doc. 25-1 ¶¶ 29-33.) Although Plaintiffs are not required to identify specific policies at

15  the pleading stage, Plaintiffs identified multiple MCSO policies and practices that caused

16  their alleged injuries, *e.g.,* tolerating defamation, providing false or incomplete affidavits

17  in support of search warrants, and providing false or incomplete testimony to grand

18  juries. (Id.) Despite Maricopa County's assertions to the contrary, Plaintiffs support these

19  allegations with a multitude of facts. (*See* Doc. 25-1.) Plaintiffs have met their burden to

20  state a claim against Maricopa County.

21  **b.  42 U.S.C. § 1981 (Count VI)**

22  Plaintiff Frimmel[2] alleges that Maricopa County, Arpaio, and Henderson violated

23  his civil rights pursuant to 42 U.S.C. § 1981 by having animus toward those with Jewish

24  ancestry. (Doc. 25-1 ¶¶ 283-91.) Frimmel alleges that such animus motivated Defendants

25  when deciding to give false, misleading affidavits and testimony, and selectively

26  prosecuting him. (Id.) Defendants argue that Frimmel failed to plead the necessary

27  elements for a valid § 1981 claim. (Docs. 28 at 8; 37 at 5.)

28  _____

   [2]      Plaintiff Frimmel clarifies that he alone brings this claim. (Doc. 34 at 8.)

42 U.S.C. § 1981(a) states that:

> All persons within the jurisdiction of the United states shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The statute, on its face, "relates primarily to racial discrimination in the making and enforcement of contracts." *Johnson v. Railway Exp. Agency, Inc.,* 421 U.S. 454, 459 (1975). In 1975, the Supreme Court held that § 1981 provided a remedy against discrimination in private employment on the basis of race. *Id.* at 460. "Where an alleged act of discrimination does not involve the impairment of one of these specific rights, § 1981 provides no relief." *Patterson v. McLean Credit Union,* 491 U.S. 164, 176 (1989) *superseded by statute on other grounds as stated in CBOCS West, Inc. v. Humphries,* 553 U.S. 442 (2008). Like § 1983, governmental liability under § 1981 cannot be premised on a respondeat superior theory. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1215 (9th Cir. 1996). Rather, a municipality may only be held liable for an injury that resulted from municipal action or inaction.

Here, Frimmel's allegations do not relate to a contract or an employment relationship or any of the other enumerated protections in 42 U.S.C. § 1981. To the extent Frimmel argues that his arrest and prosecution impaired his ability to conduct business (Doc. 34 at 9), his argument is unavailing. While true that § 1981 applies to activities that block the creation of a contractual relation, *see Domino's Pizza, Inc. v. McDonald,* 546 U.S. 470, 476 (2006), Frimmel has not identified a specific contract, nor identified how Defendants blocked the formation of the contract. Rather, Frimmel alleges that he lost profits, good will, and value. (Doc. 34 at 9.) Even taking all allegations as true, Frimmel fails to state a § 1981 claim. Accordingly, Count VI will be dismissed. Because 42 U.S.C. § 1981 does not apply to the circumstances at issue here, the Count will be dismissed with prejudice.

1

### c.       42 U.S.C. § 1985(3) (Count VII)[3]

2      Plaintiff Frimmel alleges that Defendants acted in concert to interfere with his

3    civil rights based on animus toward those of Jewish ancestry and faith. (Doc. 25-1 ¶¶

4    292-98.) Defendants contend that Frimmel failed to state specific facts to support the

5    existence of a conspiracy, and that a county cannot conspire with itself under the

6    intracorporate conspiracy doctrine. (Doc. 32 at 8-11.)

7      "To bring a cause of action successfully under § 1985(3), a plaintiff must allege

8    and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly

9    or indirectly, any person or class of persons of the equal protection of the laws, or of

10   equal privileges and immunities under the laws; and (3) an act in furtherance of this

11   conspiracy; (4) whereby a person is either injured in his person or property or deprived of

12   any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.,* 978

13   F.2d 1529, 1536 (9th Cir. 1992) (citation omitted). "To state a claim for conspiracy to

14   violate constitutional rights, the plaintiff must state specific facts to support the existence

15   of the claimed conspiracy." *Olsen v. Idaho State Bd. of Med.,* 363 F.3d 916, 929 (9th Cir.

16   2004) (citation and quotation marks omitted); *see also Karim-Panahi v. Los Angeles

17   Police Dep't,* 839 F.2d 621, 626 (9th Cir. 1988) ("A mere allegation of conspiracy

18   without factual specificity is insufficient."). Defendants need not show an express

19   agreement, but there must be at least a tacit understanding. *In re Sunset Bay Assoc.,* 944

20   F.2d 1503, 1517 (9th Cir.1991). The existence of a conspiracy may be inferred from the

21   nature of the acts, the relations of the parties, the interests of the alleged conspirators, and

22   the circumstances, *id.,* but "a plaintiff must allege specific facts which support the

23   inference of an agreement." *S. Union Co. v. Sw. Gas Corp.,* 165 F. Supp. 2d 1010, 1021

24   (D. Ariz. 2001).

25      Here, Frimmel's only factual support for racial animus is a single derogatory

26   statement made by Henderson. (Doc. 25-1 at 30.) Taken as true, this statement fails to

27

28

---

[3]      Plaintiff Frimmel clarifies that this claim is brought under 42 U.S.C. § 1985(3). (Doc. 34 at 10.)

allege a conspiracy. Frimmel does not allege any facts to support the allegation that any Defendant, other than Henderson, harbors any racial animus toward Frimmel or knew of Henderson's alleged racial bias. Frimmel has failed to allege facts to support the existence of an agreement or meeting of the minds between Defendants, whether the agreement be specific or inferred from conduct. Although Frimmel alleges that the deprivation of his rights was the result of such an agreement, he does not provide any factual support. Plausibility requires more than a sheer possibility that Defendants acted unlawfully. *Iqbal,* 556 U.S. at 678.

Although the Ninth Circuit has not yet decided whether the intracorporate conspiracy doctrine applies to civil rights cases, *Portman v. Cnty. of Santa Clara,* 995 F.2d 898, 910 (9th Cir. 1993), those district courts within this Circuit that have addressed the issue consistently have held that it does apply, including this Court. *See Donahoe v. Arpaio,* 869 F.Supp.2d 1020, 1074 (D. Ariz. 2012) (the intracorporate conspiracy doctrine "bars a claim for conspiracy where the allegation is that an entity conspired with its employees to violate an individual's constitutional right"); *Schmitz v. Mars, Inc.,* 261 F.Supp.2d 1226, 1235 (D. Or. 2003) (agreeing with the majority of circuit courts that the intracorporate conspiracy doctrine applies to § 1985 actions); *Hoefur v. Fluor Daniel, Inc.,* 92 F.Supp.2d 1055, 1057 (C.D. Cal. 2000) ("the intracorporate conspiracy doctrine applies to 42 U.S.C. § 1985 conspiracy claims"). Here, all Defendants are Maricopa County or County employees and the County cannot conspire with its own employees. Because the deficiency cannot be cured by amendment, Count VII will be dismissed with prejudice.

**B.    State-Law Claims[4]**

"[T]he County, having no right of control over the Sheriff or his deputies …, is not liable under the doctrine of Respondeat superior for the Sheriff's torts." *Fridena v. Maricopa Cnty.,* 504 P.2d 58, 61 (Ariz. Ct. App. 1972). In 2010, Arizona courts determined that a county sheriff's office was a nonjural entity and lacked capacity to be

---

[4]    Counts II, III, IX, X, XI, and XII.

sued. *Braillard v. Maricopa Cnty.,* 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). Based on this holding, the Ninth Circuit substituted Maricopa County for MCSO in *Melendres v. Arpaio,* 784 F.3d 1254, 1260 (9th Cir. 2015).

Maricopa County asserts that it may not be held vicariously liable for the actions of MCSO personnel. (Doc. 32 at 15-16.) Plaintiffs urge the Court to find the holdings in *Braillard* and *Melendres* take precedence over the holding in *Fridena*. (Doc. 34 at 15.) However, *Braillard* did not overrule *Fridena; Braillard* held only that a sheriff's office could not be sued. The Court, therefore, must read the cases together. *Fridena* and *Braillard,* read together, appear to bar all state-law claims against a county for the acts of a sheriff's department. Neither Arizona's intermediate appellate courts nor the Arizona Supreme Court have directly addressed the issue. However, federal judges in this district have agreed with the holding in *Fridena*, even after the holding in *Braillard*. *See Sannoufi v. Maricopa Cnty.,* 2:14-cv-00515-SRB,  (D. Ariz. June 2, 2014); *Kloberdanz v. Arpaio,* 2:13-cv-02181-JSW,  (D. Ariz. Jan. 28, 2014); *Nevels v. Maricopa Cnty.,* 2:11-cv-02466-JAT,  (D. Ariz. May 9, 2012). This Court follows suit. Accordingly, all state-law claims against Maricopa County will be dismissed.

**IV.    Individual Defendants**

**A.    Count I – Malicious Arrest and Prosecution, 42 U.S.C. § 1983[5]**

Plaintiffs allege that the MCSO investigation "did not show probable cause for the search warrant, arrests, or indictments." (Doc. 25-1 ¶ 237.) Plaintiffs allege that the "decision to prosecute may not be based upon an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights." (Doc. 25-1 ¶ 239.) Plaintiffs further allege that Defendants violated their first, fourth, fifth, and fourteenth amendment rights, as well as their rights under the

---

[5]    The Court has no easy task here. Count I of Plaintiffs' SAC lacks clarity as to exactly what charges they attempt to bring. This is compounded by the parties lack of understanding of the different causes of action under § 1983 and the elements of each. However, on a motion to dismiss, the Court does not review the SAC for perfection, but to determine if it states a claim. The Court addresses the causes of action that are most obviously contained within Count I.

11

Arizona Constitution. (Doc. 25-1 ¶ 247.) Lastly, Plaintiffs allege two motivating factors in Defendants' actions: "(a) animus towards individuals with Jewish ancestry; and (b) an intention to retaliate for Mr. Frimmel and Mrs. Norton cooperating with the Department of Justice and discourage further cooperation." (Doc. 25-1 ¶ 244-46.) Defendants assert that Plaintiffs have "failed to allege any facts to support their conclusions of racial animus or retaliation." (Doc. 28 at 4.) Defendants also assert that Plaintiffs failed "to plead any facts that show Defendant Arpaio took any independent, individual action to deprive Plaintiffs of their constitutional right." (Doc. 28 at 5.)

### 1.   Search Warrants and Malicious Arrest

The elements for judicial deception regarding obtaining an arrest warrant and obtaining search warrants are the same. "It is clearly established that judicial deception may not be employed to obtain a *search warrant*. To support a § 1983 claim of judicial deception, a plaintiff must show that the defendant deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. The court determines the materiality of alleged false statements or omissions." *KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir. 2004) (internal citations omitted). "To maintain a false arrest claim for judicial deception, a plaintiff must show that the officer who applied for the *arrest warrant* deliberately or recklessly made false statements or omissions that were material to the finding of probable cause. The materiality element—a question for the court—requires the plaintiff to demonstrate that the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Smith v. Almada,* 640 F.3d 931, 937 (9th Cir. 2011) (internal citations and quotation marks omitted).

Whether Defendants acted out of racial animus or retaliation are not required elements to allege § 1983 claims for malicious arrest and judicial deception in the attainment of search warrants. Plaintiffs adequately stated a claim that Defendants Henderson, Gandara, Locksa, and Hechavarria deliberately or recklessly made material false statements or omissions to obtain *search warrants* which resulted in the issuance of

*search warrants* that lacked probable cause. (Doc. 25-1 ¶¶ 65-71, 91-115.) Plaintiffs also adequately pleaded that Henderson deliberately or recklessly made material false statements or omissions to obtain *arrest warrants* which resulted in the issuance of *arrest warrants* that lacked probable cause. (Doc. 25-1 ¶¶ 86-90, 116-138.)

## 2.    Malicious Prosecution

"A criminal defendant may maintain a malicious prosecution claim not only against prosecutors but also against others—including police officers and investigators—who wrongfully caused his prosecution. To maintain a § 1983 action for malicious prosecution, a plaintiff must show that the defendants prosecuted her with malice and without probable cause, and that they did so for the purpose of denying [plaintiff] a specific constitutional right." *Almada,* 640 F.3d at 938 (internal citations and quotation marks omitted). A § 1983 claim may be maintained against "state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy v. City of Adelanto,* 368 F.3d 1062, 1067 (9th Cir. 2004). An additional element of malicious prosecution "is termination of the prior criminal proceeding in favor of the accused." *Heck v. Humphrey,* 512 U.S. 477, 484 (1994).

As noted above, Plaintiffs adequately pleaded the lack of probable cause. Plaintiffs also adequately pleaded a violation of their constitutional rights, citing the first, fourth, fifth, and fourteenth amendments.[6] Additionally, Plaintiffs pleaded the termination of criminal proceedings in their favor. The parties, however, dispute whether Plaintiffs adequately pleaded malice. (Doc. 36 at 3.) The elements of malice and lack of probable cause in malicious prosecution precede the enactment of 42 U.S.C. § 1983. *See Dinsman v. Wilkes,* 53 U.S. 390 (1851) (malicious prosecution applied to criminal proceedings

---

[6]    Although Plaintiffs are not more specific in Count I, Plaintiffs made numerous factual allegations in the SAC that, taken as true, support a constitutional violation under any of these four amendments. Because Plaintiffs could proceed under any of these theories, the Court finds it sufficient to state a claim.

"where a party had maliciously, and without probable cause, procured the plaintiff to be indicted or arrested for an offence of which he was not guilty."). However, Defendants read too much into the requirements to allege "malice," and too little into Plaintiffs' SAC. Any time a plaintiff alleges that law enforcement officers used falsehoods, misleading information, or omitted information to obtain prosecutions against innocent persons, as here, malice can be inferred. Plaintiffs' SAC is replete with allegations that Defendants "falsely" made statements. Defendants are parsing Plaintiffs' words in order to assert failure to state a claim. That is not the purpose of Rules 8(a), 12(b)(6), or of *Iqbal/Twombly*. Plaintiffs have given Defendants adequate notice of the basis of their claim. (Doc. 25-1 ¶¶ 156-234.) Additionally, the Court finds the Ninth Circuit's reasoning persuasive: "No reasonable official could claim that he could not know that it violates the established law maliciously and selectively to use without probable cause a criminal prosecution for the purpose of infringing upon a person's constitutional rights." *Poppell v. City of San Diego,* 149 F.3d 951, 961 (9th Cir. 1998). Defendants have failed to prove that Plaintiffs failed to state a claim as to malicious prosecution.

### 3.     Retaliatory Prosecution

Plaintiffs also bring a retaliation claim, alleging Defendants decision to prosecute was in retaliation for Plaintiffs' cooperation with the Department of Justice. In a § 1983 retaliation claim, a "plaintiff must show a causal connection between a defendant's retaliatory animus and subsequent injury." *Hartman v. Moore,* 547 U.S. 250, 259 (2006). A retaliatory prosecution claim differs in two ways: (1) the existence of probable cause is "highly valuable circumstantial evidence to prove or disprove retaliatory causation;" and (2) is brought against an official who influenced the prosecutorial decision. *Id.* at 260-62. A showing of the absence of probable cause bridges the gap between the non-prosecutor's retaliatory motive and the prosecutor's injurious action. *Id.* at 263. A lack of probable cause, along with a retaliatory motive, is "enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge." *Id.* at 265.

14

Defendants argue that "Plaintiffs fail to plead any facts that show Defendants knew Plaintiffs allegedly cooperated with the DOJ," and that "there is no information or assertion that [Norton] allegedly cooperated with the DOJ." (Doc. 28 at 5.) At this stage of the litigation, Plaintiffs' allegations are taken as true. Plaintiffs have adequately alleged a retaliatory motive—knowledge of cooperation with the DOJ (Doc. 25-1 ¶ 85)— and lack of probable cause. To the extent that Plaintiffs failed to plead that Norton actually cooperated with the DOJ, it is immaterial here. It is far more relevant whether Defendants believed she cooperated with the DOJ. Plaintiffs have adequately alleged that Defendants were wrongfully motivated by an intent to retaliate against Frimmel and Norton for their cooperation with the DOJ. (Doc. 25-1 ¶¶ 244-46.)

### 4.        Racial Animus

Plaintiffs also allege that Defendants prosecuted them based on racial animus because of Frimmel's Jewish ancestry. Plaintiffs make no allegations that Norton has Jewish ancestry. "The issue is not whether the plaintiff ultimately will prevail, but whether he is entitled to offer evidence to support his claim." *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1987). Plaintiffs have met the pleading standards. *See Awabdy,* 368 F.3d at 1071 (upholding plaintiff's right to proceed on a claim "that the prosecutor would not have initiated the prosecution but for the false reports that other public officials lodged because of their racial animus.").

### 5.        Sheriff Arpaio

Defendants contend that Plaintiffs have failed to allege facts sufficient to state a § 1983 claim against Arpaio. (Doc. 28 at 5.)[7]

For an individual to be liable in his *official* capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom. *See Cortez v. Cnty. of Los Angeles,* 294 F.3d 1186, 1188 (9th Cir.2002) (citation omitted). There is no respondeat superior liability under § 1983, so a defendant's position as the supervisor of someone

---

[7]        The § 1983 claims are Counts I, IV, and V. Counts IV and V are not in dispute in the motion to dismiss; therefore, Defendants' argument is only applicable to Count I.

who allegedly violated a plaintiff's constitutional rights does not make him liable. *Monell,* 436 U.S. at 691; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989) (citation omitted). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676. A supervisor in his *individual* capacity "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor,* 880 F.2d at 1045.

Plaintiffs sue Defendant Arpaio in both his *individual* and *official* capacities. (Doc. 25-1 ¶¶ 27-36.) As to *official* liability, Plaintiffs allege that Arpaio is responsible for setting and implementing MCSO policies and practices that tolerate, if not encourage, MCSO detectives to provide materially false and/or incomplete: (a) affidavits in support of search warrants, and (b) testimony to grand juries. (Doc. 25-1 ¶¶ 32-33.) These allegations are sufficient to state a claim against Arpaio in his *official* capacity as they allege that Arpaio acted as a result of policy, practice, or custom.

As for *individual* liability, Plaintiffs allege that Arpaio personally participated in media interviews regarding their arrests. (Doc. 25-1 ¶¶ 141, 148-149, 151-152.) If Arpaio was familiar enough with the investigation to grant media interviews, it is plausible that Arpaio either "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor,* 880 F.2d at 1045. This is sufficient to state a claim against Arpaio in his *individual* capacity.

**B.      Notice of Claim Issues Related to the State-Law Claims**

**1.      Statute of Limitations against Public Entities**

A.R.S. § 12-821 requires that "[a]ll actions against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821.

In regards to the charge of defamation in Count IX, Hegstrom alleges that he was listed as the contact person for the MCSO press releases issued on July 17 and July 18,

16

2013. (Doc. 28 at 2.) Plaintiffs did not file their complaints until January 20, 2015, outside of the one-year statute of limitations. Plaintiffs respond that their allegations against Hegstrom do not arise from the July 17 and July 18, 2013 press releases, but rather from a January 22, 2014 press release made after Plaintiffs' arrests. (Doc. 35 at 4.) Hegstrom is correct that press releases issued in July 2013 would be outside the statute of limitations. The SAC refers to the January 22, 2014 press release, including identifying specific false statements that were made in that press release. (Doc. 25-1 ¶¶ 143-44.) Plaintiffs attached a copy of the January 22, 2014 press release to the SAC. (Doc. 25-2 at 100-01.) Nowhere in the SAC do Plaintiffs mention the press releases of July 17 and July 18, 2013. Although Hegstrom alleges that the "defamation claim against Defendant Hegstrom can only be based on a 2013 news release," and that connecting Hegstrom to the January 2014 press release lacks factual support (Doc. 36 at 1-2), at this stage of the litigation, the Court presumes the truth of Plaintiffs' allegations. Additionally, this is a factual dispute, not a failure to state a claim. Therefore, the Court denies Defendants' motion to dismiss with regard to Count IX against Hegstrom.

### 2.    Notice of Claim for Count II – Malicious Prosecution

"The statute permits an action against a public entity to proceed only if a claimant files a notice of claim that includes (1) facts sufficient to permit the public entity to understand the basis upon which liability is claimed, (2) a specific amount for which the claim can be settled, and (3) the facts supporting the amount claimed. These statutory requirements serve several important functions: They allow the public entity to investigate and assess liability, ... permit the possibility of settlement prior to litigation, and ... assist the public entity in financial planning and budgeting." *Backus v. State,* 203 P.3d 499, 502 (Ariz. 2009) (en banc) (internal citations and quotation marks omitted). The notice must be filed within 180 days after the cause of action accrues or the claim is barred. A.R.S. § 12-821.01(A). Failure to comply with any aspect of the statute prevents a plaintiff's claim from going forward. *Deer Valley Unified Sch. Dist. v. Houser,* 152 P.3d 490, 493 (Ariz. 2007).

"[A] notice of claim filed before the claim legally accrues is not valid if it does not give the public entity sufficient information on which to investigate the claim and determine whether to settle or plan for the litigation." *Flood Control Dist. of Maricopa Cnty. v. Paloma Inv. Ltd. P'ship,* 279 P.3d 1191, 1206 (Ariz. Ct. App. 2012). A separate or amended claim is not required "when the same continuing nuisance is the cause of the injuries, and when that continuing condition is the subject of a lawsuit pending with the court after initial compliance with the claims statute." *Graber v. City of Peoria,* 753 P.2d 1209, 1212 (Ariz. Ct. App. 1988).

Plaintiffs served Notices of Claim on July 21, 2014. (Doc. 32 at 12.) The majority of the claims in the SAC fall within the one-hundred-eighty days requirement of A.R.S. § 12-821.01(A). However, Defendants argue that Plaintiffs did not accrue state-law malicious prosecution claims until the dismissal of the criminal charges against them. (Doc. 32 at 13.) The charges against Norton were dismissed on January 15, 2015, and the charges against Frimmel were dismissed on April 23, 2015. (Doc. 32 at 18.) Plaintiffs did not submit amended notices of claim to add a malicious prosecution claim. Defendants, therefore, seek dismissal of Count II. Plaintiffs respond that "the actual criminal prosecution … was a logical continuation of [their] wrongful arrest and wrongful indictment." (Doc. 34 at 12-13.)

In *Flood Control* and *Graber,* as here, the public entity did not contend that the notices of claim failed to give it sufficient information to investigate, assess liability, reach a settlement, or plan and budget for the litigation. *Flood Control,* 279 P.3d at 1207; *Graber,* 753 P.2d at 1211. The court found that the purpose of the claims statute was well served in each case.[8] *Flood Control,* 279 P.3d at 1206-07; *Graber,* 753 P.2d at 1212.

---

[8]    In *Haab v. Cnty. of Maricopa,* 191 P.3d 1025, 1028 (Ariz. Ct. App. 2008), the defendants took additional actions after *Haab*'s arrest, incarceration, and release, which included the release of *Haab*'s medical records and other sensitive information to the press. An investigation into *Haab*'s original allegations regarding his arrest through release would not necessarily have led to the discovery of the release of medical records. Additionally, his amended complaint did not contain any of the facts contained in the notice of claim. Essentially, they were two separate cases, alleging different facts and theories of liability. Here, however, an investigation into Plaintiffs' allegations in the notices of claim would necessarily include an investigation into the criminal charges

While neither factual scenario is precisely on point, this Court agrees with the reasoning in *Flood Control* and *Graber*—whether the notice of claim is valid depends on the sufficiency of the information and whether its allows the public entity to investigate the claim and assess its liability. *Flood Control,* 279 P.3d at 1206; *Graber,* 753 P.2d at 1212. Although the notices of claim are not before this Court,[9] the issue is legal rather than factual. As Defendants do not argue that the notices of claim were insufficient on the other Counts, the Court presumes that Defendants were put on notice that the original raid occurred based on the filing of false affidavits, that Plaintiffs were falsely arrested and indicted, and that Defendants defamed Plaintiffs. As Defendants indicate, Plaintiffs could not have claimed false prosecution until their criminal charges were dismissed. However, the underlying facts for the malicious prosecution claim are the same as those for the malicious arrest and indictment. Defendants did not initiate any new actions; they pressed on with the decisions they already had made. Defendants had all of the necessary information to investigate, assess liability, reach a settlement, or plan and budget for the litigation. The purpose of the claims statute was fulfilled. Count II will not be dismissed on this basis.

### 3.    Premises Search Warrants

Defendants assert that Plaintiffs may not use any information related to the search warrants obtained in July 2013 to prove any state-law claims. (Doc. 32 at 14.) They

---

against Plaintiffs as Plaintiffs alleged wrongful arrest and indictment. Prosecution of that indictment is essentially the next step in the criminal justice system. Even though *Haab* is distinguishable, the reasoning is consistent with *Flood Control* and *Graber*—does the claimant set forth facts sufficient to permit the public entity to understand the basis upon which liability is claimed.

[9]     The court may properly consider evidence outside of the complaint in a motion to dismiss if "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006). "The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). Here, the notices of claim were not mentioned in or attached to the SAC. Neither are the notices of claim central to Plaintiffs' claims. The Court may not, therefore, consider the notices of claim without converting the motion to one for summary judgment. The Court declines to do so given the early posture of the case.

allege two bases: (1) because the search warrants were issued more than 180 days prior to the filing of the notices of claim in July 2014, and (2) because the notices of claim did not contain the detailed factual information regarding the warrants that is contained in the SAC. (Doc. 32 at 14.) Defendants argue that "Plaintiffs [will] rely upon facts pertaining to the premises search warrants to support some of their State law claims for relief;" however, Defendants do not identify any specific state-law claims that they believe Plaintiffs need to rely on the search warrants to prove their claim. (Id.) Plaintiffs assert the allegations were made in regards to the § 1983 claim for illegal search and seizure in Count V. (Doc. 34 at 13.) A brief review of the SAC does not reveal any state-law claims that are so reliant. Therefore, this portion of Defendants' motion to dismiss is denied.

### 4.    Count XI – Intentional Infliction of Emotional Distress ("IIED")

Defendants further allege that Norton failed to serve a notice of claim on Locksa prior to bringing an intentional infliction of emotional distress claim. (Doc. 28 at 16.) In Plaintiffs' response, they clarify that they are not bringing an IIED claim against Locksa. (Doc. 35 at 17.) Therefore, Count XI will be dismissed as to Locksa, and the Court need not reach Defendants' argument.

### 5.    Settlement Amount

Defendants argue that Plaintiffs' notices of claim were not sufficiently specific to meet the requirements of A.R.S. § 12-821.01(A). (Doc. 28 at 15-16.) However, this argument is premature as the Court may not review the notices of claim at the motion to dismiss stage. *See Jones v. Cochise Cnty.,* 187 P.3d 97, 100 (Ariz. Ct. App. 2008).  As such, the Court will deny Defendants' motion to the extent it argues that Plaintiffs failed to state a specific settlement amount or provide enough detail to support the settlement amount. Defendants may raise such arguments in their motion for summary judgment.

### C.    State-Law Claims

### 1.    Count III – Abuse of Process

Plaintiffs' SAC identifies this as a state-law claim and a § 1983 claim. (Doc. 25-1 at 32.) However, Plaintiffs appear to abandon the § 1983 claim in their response to the

motion to dismiss. (Doc. 28 at 9.) The Court, therefore, only reviews whether Plaintiffs state a claim for abuse of process as a state-law claim. The elements of an abuse of process action under Arizona law are (1) an ulterior purpose, and (2) a willful act in the use of the process not in the regular conduct of the proceeding. *Pochiro v. Prudential Ins. Co. of Am.,* 827 F.2d 1246, 1252 (9th Cir. 1987). A plaintiff need not prove that the proceeding terminated in his favor, nor that it was begun without probable cause. *Joseph v. Markovitz,* 551 P.2d 571, 574 (Ariz. Ct. App. 1976). The focus is on the purpose for which the process is used after it is issued. *Id.* Some definite act that is not authorized by the process or having an illegitimate objective in the use of the process is required. *Id.* at 575. Mere carrying out of process, even if there are bad intentions, is not enough. *Id.* "Process" encompasses "the entire range of procedures incident to the litigation process." *Crackel v. Allstate Ins. Co.,* 92 P.3d 882, 887 (Ariz. Ct. App. 2004).

Here, Plaintiffs allege that they were arrested and prosecuted "primarily for the improper purposes of retaliation for their perceived and actual cooperation with the Department of Justice Investigation of MCSO and deterrence of further cooperation." (Doc. 25-1 ¶ 256.) Defendants argue that Plaintiffs' claim lacks sufficient facts to support it. (Doc. 28 at 7.) The Court disagrees. The bulk of Plaintiffs' SAC is devoted to detailing the ways in which Defendants improperly used the criminal justice system. If true, making false statements under oath to obtain search warrants, arrest warrants, and a criminal indictment when there is no evidence of wrongdoing sufficiently alleges abuse of process. Clearly, these are not valid uses of the criminal justice system. Indeed, such use of the criminal justice process would be so lacking in justification that the process would lose all legitimate function. *See Crackel,* 92 P.3d at 888.

Plaintiffs further allege that Arpaio and Henderson "withheld material exculpatory evidence and committed related perjuries in sworn testimony and discovery responses for the wrongful purpose of drawing out the criminal prosecution[s.]" (Doc. 25-1 ¶ 258.) Defendants assert that "Arpaio did not provide sworn testimony during Plaintiffs' criminal investigations or prosecutions, nor did he participate in discovery." (Id.) This is

21

merely a denial of Plaintiffs' allegation; not a failure to state a claim. Plaintiffs' allegations are to be taken as true as long as they are plausible. As such, Count III will not be dismissed.

### 2.     Count XI – Intentional Infliction of Emotion Distress

An IIED claim has three elements: (1) defendant's conduct is extreme and outrageous; (2) the defendant intended to cause emotional distress or recklessly disregarded the near certainty that distress would result from his conduct; and (3) the defendant's conduct actually caused severe emotional distress. *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.,* 716 P.2d 1013, 1015-16 (Ariz. 1986) (in banc). Extreme and outrageous conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ford v. Revlon,* 734 P.2d 580, 583 (Ariz. 1987) (in banc).

Plaintiffs' allegations in the SAC, if true, describe conduct by Arpaio and Henderson that is extreme and outrageous. If a law enforcement officer lies to obtain search warrants and arrest warrants, and pursues criminal charges when no probable cause exists, such behavior would create a near certainty that stress would result. If the supervisor tolerates and encourages such behavior, that also would rise to the level of extreme and outrageous. Plaintiffs also alleged that they have suffered severe emotional distress, thereby alleging all necessary elements and stating a valid claim. However, Plaintiffs fail to state a claim against Hechavarria, Gandara, Jones, and Hegstrom. Plaintiffs have failed to identify any conduct by these Defendants that is extreme and outrageous. Their actions were limited in scope and appear to be taken at the direction of others. Therefore, Count XI will be dismissed as to Hechavarria, Gandara, Jones, and Hegstrom.

### 3.     Count XIII – Punitive Damages

Municipalities are not liable for punitive damages. *See Kentucky v. Graham*, 473 U.S. at 167 n.13; *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996). State officials

sued in their official capacity are also immune from punitive damages. *See Mitchell*, 75 F.3d at 527. Punitive damages, however, are available for federal claims. *See Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 17 (1991).

Here, Plaintiffs dismiss all claims for punitive damages on their state-law claims, but maintain the claim in relation to their federal claims. (Doc. 34 at 16.) Accordingly, Defendants' motion to dismiss Count XIII will be denied.

**V.      Conclusion**

To summarize, the following claims in the SAC may proceed: Count I for malicious arrest and prosecution under § 1983 against Maricopa County, Arpaio, Henderson, Gandara, Locksa, and Hechavarria; Count II for state-law malicious prosecution against Arpaio, Henderson, Gandara, Locksa, and Hechavarria; Count III for state-law abuse of process against Arpaio and Henderson; Count IX for defamation against Arpaio, Henderson, Jones, and Hegstrom; Count X for grossly negligent restraint of Frimmel against Henderson; Count XI for IIED against Arpaio and Henderson; and Count XII for negligent supervision against Arpaio. Count XIII for punitive damages may be pursued in connection with the federal claims. Counts VI and VII are dismissed. Counts IV, V, and VIII were not challenged and may proceed as alleged in the SAC.

Accordingly,

**IT IS ORDERED:**

1.      That the Individual Defendants' Motion to Dismiss (Doc. 28) is **granted in part** as to Counts VI, VII, and XI of the Second Amended Complaint (Doc. 25-1), and otherwise **denied in part**. Counts VI and VII are **dismissed** in their entirety, and Count XI is **dismissed** *in part* only as to Defendants Hechavarria, Gandara, Locksa, Jones, and Hegstrom;

2.      That Defendant Maricopa County's Motion to Dismiss (Doc. 32) is **granted in part** as to Counts II, III, VI, VII, IX, X, XI, and XII of the Second Amended Complaint (Doc. 25-1), and otherwise **denied in part**. Counts VI and VII are **dismissed** in their entirety, and Counts II, III, IX, X, XI, and XII are **dismissed** *in part* only as to

Defendant Maricopa County; and

       3.       That Defendant Maricopa County shall have until **December 4, 2015** to file an Answer to the Second Amended Complaint (Doc. 25-1).

       Dated this 20th day of November, 2015.

Honorable Steven P. Logan
United States District Judge