**IAFRATE & ASSOCIATES**
649 North Second Avenue
Phoenix, Arizona 85003
(602) 234-9775

Michele M. Iafrate, #015115
Renee J. Waters, #031691
miafrate@iafratelaw.com
rwaters@iafratelaw.com

Attorneys for **Defendants Paul Penzone, Joseph Arpaio, Joshua Henderson, Brandon Jones, Christopher Hegstrom, Daniel Gandara, Sean Locksa, and Christopher Hechavarria**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Norton, et al. | NO. CV15-00087-PHX-SPL |
| Plaintiffs, | |
| vs. | **DEFENDANTS PAUL PENZONE, JOSEPH ARPAIO, JOSHUA HENDERSON, BRANDON JONES, CHRISTOPHER HEGSTROM, DANIEL GANDARA, SEAN LOCKSA, AND CHRISTOPHER HECHAVARRIA'S STATEMENT OF FACTS IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGMENT** |
| Joseph Arpaio, et al., | |
| Defendants. | |

Pursuant to Federal Rules of Civil Procedure, Rule 56(c) and Local Rule 56, Defendants Paul Penzone, Joseph Arpaio, Joshua Henderson, Brandon Jones, Christopher Hegstrom, Daniel Gandara, Sean Locksa, and Christopher Hechavarria ("Defendants") submit the following statement of facts supporting their Partial Motion for Summary Judgment.

1. A table that sets out the Counts and the name(s) of the corresponding Defendants moving for partial summary judgment as to those Counts is attached as Exhibit 1.

2. This lawsuit arises from Maricopa County Sheriff's Office's ("MCSO") investigation of Bret Frimmel ("Frimmel"), owner of the Uncle Sam's restaurants ("Uncle Sam's"), and his manager, Lisa Norton ("Norton"). (Doc. 25-1, ¶¶ 3, 4, 6).

3. Detective Joshua Henderson ("Henderson") led the investigation that resulted in Frimmel and Norton's arrest and prosecution for multiple felonies, including Conspiracy to Commit Taking the Identity of Another, Trafficking in the Identity of Another, and Forgery. (Doc. 25-1, ¶¶ 7-8).

4. Both Frimmel and Norton were indicted by Maricopa County Grand Jury on February 7, 2014. (Doc. 25-1, ¶ 156).

5. Frimmel and Norton's criminal matters were dismissed without prejudice in early 2015, and they subsequently filed this lawsuit. (Doc. 25-1, ¶¶ 229, 233; Exhibits 2 and 3 Minute Entries Dismissing the Case without Prejudice).

6. On August 2, 2012, a former Uncle Sam's employee telephoned MCSO with a tip that employees at Uncle Sam's restaurants were using other people's identities to gain and continue employment. (Exhibit 4, Excerpts of MCSO DR13-008988, Bates no. MELC606456).

7. Henderson began investigating Uncle Sam's employment records and discovered over fifty discrepancies among employees' names and their alleged social security numbers. (Ex. 4, Bates no. MELC606504-606506).

8. Henderson obtained search warrants for the two restaurants and Frimmel's residence.  (Doc. 25-1, Exhibits A-C, Bates no. GR000001; 000021; GR000041).

9. MCSO arrested nine Uncle Sam's employees as a result of the investigation.  (Doc. 25-1, ¶ 74; Exhibit 5, Excerpts of DR13-008988, Bates no. MELC629861-MELC629862).

10. A Grand Jury indicted four of the employees.  (Exhibit 6, Grand Jury Indictment, MCAO-011604-011607).

11. The indicted employees agreed to engage in "free talks" with Henderson that provided further evidence against Frimmel and Norton.  (Ex. 5, Bates no. MELC629399-629409; Bates no. MELC629412-629450; Bates no. MELC629452-629486; Exhibit 7, Interview of Valentin Fernandez Transcript; Exhibit 8, Interview of Emigdio Gonzalez Transcript).

12. Deputy County Attorney Jamiee Oliver attended the free talks.  (Exhibit 9, Excerpt of Jamiee Oliver Deposition Transcript, 27:23-29:16).

13. Deputy County Attorney Jamiee Oliver testified that she would not have charged Plaintiffs if she had not been convinced that there was probable cause. (Ex. 9, 90:18-91:11).

14. Several other former and current Uncle Sam's employees contacted MCSO and provided corroborating information.  (Ex. 5, Bates no. MELC629861-Bates no. MELC629865).

15. On January 22, 2014, MCSO arrested Frimmel and Norton. (Doc. 25-1, ¶ 86).

16. At the time of Frimmel and Norton's arrests, Henderson knew fifty Uncle Sam's employees were using identifying information that did not seem to match Department of Economic Security records. (Ex. 4, Bates no. MELC606504-606506).

17. Four Uncle Sam's employees were charged with identity theft after a worksite investigation of Uncle Sam's, and all four participated in free talks. (Ex. 4, Bates no. MELC629399-629409; Ex. 5, Bates no. MELC629412-629450; MELC629452-629486; Ex. 7; Ex. 8).

18. During their free talks, the employees indicated that both Frimmel and Norton knowingly hired employees who had to use another person's identifying information to obtain employment. (Ex. 4, MELC629399-629409; Ex. 5, MELC629412-629450; MELC629452-629486; Ex. 7; Ex. 8).

19. One employee, Manager Emigdio Gonzalez identified the Uncle Sam's employment application he filled out and confirmed his signature on it. However, Mr. Gonzalez stated that the document bore the wrong start date—2007; Mr. Gonzalez worked construction from 1994 to 2009 and started working at Uncle Sam's in June, 2010. (Ex. 8).

20. Mr. Gonzalez stated that Frimmel came to the restaurant daily to pick up any applications, credit card paperwork, and that Gonzalez, as a manager never saw the applications again. (Ex. 8).

21. Another employee, Fernando Gonzalez stated that he did not have to present any identification prior to starting work at Uncle Sam's. Mr. Gonzalez further recalled that Frimmel was present when he was hired. (Ex. 5, Bates no. MELC629455-56).

22. While officers served the search warrants at the restaurants, an employee called Frimmel who asked to speak with officers. Frimmel claimed that he was on his way to assist with providing employee personnel records. He arrived and claimed that none of the personnel records were kept at the restaurants, but at his home office. (Ex. 4, Bates no. MELC606691-606693).

23. However, officers found at least one binder marked "Personnel" at the restaurant. Further, at his home office, Frimmel kept few employee records considering that he operated three restaurants and employed numerous employees. Frimmel explained that he purged files after two to three years. (Ex. 4, Bates no. MELC606489-90).

24. Frimmel also claimed that payroll company ADP e-verified all of his employees, yet Frimmel admitted at his deposition that ADP did not. (Exhibit 10, Excerpt of Frimmel Deposition Transcript, 97:3-98:2; 101:2-5).

25. At the time of Frimmel and Norton's arrest, Henderson did not know:

- The original informant was married to another informant. (Exhibit 11; Franks Hearing Transcript, 31:23-32:2; 32:7-10; 37:1-11).

- Said Ishak was arrested and later convicted for embezzlement from Uncle Sam's. (*Id*. at 32:19-33:12).

- Denee Porter Ishak had an unrelated criminal conviction. (*Id*. at 26:24-27:2).

- The date(s) on which the Ishak's employment with Uncle Sam's ended. (*Id*. at 28:7-25).

- Frimmel had been contacted by or was cooperating with an investigator from the Department of Justice regarding MCSO. (*Id.* at 31:8-32:10; 32:23-33:12; 33:19-34:4; 38:12-23).

26. On the same day that Frimmel and Norton were arrested (January 22, 2014), MCSO executed search warrants for Norton's cell phone records and the data contained on both Plaintiffs' cell phones. (Doc. 25-1, ¶¶ 86, 92).

27. On February 4, 2014, MCSO obtained a search warrant for Frimmel's cell phone records. (Doc. 25-1, ¶ 94).

28. On February 7, 2014, a Grand Jury indicted Frimmel on four counts of Trafficking ID of Another, two counts of Conspiracy to Commit Taking ID of Another, six counts of Taking ID of Another, and one count of Forgery. (Doc. 25-1, ¶¶ 156; 159-160).

29. Norton was also indicted on two counts of Conspiracy to Commit Taking ID of Another and four counts of Taking ID of Another. (Doc. 25-1, ¶ 159).

30. Deputy County Attorney Jamie Oliver conducted the Grand Jury. (Doc. 25-2 at 127). Henderson was her only witness. *Id*.

31. On January 22, 2014, MCSO issued a press release regarding the investigation and Frimmel and Norton's arrests. (Doc. 25-1, ¶ 144; Doc. 25-2 at 100-101).

32. Moderate news coverage followed the case for the next two days. (Doc. 25-1, ¶ 148 a-j).

33. On January 15, 2015, the court dismissed the Taking the Identity of Another charges against both Norton and Frimmel due to a District Court decision issuing a preliminary injunction against enforcing the identity theft statutes in *Puente v. Arpaio*, CV14-1356-PHX-DGC. (Doc. 25-1, ¶ 229; Exs. 2-3). No other charges were pending against Norton. *Id*.

34. The criminal court conducted a *Franks* hearing on March 6, 2015. (Doc. 25-1, ¶ 230).

35. On April 15, 2015, the court issued a minute entry finding that, based on the evidence submitted, there was no probable cause to support the search warrants as amended. (Doc. 25-2 at 303-311).

36. The court amended the search warrant affidavits after determining that information was unreasonably and recklessly included in or excluded from the warrants. (Doc. 25-1, ¶ 230; Doc. 25-2 at 303-311).

37. The State moved to dismiss all remaining charges against Frimmel without prejudice, and the criminal court granted the motion on April 23, 2015. (Doc. 25-1, ¶ 232, Exs. 2-3).

38. Frimmel and Norton each served two sets of Notices of Claims upon Defendants on July 21, 2014. (Exhibits 12, 13, 14, and 15, Norton and Frimmel's Notices of Claims).

39. Frimmel and Norton each filed a Complaint on January 20, 2015. (Doc. 1, CV15-00087-PHX-SPL; Doc. 1, CV15-00088-PHX-SRB). Each Plaintiff filed a First Amended Complaint on April 23, 2015. (Doc. 9, CV15-00087-PHX-SPL; Doc. 12, CV15-00088-PHX-SRB).

40. The two matters were consolidated, and Frimmel and Norton filed their joint Second Amended Complaint on June 12, 2015. (Doc. 22; Doc. 23).

41. In their Second Amended Complaint, both Plaintiffs allege 42 U.S.C. § 1983 claims for: 1) malicious prosecution; 2) illegal search and seizure of cell phones; and 3) illegal search and seizure of business records. (Doc. 25-1 at 29, 33-34). Both Plaintiffs demand attorneys' fees pursuant to 42 U.S.C. § 1988. (Doc. 25-1 at 36). Both Plaintiffs demand punitive damages. (Doc. 25-1 at 31-32, 37-39). Both Plaintiffs allege the following state claims: 1) malicious prosecution; 2) abuse of process; 3) defamation; 4) intentional infliction of emotional distress ("IIED"); and 5) grossly negligent supervision. Frimmel also alleges a claim under Arizona law for grossly negligent restraint during his arrest. (Doc. 25-1 at 37).

42. According to all information available to Arpaio, Plaintiffs' arrests were supported by probable cause. (Exhibit 16, Excerpt of Demetrius Whelan Deposition Transcript, 51:1-25).

43. Arpaio was briefed on the Uncle Sam's case during the investigation. *Id.* Arpaio was told that the County Attorney "was intimately involved with the case," and that the County Attorney's Office had determined that the charges against Plaintiffs were solid. (*Id.* at 51:10-15). Additionally, his deputies told Arpaio that Plaintiff Frimmel was facing civil fines for the related conduct of improper Form I-9 handling. (*Id.* at 51:20-52:4).

44. Deputies Sergeant Gandara, Hechavarria, and Locksa did not investigate Frimmel or Norton. (Ex. 11, pp. 191-194; Exhibit 17, Declaration of Sergeant Daniel Gandara at ¶ 9; Exhibit 18, Declaration of Detective Sean Locksa at ¶ 9).

45. A Maricopa County Sheriff's Office supervisor in the Criminal Employment Unit (CEU) asked if Hechavarria, and Locksa would assist the CEU by filling out search warrant documents to obtain cell telephone records, and their names appear on three search warrants. Gandara's supervisor in the Human Smuggling Unit, Sergeant Powe also asked him to assist Henderson. (Ex. 17 at ¶ 5, Ex. 18 at ¶ 6).

46. At the time, Gandara and Hechavarria were assigned to the Human Smuggling Unit, and Electronic Evidence and Recovery Squad respectively, not CEU. (Ex.17 at ¶¶ 4-5; Doc. 25-2 at 89). Locksa had been in CEU only two months after spending the previous nine years on a federal task force. (Ex. 18 at ¶¶ 4-6).

47. Each of the deputies relied on case agent, Henderson, for the probable cause statements in each of the search warrants. (Ex. 11 at 193:2-9; Ex. 17 at ¶¶ 6-

9

7; Ex. 18 at ¶ 7; Doc. 25-2 at 62 ¶ 2; at 72 ¶ 2; and 90 ¶ 2).  The language contained in the search warrant affidavits evidences this.  (Doc. 25-2 at 62 ¶ 2; at 72 ¶ 2; and at 90 ¶ 2).

48.  The search warrant ("SW") affidavit number 2014 001036 that Locksa completed states, "I spoke to case agent, Detective Josh Henderson S1458, who told me the following facts establishing probable cause . . . Detective Henderson told me: . . ."  (Doc. 25-2 at 72 ¶ 2).

49.  Search warrant number 2014 000714 that Gandara completed, states, "I spoke to both case agents, Detective Darren Frei, S1570 and Detective Josh Henderson, S1458.  Both Detectives told me the following facts establishing probable cause regarding the pending criminal case against Lisa Anne Norton." (Doc. 25-2 at 62 ¶ 2).

50.  At the *Franks* hearing in the criminal matter, Hechavarria testified:

Q: If you could go to page 2367. You advised this Court on page 2367 that the facts in your probable cause statement were provided by Detective Henderson, is that correct?
A: Correct.
Q: And Detective Henderson provided you these facts in what you called an affidavit, correct?
A: Correct.

(Ex.11 at 193:2-9).

51.  Frimmel and Norton allege that "MCSO, Arpaio, Jones and/or Hegstrom" made false statements to the press.  (Doc. 25-1, ¶¶ 148, 303).

52.  Frimmel nor Norton identify which statements they attribute to which Defendant.  (Doc. 25-1, ¶¶ 148, 303).

53.  Frimmel and Norton attach a press release dated January 22, 2014, (Doc. 25-2 at 101-102), and asserted in their Motion to Dismiss Response that the allegation against Hegstrom was tied to that press release.  (Doc. 35 at 4).

54.  Frimmel and Norton have not produced any evidence that Hegstrom authored, made, or caused to be made the press release.  (Doc. 25-2 at 101-102).

55.  Frimmel and Norton allege that Hegstrom defamed them based on a newspaper article, in which an unquoted statement is attributed to him.  (Doc. 25-1, ¶¶148-303; Exhibit 19, Deposition of Christopher Hegstrom at 43:3-44:13; Exhibit 20, Independent Newsmedia, Inc. USA article).

56.  Frimmel and Norton rely on hearsay to prove Hegstrom made the statement.  (Doc. 25-1, ¶¶148-303).

57.  Frimmel and Norton attribute this newspaper statement to Hegstrom:

> The arrests mark the first-time deputies have arrested an owner/employer, who are facing criminal charges relating to identity theft for purposes of employing undocumented persons, said Christopher Hegstrom sheriff's spokesman…. Owner Bret Frimmel, 40, is suspected of trafficking the identity of another, identity theft and forgery, Mr. Hegstrom said.

(Ex. 20).

58.  The arrests were the first involving an owner/employer.  (Exhibit 21, Excerpts of Cesar Brockman Deposition, 17:8-10; 22:3-25).

59.  The suspects were arrested for identity theft.  (Doc. 25-1, ¶86).

60.  Defendant Brandon Jones is listed as the "contact" for the news release dated January 22, 2014.  (Doc. 25-2 at 100).

61. Frimmel and Norton's claims are based in part on the allegedly false and incomplete information that Henderson provided in his testimony to the Grand Jury. (Doc. 25-1, ¶¶ 65, 68, 278-279).

62. Frimmel complains that Defendant Henderson was grossly negligent in applying handcuffs to restrain Frimmel during his arrest and transport to jail. (Doc 25-1, ¶¶ 308-322).

63. A person who is arrested and transported is restrained with handcuffs and/or additional restraints. (Ex. 16, 127:11-128:10; Exhibit 22, Excerpt of Joshua Henderson Deposition, 176:14-24).

64. Frimmel does not articulate whether the handcuffs hurt his shoulder, his wrist, or anywhere else. (Ex. 22, 164:23-165:1; Doc. 25-1, ¶ 315).

65. Arpaio was not involved in the budgeting, the decision whom to investigate, how to investigate, the authoring, presentation, or validation of the search warrants, or the execution of the search warrants. (Exhibit 23, Excerpt of Joseph Arpaio Deposition, 8:15-22; 12:11-15; 13:8-14; 15:7-23; 20:7-12; 34:19-25; and 48:7-10).

66. When asked about his role, Arpaio explained: "I don't play any role. I say I delegate. Those are decisions made by my subordinates." (Ex. 23, 21:21-24).

67. Arpaio testified that he was not aware of any alleged cooperation between Plaintiffs and the Department of Justice. (Ex. 23, 80-81).

68. In her notice of claim, Norton provided a sum certain for which she would settle. (Exs. 12,13 at 20). Norton did not provide facts to support her settlement amount: ($5 million). *Id*.

69. In her notice of claim, Norton lists her damages as $426,284 in lost wages. (Exs. 12, 13 at Notice of Claim Exs. A and B).

70. In different sections of her NOCs, Norton described the $426,284 as both. (Ex. 12 at 19; Ex. 13, 19-20).

71. Norton did not provide her annual or monthly income, nor explain how she came up with a loss of $426,284. (Exs. 12, 13 at 19).

72. Plaintiff Norton continues to work at Uncle Sam's. (Exhibit 24, Excerpts of Lisa Norton Deposition, 78:7-16). She simply states that she is "at risk of losing her job." (Ex. 24 at p. 19).

73. Plaintiffs claim that Henderson was not trained "as a detective." (Ex. 22, 15:2-19).

74. Henderson testified at his deposition that he received on the job training to perform his duties as a detective. (Ex. 22, 15:2-18:5).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

75. Henderson had eleven years' experience as a deputy before he was assigned to be a detective in CEU.  (Ex. 11, 13:15-23; Ex. 22, 14:1-3).

**DATED** this <u>9th</u> day of March, 2018

**IAFRATE & ASSOCIATES**

By: <u>  s/Renee J. Waters  </u>
Michele M. Iafrate
Renee J. Waters
Attorney for **Defendants Paul Penzone, Joseph Arpaio, Joshua Henderson, Brandon Jones, Christopher Hegstrom, Daniel Gandara, Sean Locksa, and Christopher Hechavarria**

<u>NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE</u>

I certify that I electronically filed the foregoing with the Clerk of the Court on March 9, 2018, for filing and uploading to the CM/ECF system which will send notification of such filing to all parties of record.

By: <u>  s/Jill Lafornara  </u>