Leon B. Silver  (SBN:  012884)
Andrew S. Jacob  (SBN:  022516)
Rebecca N. Cain (SBN: 025604)
**GORDON REES SCULLY MANSUKHANI, LLP**
2 North Central Avenue, Suite 2200
Phoenix, AZ 85004
Telephone: (602) 794-2493
Facsimile:  (602) 281-4448
lsilver@grsm.com
ajacob@grsm.com
rcain@grsm.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa Norton, et al.; | ) **CASE  2-15-cv-00087-SPL** |
| | ) |
| *Plaintiffs,* | ) **SECOND AMENDED JOINT** |
| | ) **PROPOSED** |
| vs | ) **FINAL PRETRIAL ORDER** |
| | ) |
| Joseph M. Arpaio, et al.; | ) |
| | ) |
| *Defendants.* | ) |
| | ) |
| —————————————————— | ) |

The following is the Second Amended Joint Proposed Final Pretrial Order, with the modified exhibit list consistent with the parties' Joint Motion to Modify Proposed Final Pretrial Order, filed herewith. [1]

## 1. TRIAL COUNSEL FOR THE PARTIES

**A.** Plaintiff(s):

_____

---

[1] As stated on the record at the October 1, 2019 Pre-trial Conference, by modifying this pre-trial order in accordance with the discussion at that conference, Plaintiffs do not intend to waive, limit or otherwise consent to the removal of any previously stated claim, or any right to challenge any prior ruling of the Court regarding any of their claims.

1

Leon B. Silver (SBN: 012884)
Andrew S. Jacob (SBN: 022516)
Rebecca N. Cain (SBN: 025604)
GORDON REES SCULLY MANSUKHANI, LLP
2 North Central Ave., Suite 2200
Phoenix, AZ 85004
Telephone: (602) 794-2460
Facsimile: (602) 265-4716
lsilver@grsm.com
ajacob@grsm.com
rcain@grsm.com

**B.** Defendant Maricopa County

J. Arthur Eaves
Robin E. Burgess
**SANDERS & PARKS, P.C.**
3030 North Third Street, Suite 1300
Phoenix, AZ 85012
(602) 532-5730 (Eaves)
(602) 532-5048 (Burgess)
(602) 230-5048 (Fax)
Artie.Eaves@SandersParks.com
Robin.Burges@SandersParks.com
*Attorneys for Maricopa County*

**C.** Individual Defendants

Michele M. Iafrate
**IAFRATE & ASSOCIATES**
649 North Second Avenue
Phoenix, AZ 85003
(602) 234-9775
(602) 254-9733 (Fax)
miafrate@iafratelaw.com
*Attorneys for Individual Defendants*

2

## 2. STATEMENT OF JURISDICTION

    **A.**    The Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a).

    **B.**    The parties do not dispute jurisdiction.

## 3. STIPULATIONS AND UNCONTESTED FACTS AND LAW

    **A.**    The following material facts are admitted by the parties and require no proof:

1. Plaintiff Bret Frimmel is the sole owner of Plaintiff Pishka, Inc.
2. Pishka, Inc. currently owns and operates two restaurants located in Maricopa County that do business as "Uncle Sam's." For clarity, Pishka, Inc. will be referred to hereinafter as "Uncle Sam's."
3. Lisa Norton and Plaintiff Bruce Norton are married.
4. Mr. Frimmel opened a second Uncle Sam's restaurant in Scottsdale in 2001.
5. In January 2012, Mr. Frimmel entered a contract to sell the Scottsdale Uncle Sam's restaurant.
6. The Scottsdale Uncle Sam's restaurant closed on August 12, 2012.
7. Mr. Frimmel opened a third Uncle Sam's restaurant on 83rd Avenue in Peoria, Arizona in 2005.
8. Until January 2017, Defendant Joseph Arpaio was the Sheriff of Maricopa County, Arizona.
9. Until January 2017, Arpaio was acting under color of State law.
10. Until January 2017, Arpaio was responsible for setting and implementing MCSO policies and practices.
11. Until January 2017, Defendant Joshua Henderson was an MCSO sworn Deputy Sheriff or sergeant.

12. Until January 2017, Deputy Henderson was acting under color of State law.

13. Defendant Daniel Gandara was a sworn MCSO Deputy Sheriff.

14. Deputy Gandara passed away.

15. Defendant Sean Locksa is a sworn MCSO Deputy Sheriff.

16. Defendant Christopher Hechavarria is a sworn MCSO Deputy Sheriff.

17. Until January 2017, Gandara, Locksa, and Hechavarria were acting under color of State law.

18. On April 17, 2015, the State moved to dismiss all charges against Mr. Frimmel.

19. On April 23, 2015, the Superior Court dismissed all charges against Mr. Frimmel.

**B.** The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

1. Plaintiff Lisa Norton was the first employee Stuart Frimmel hired to work in Uncle Sam's in 1980.

2. Lisa Norton is currently a manager of the Uncle Sam's restaurants.

3. Bret Frimmel took over Pishka, Inc. and the operation of the Uncle Sam's restaurants in 1994.

4. The Maricopa County Sheriff's office (MCSO) is a law enforcement agency of Defendant Maricopa County, Arizona.

5. On August 2, 2012, Said Ishak a former employee at Uncle Sam's Scottsdale restaurant was arrested for stealing funds from the restaurant.

6. On August 2, 2012, Denee Porter Ishak, also a former Uncle Sam's employee who worked only at the Peoria restaurant, and the wife of Said Ishak, telephoned MCSO Immigration Tip-Line and stated that workers at

4

the Uncle Sam's restaurants did not have proper documentation to work in the United States.

7. The "tip" was received by Deputy Cesar Brockman, who in turn, assigned Detective Wade Voeltz to investigate.

8. In October 2012, Detective Voeltz was transferred out of the MCSO Criminal Employment Unit.

9. In October 2012, Deputy Henderson was transferred into the MCSO Criminal Employment Unit and was assigned to take over the Uncle Sam's investigation.

10. On or about July 16, 2013, Deputy Henderson applied for three search warrants (the "Premises Search Warrants") – one for each of the two Uncle Sam's locations and one for Mr. Frimmel's residence.

11. Deputy Henderson provided three sworn probable cause affidavits to support the three applications for the Premises Search Warrants.

12. Deputy Henderson obtained the Premises Search Warrants from a judge, which authorized search and seizure of business records at Mr. Frimmel's residence and the two Uncle Sam's restaurant locations.

13. On July 17, 2013, MCSO executed the three Premises Search Warrants to conduct searches and seizures of property at two restaurants that operate under the name "Uncle Sam's" and at Mr. Frimmel's residence.

14. In the course of those activities, MCSO arrested nine persons working at the Uncle Sam's restaurants.

15. MCSO released four of the nine arrested workers.

16. MCSO detained one of the arrested workers on an unrelated charge.

17. MCSO charged the remaining four workers with identity theft.

Gordon Rees Scully Mansukhani, LLP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

18. Three of the Cooperating Witnesses used invalid or fraudulently obtained identification documents to obtain work at Uncle Sam's.

19. As part of that cooperation, the Cooperating Witnesses gave interviews to MCSO.

20. Deputy Henderson interviewed the four Cooperating Witnesses using a Spanish language interpreter.

21. All four witness interviews were recorded and three were transcribed

22. Maricopa County Deputy County Attorney (DCA) Jaimee Oliver was present at the interviews.

23. Neither Deputy Henderson nor DCA Oliver speaks or understands Spanish.

24. DCA Oliver did not follow what was said at the interviews.

25. MCSO arrested Mr. Frimmel and Mrs. Norton.

26. Mr. Frimmel never displayed any hesitancy to follow MCSO instructions,

27. On January 22, 2014, MCSO obtained a search warrant from a judge, allowing them to seize Mr. Frimmel's and Mrs. Norton's cellular telephones and extract information from them.

28. On January 22, 2014, MCSO seized Mr. Frimmel and Mrs. Norton's cellular telephones.

29. MCSO later obtained search warrants from a judge, which authorized MCSO to obtain cellular telephone records from the service providers for Mr. Frimmel and Mrs. Norton's cellular telephones.

30. All three cellular telephone search warrants are referred to as the "Cellular Phone Search Warrants."

31. On January 15, 2015, the Maricopa County Superior Court dismissed the case against Mrs. Norton.

32. The Plaintiffs timely served Notices of Claims complying with A.R.S. §12-821.01

**C.** The following issues of law are uncontested and stipulated to by the parties:

    1. The Individual Defendants acted under color of state law.

# 4. CONTESTED ISSUES OF FACT AND LAW

**A.** The following are the material issues of fact to be tried and decided:

1. In March, 1980, Mr. Frimmel's father, Stuart Frimmel, opened the first Uncle Sam's restaurant in Phoenix.

2. Just prior to the events that led to this action, Mr. Frimmel was exploring plans to significantly expand the Uncle Sam's brand through franchising or sale to a regional or nationwide restaurant operator.

3. During the relevant time period, neither Mr. Frimmel nor Mrs. Norton interviewed potential kitchen employees.

4. Neither Mr. Frimmel nor Mrs. Norton speak or understand Spanish.

5. At all times relevant to this litigation, Arpaio was a final decision maker for Maricopa County in the area of law enforcement.

6. At present, Arpaio is a candidate in the 2020 election for Sheriff.

7. On May 10, 2012, the United States Department of Justice filed a Complaint in federal court alleging that MCSO and Sheriff Arpaio "have engaged and continue to engage in a pattern or practice of unlawful discriminatory police conduct directed at Latinos in Maricopa County."

8. Deputy Henderson was not a certified detective.

9. Deputy Henderson was not qualified to be a lead investigator in the MCSO Criminal Employment Unit.

10. Prior to working on the Uncle Sam's case, Deputy Henderson had never drafted a search warrant probable cause statement.

7

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

11. Deputy Henderson did not receive training on drafting search warrant applications after he left the police academy.

12. Deputy Henderson did not draft any search warrant applications before doing so for the Uncle Sam's case.

13. Deputy Henderson did not state any of the following facts in the three sworn affidavits or in any other part of the applications for the Premises Search Warrants:

    a. Deputy Henderson's investigation was initiated based on a report from Denee Porter Ishak that was almost a year old;

    b. Denee's husband, Said Ishak was arrested for felony theft of funds from Uncle Sam's on the same day that she made her report to MCSO;

    c. Said Ishak was convicted of stealing from Uncle Sam's;

    d. Denee Porter Ishak had been convicted of criminal possession of drug paraphernalia;

    e. Denee Porter Ishak had never worked at the Phoenix Uncle Sam's location;

    f. Denee Porter Ishak was last employed at Uncle Sam's in January 2011;

    g. Said Ishak had not worked at the Phoenix location at any time after he was sent to jail in 2009 (for a repeat DUI) and had not worked at any Uncle Sam's after June 2012;

    h. Neither Said Ishak nor Denee Porter Ishak had personal knowledge concerning activities at, or even the location of Frimmel's then current personal residence;

8

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

i.   Neither Arizona Department of Economic Security, nor any Maricopa County records linked Mr. Frimmel's home address to Uncle Sam's business operations; and

j.   MCSO surveillance of Mr. Frimmel's home did not show any evidence of business activity.

14. Deputy Henderson made the following false statements in sworn affidavits of probable cause that he provided to obtain the Premises Search Warrants:

   a.   MCSO detectives saw Uncle Sam's employee vehicles at Mr. Frimmel's personal residence;

   b.   County Assessor records linked Mr. Frimmel's home to the Uncle Sam's business;

   c.   He received information from a person he referred to as a "confidential source"; and

   d.   this "confidential source" told Deputy Henderson that he "was positive no [Uncle Sam's] employees had to fill out the A-4 state tax form."

15. No one supervising Deputy Henderson checked his sworn affidavits for errors or omissions.

16. Arpaio approved MCSO Criminal Employment Unit operations.

17. On or about July 16, 2013, Deputy Henderson met with Arpaio and others for 30 to 60 minutes.

18. At this meeting, Deputy Henderson presented the status of his investigation of the Uncle Sam's restaurants and his plans to execute the Premises Search Warrants.

19. Arpaio approved Deputy Henderson's plan to execute the Premises Search Warrants.

9

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

20. MCSO SWAT officers executed the search warrant for Mr. Frimmel's personal residence by breaking down a door.

21. The fourth worker used a valid Arizona driver's license and valid social security card obtained several years before applying for work at Uncle Sam's.

22. The four workers charged with identity theft (Fernando Gonzalez, Emigdio Munoz Gonzalez, Victor Vargas, and Valentin Villanueva, collectively the "Cooperating Witnesses") entered into plea agreements whereby they each admitted to an undesignated felony that could be reduced to a misdemeanor if they cooperated with prosecution of Frimmel and Norton.

23. None of the Cooperating Witnesses obtained identity documents from anyone associated with Uncle Sam's.

24. None of the Cooperating Witnesses were interviewed by Frimmel or Norton prior to their employment.

25. As part of their plea agreements, the Cooperating Witnesses agreed to cooperate with the MCSO investigation of Frimmel and Norton.

26. At MCSO's request, Federal authorities arranged for the Cooperating Witnesses to receive deferred deportation status and authorization to work in the United States.

27. In his interview, Fernando Gonzalez stated in Spanish as follows:

    a.    he was hired by someone named "Lalo";

    b.    "he did not sign any forms or present any identification at the time of hire"; and

    c.    Mrs. Norton instructed him, later when he was working, "to give Latinos applications."

28. Fernando Gonzalez did not say:

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

    a.    he spoke to either Mrs. Norton or Mr. Frimmel during his hiring process;

    a.    he was instructed to give applications to Latinos that he knew lacked valid authorization to work.

29. Under state and federal law:

    a.    new workers are not required to present identification documents such as a social security card until three days after they are hired;

    b.    employers are not required to make photocopies of worker identification documents.

30. In his interview, Emigdio Munoz Gonzalez stated in Spanish that when he was hired at Uncle Sam's:

    a.    he used a social security card that he had been using for 18 years; and

    b.    he had a valid Arizona driver's license.

31. In his interview, Victor Vargas stated in Spanish as follows:

    a.    he provided Uncle Sam's a social security card and photo identification within three days of when he was hired;

    b.    he obtained that social security card from an unnamed person who had no relation to Uncle Sam's; and

    c.    he did not believe that Mrs. Norton or Mr. Frimmel knew that he was using an invalid social security card;

32. In his interview, Valentin Villanueva stated in Spanish as follows:

    a.    he was hired to work at Uncle Sam's by an Uncle Sam's employee whose name he did not remember, not by Mr. Frimmel or Mrs. Norton; and

11

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

a.    during all of his employment at Uncle Sam's he had no dealings with Mr. Frimmel beyond "just a few words."A former Uncle Sam's employee, Manuel Arredondo, was later arrested by MCSO.

33. Another former Uncle Sam's worker, Jorge Armando Lara, was interviewed by MCSO.

34. In his interview, Jorge Armando Lara stated in Spanish as follows:

A: He [Frimmel] knew that we're Mexicans beforehand.

Q: Yeah, but that doesn't mean anything. W- we have - I have to get evidence that he knew, do you understand? Like, for example, if you had a conversation where he - he knew that - that the numbers you were providing were fake or something like that.

A: Well that - I don't remember that because I left the application there. Like two weeks later they called me that I could work.

Q: But he never - he never told you anything about - about for example, that number? He never...

A: No. A: No.

35. Lara did not tell Mr. Frimmel that he did not have a Social Security card.

36. MCSO conducted a recorded interview of Manuel Arredondo.

37. In that interview, Manuel Arredondo stated in Spanish as follows:

a.    he purchased a social security card and other identification from an unnamed person before he applied for work at Uncle Sam's;

b.    he provided those documents to an unnamed Spanish speaking manager at Uncle Sam's when he was hired;

c.    he never told Mr. Frimmel or Mrs. Norton that his Arizona food handler's card was expired;

12

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

d.     Mr. Frimmel told employees they must have food handler's cards; and

e.     he never changed a date on any Uncle Sam's employee's documents.

38. Like the four Cooperating Witnesses, Manuel Arredondo obtained deferred deportation status and authorization to work in the United States at the request of MCSO.

39. In August 2013, federal authorities arrested the owner and managers at multiple Danny's Car Wash locations in Maricopa County, charging them with knowingly hiring workers who were not authorized to work in the United States.

40. The Danny's Car Wash owner and managers knew these workers were unauthorized because the same workers had been terminated previously because they lacked such authorization.

41. The Danny's Car Wash raids and arrests got considerable attention from the media.

42. Arpaio wanted to present himself to the public as aggressively enforcing identity theft laws against undocumented workers and their employers.

43. At the end of 2013, Arpaio communicated his desire to the MCSO Criminal Employment Unit to have it arrest an employer for identity theft.

44. Arpaio had a practice of pressuring his subordinates to make news worthy arrests.

45. On or about January 21, 2014, Henderson presented a plan to Arpaio and others to arrest Mr. Frimmel and Mrs. Norton for identity theft and forgery.

46. That January 21, 2014 meeting between Arpaio and Deputy Henderson lasted 30 to 60 minutes.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

47. Arpaio both understood and approved the plan to arrest Mr. Frimmel and Mrs. Norton.

48. On January 22, 2014, Deputy Henderson and other MCSO deputies arrested Mr. Frimmel and Mrs. Norton without an arrest warrant.

49. MCSO charged Mr. Frimmel with knowingly taking the identity of another, conspiracy to take the identity of another, forgery, and knowingly trafficking in the identity of another.

50. MCSO charged Mrs. Norton with knowingly taking the identity of another and conspiracy to take the identity of another.

51. Mr. Frimmel is a large man whose hands do not readily come together behind his back.

52. After arresting Mr. Frimmel, Deputy Henderson placed him in handcuffs with his arms behind his back.

53. Deputy Henderson kept Mr. Frimmel in these handcuffs with arms behind his back for at least an hour.

54. Mr. Frimmel twice calmly told Deputy Henderson that he was experiencing substantial discomfort in his right arm and shoulder and asked him to loosen the cuffs.

55. Deputy Henderson did not respond to Mr. Frimmel's complaints of discomfort.

56. While he was restrained in the handcuffs, Mr. Frimmel's right hand swelled and went numb and his right shoulder became very painful.

57. The following day, January 23, 2014, Dr. Mitchel Lipton, a hand surgeon, examined Mr. Frimmel and found discoloration and weakness of Mr. Frimmel's right hand and diagnosed "acute compression, right thoracic outlet syndrome."

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

58. Dr. Lipton told Mr. Frimmel that the nerve to his right hand was injured and would need to grow back for the pain, numbness and weakness to resolve, which would take up to a year, if it happens at all.

59. Mr. Frimmel's right hand was numb for at least six months after his handcuffing; it tingled constantly for an additional six months; and to this day still tingles on occasion.

60. Prolonged use of handcuffs caused the injury to Mr. Frimmel's right hand.

61. The injury would not have occurred or would have been lessened if the handcuffs had been removed or adjusted.

62. Mr. Frimmel did not resist arrest in any manner.

63. The applications for the Cellular Phone Search Warrants were each supported by affidavits of probable cause that were sworn to by Defendants Gandara, Hechavarria, and Locksa.

64. In his sworn affidavit, Hechavarria falsely stated:

    a.    Mr. Frimmel and Mrs. Norton had committed crimes on or about September 30, 2013;

    b.    "illegal drugs" and "illegal drug trafficking" were part of the criminal activity under investigation; and

    c.    Mrs. Norton "owned" Uncle Sam's

65. In their sworn affidavits, Locksa and Gandara falsely stated that Mr. Frimmel and Mrs. Norton had committed crimes on or about October 1, 2013.

66. Locksa and Gandara both falsely stated in their sworn affidavits that Uncle Sam's workers had been convicted of forgery.

67. All three sworn affidavits failed to inform the magistrate of any of the following material information:

15

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

a. the arrested workers obtained federal permission to remain in the United States and work as a result of their agreement to cooperate with the investigation and prosecution of Mr. Frimmel and Mrs. Norton; and

b. there was no evidence that cell phones were used in the hiring process at Uncle Sam's.

68. Deputy Henderson drafted a report, the "Charging Summary," that purported to recount the evidence that justified arresting and charging Mr. Frimmel and Mrs. Norton with crimes.

69. Deputy Henderson gave the Charging Summary to DCA Jaimee Oliver, the Assistant Maricopa County Attorney assigned to work with the MCSO Criminal Employment Unit.

70. Deputy Henderson did not provide any evidence – such as interview recordings or transcripts or copies of allegedly forged documents – to DCA Oliver, nor did DCA Oliver ask Henderson for any such evidence.

71. In his Charging Summary, Deputy Henderson made a number of material false statements.

72. Deputy Henderson falsely told DCA Oliver that former Uncle Sam's worker Victor Moran Vargas told him that Mr. Frimmel "provided" Vargas a "fake social security card at the time of hiring."

73. MCSO did not do any forensic examination of the W-4 document that Deputy Henderson falsely stated in the Charging Summary was forged at the direction of Mr. Frimmel.

74. DCA Oliver would not have sought a grand jury indictment on identity theft or forgery, or prosecuted Mr. Frimmel or Mrs. Norton for identity

16

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

theft or forgery if she had been provided the translated transcripts of the other former employee interviews.

75. A January 22, 2014, a MCSO press release stated:

    a.    Mr. Frimmel and Mrs. Norton were arrested on charges related to identity theft;

    b.    Mr. Frimmel was arrested on forgery charges; and

    c.    "Maricopa County Sheriff's detectives have questioned several witnesses who claimed to have first-hand knowledge that Norton and Frimmel colluded together to acquire false identification documents in order to provide those IDs to undocumented workers wishing to be employed at both restaurants."

76. Arpaio approved the contents of the January 22, 2014 MCSO press release before it was published to the public.

77. In fact, MCSO did not have any witness who claimed to know that Mrs. Norton or Mr. Frimmel did anything to acquire or provide false identification documents to anyone.

78. On January 22, 2014, Phoenix Channel 3 showed Arpaio stating in an interview that Mr. Frimmel and Mrs. Norton "were arrested for providing stolen IDs mainly social security cards to their employees." On January 22, 2014 Channel 3 showed Arpaio stating in an interview that Mr. Frimmel and Mrs. Norton "were arrested for providing stolen IDs mainly social security cards to their employees."

79. Mr. Frimmel and Mrs. Norton did not provide stolen IDs to any employee.

80. On January 22, 2014, MCSO had no evidence that Mr. Frimmel or Mrs. Norton provided stolen IDs to any employee.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

81. On January 24, 2014, Arpaio provided televised interviews in which he stated as fact that Mr. Frimmel "was knowingly hiring employees with fake social security numbers" and "was arrested for providing stolen ID's, mainly social security cards, to his workers."

82. On April 15, 2015, the Superior Court held:

    a.   it was "unreasonable and reckless" for Henderson to make false statements and omit other facts from his probable cause affidavit; and

    b.   when properly reformed to account for Henderson's "reckless disregard for the truth," the affidavits did not establish the probable cause required to issue the Premises Search Warrants.

83. More specifically, the Superior Court held that it was unreasonable and reckless" for Henderson and the other deputies to:

    a.   "not inquire into the time frame from which the information provided by [the complainants] and contained in the affidavit was gained, and to present the affidavit to the magistrate without any indication that the timeliness of the information therein was unknown";

    b.   "not inquire into the history, background, or motivations of the complainant[s], and to present the affidavit to the magistrate without any indication that the motivations of the complainants were suspect";

    c.   "discuss [unrelated and unsupported] tax irregularities in the affidavits";

18

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

d.  "intentionally or unintentionally" make a "significant and material misstatement" that [one complainant] was "positive that no employees had to fill out the A-4 state tax form";

e.  "to include … reference to the Cochise address [Mr. Mr. Frimmel's personal residence]" when stating that that MCSO observed parked employee vehicles;

f.  "not to acknowledge in the affidavit that the complainants were anonymous, their identities were unknown at that time, and little was known/verified about their backgrounds."

84. On January 15, 2015, the Maricopa County Superior Court dismissed the case against Mrs. Norton at the request of the County Attorney.

85. The following are direct consequences of the Defendants' actions:

a.  Mr. Frimmel's business, Pishka, Inc. (dba Uncle Sam's), suffered a substantial loss of business and profits;

b.  Mr. Frimmel and Mrs. Norton suffered substantial expenses defending against unwarranted criminal charges;

c.  Mr. Frimmel and Mrs. Norton suffered public embarrassment;

d.  Plans to expand, sell or franchise Uncle Sam's were derailed;

e.  Mrs. Norton suffers emotional distress, rashes, anxiety sleeplessness, and other physical symptoms which require medication and ongoing counseling;

f.  Mr. Frimmel incurred medical expense to treat his nerve injury;

g.  Mr. Frimmel suffers pain in his right hand and arm, public embarrassment, sleeplessness, lethargy, and depression.

**B.**  The following material facts, although not admitted, will not be contested at trial by evidence to the contrary:

1.  _____

2.  _____

    **C.**    The following issues of law are uncontested and stipulated to by the parties:

## 5. CONTESTED ISSUES OF FACT AND LAW

    **A.**    The following are the material issues of fact to be tried and decided:

<u>Issue #1</u>: Whether the raids in July 2013 and the defamatory statements made by MCSO representatives and Arpaio in January 2014 were the proximate cause of the decline in Uncle Sam's profits.

*Plaintiffs Frimmel and Pishka, Inc. Contend*:

There is no other logical explanation as to why business at Uncle Sam's fell off sharply right after the July 2013 raids on the restaurants and even more substantially again right after the January 2014 arrests and defamation.

*Defendants Contend*:

Plaintiffs were investigated for criminal offenses as a result of their own actions. Uncle Sam's, although enticing when it opened, lost its popularity due to owners <u>never</u> redecorating, updating the décor, and never improving/updating the food. Defendants are entitled to immunity.

<u>Issue #2</u>: Whether Pishka, Inc. suffered lost profits damages and in what amount.

*Plaintiffs Frimmel and Pishka, Inc. Contend*:

Plaintiff's business loss damages will be demonstrated by testimony from a business damages expert as previously disclosed.

*Defendants Contend*:

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Plaintiffs business damages were the result of their own actions. Plaintiffs' expert will be refuted and can only guess the proximate cause of the damages. Defendants are entitled to immunity.

Issue #4: Whether Henderson lacked a reasonable basis to believe there was evidence of ongoing criminal activity at Mr. Frimmel's personal residence.

*Frimmel Contends*: Henderson had no evidence that any Uncle Sam's business activity occurred at Mr. Frimmel's personal residence.

*Defendants Contend:*

Witnesses stated that Frimmel kept business paperwork at his home. The Secretary of State paperwork lists Frimmel's residence as the address for "Uncle Sam's." Deputy Henderson is entitled to immunity.

Issue #5: Whether the searches and seizures at Mr. Frimmel's personal residence violated his Fourth Amendment rights.

*Frimmel Contends*:

Henderson provided a magistrate an affidavit of probable cause which, when corrected for material omissions and misstatements would not have provided a basis to find probable cause to search Mr. Frimmel's personal residence.

*Defendants Contend:*

Regardless of the search warrant application, Deputy Henderson and the MCSO had probable cause to search the residence. None of the Defendants acted in a way that violated the rights of any Plaintiff. If so, Defendants are entitled to immunity.

Issue #6: Whether the searches and seizures at the Uncle Sam's restaurants violated Frimmel's Fourth Amendment rights.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

*Frimmel Contends*:

The affidavits of probable cause corrected for material omissions and misstatements would not have established probable cause to search the Uncle Sam's restaurants.

*Defendants Contend*:

Regardless of the search warrant application, Deputy Henderson had probable cause to search the two restaurants. Deputy Henderson is entitled to immunity.

Issue #7: Whether the searches and seizures of Mr. Frimmel's and Mrs. Norton's cellular telephones and carrier records violated their Fourth Amendment rights.

*Frimmel Contends*:

The affidavits of probable cause corrected for material omissions and misstatements would not have established probable cause to search Mr. Frimmel's or Mrs. Norton's cellular telephones or carrier records.

*Defendants Contend*:

Regardless of the search warrant application, Deputy Henderson had probable cause to search the cell phones and carrier records. None of the Defendants acted in a way that violated the rights of any Plaintiff. If so, Defendants are entitled to immunity.

Issue #8: Whether the training policies of Maricopa County were inadequate to train Henderson to handle the usual and recurring situations with which a lead investigator in the MCSO Criminal Employment Unit must deal.

*Plaintiffs Contend*:

Maricopa County policies (or lack thereof) allowed MCSO to make Henderson a lead investigator notwithstanding that Henderson had neither prior experience nor proper training to be a lead investigator and to do so without anyone in the Criminal

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Employment Unit or other managerial positions providing meaningful review of his work.

*Defendants Contend*:

The training policies are irrelevant. There is no failure to train claim alleged. This issue should be deleted. It is irrelevant to this case as pled by Plaintiffs.

**Issue #9**: Whether Maricopa County was deliberately indifferent to the obvious consequences of its failure to train Henderson to be a lead investigator in the MCSO Criminal Employment Unit.

*Plaintiffs Contend*:

Maricopa County knew or should have known that it was replacing well trained and experienced officers with officers who lacked the training, experience or oversight to evaluate or develop sufficient evidence to charge an employer with knowingly using false identity documents.

*Defendants Contend*:

The training and staffing are irrelevant. There is no failure to train or inadequate staffing claim alleged. This issue should be deleted. It is irrelevant to this case as pled by Plaintiffs.

**Issue #11**: Whether Henderson intended that Oliver would rely on his Charging Summary to decide whether there was sufficient evidence to bring felony counts against plaintiffs.

*Plaintiffs Contend*:

Henderson knew that his Charging Summary and grand jury testimony were the only information available to Oliver upon which she relied to decide whether to prosecute plaintiffs.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

*Defendants Contend*:

Deputy Henderson's job was to investigate crimes. He was not a prosecutor or the decision maker for charging. The standard for prosecuting a case is whether, based on the evidence presented there is a reasonable likelihood of conviction. Prosecutors do not make probable cause determinations. Those are determined by judges or grand juries. Ms. Oliver's mental state is not part of the causal chain leading to Plaintiffs' alleged damages. There are no allegations against Ms. Oliver. Even if there were she is entitled to immunity. Defendants are entitled to immunity.

Issue #13: Whether Henderson and Arpaio are liable for the expenses incurred by Plaintiffs in defending the criminal charges.

*Plaintiffs Contend*:

Absent the material false statements and with the addition of material omissions, the Charging Summary would not have led a reasonable prosecutor to file felony charges against Mr. Frimmel or Mrs. Norton.

*Defendants Contend*:

The charging summary is not a pleading or document that had any legal effect. It was never introduced to the grand jury or had any legal significance. Prosecutors rely on more information to make a determination regarding filing of charges, and it is Defendants' position that there was sufficient information to warrant the charges here, and the grand jury agreed there was probable cause, resulting in the charges. Defendants are entitled to immunity.

Issue #14: Whether any reasonable person could believe that it was not necessary to refuse to loosen, adjust or remove the handcuffs after Mr. Frimmel reported his symptoms.

24

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

*Frimmel Contends*:

A reasonable person would understand that a person can suffer injury if his arms are tightly pinned behind his back for a prolonged time. In addition, given that Mr. Frimmel was arrested for a non-violent offense, was entirely cooperative, and given that Henderson was not relying on a policy that required prolonged handcuffing in all cases without regard to such problems, Henderson had no compelling reason to refuse to adjust the handcuffs.

*Henderson Contends:* An arrested person is handcuffed per policy for officer safety and safety of others. The standard is not reasonable person. The standard is gross negligence as pled by Plaintiffs. Henderson did not act in a grossly negligent manner by keeping the handcuffs in place. There is not excessive force claim alleged by Plaintiffs. They pled gross negligence.. Further, Henderson is entitled to qualified immunity.

Issue #15: Whether Henderson showed reckless indifference to the likelihood that the handcuffs were injuring Mr. Frimmel.

*Frimmel Contends*:

Despite Mr. Frimmel's complaints and the lack of exigent circumstances, Henderson made no effort to even investigate why Mr. Frimmel was reporting pain from the handcuffing.

*Henderson Contends:* Plaintiffs do not cite to the proper standard. It is gross negligence. An arrested person is handcuffed per policy for officer safety and safety of others. Henderson did not act in a grossly negligent manner by keeping the handcuffs in place. There is no excessive force claim alleged by Plaintiffs. Further, Henderson is entitled to qualified immunity.

25

Issue #16: Whether any reasonable person could believe that it was not necessary to refuse to loosen, adjust or remove the handcuffs after Mr. Frimmel reported his symptoms.

*Frimmel Contends*:

A reasonable person would understand that a person can suffer injury if his arms are tightly pinned behind his back for a prolonged time. In addition, given that Mr. Frimmel was arrested for a non-violent offense, was entirely cooperative, and Henderson was not relying on a policy that required prolonged handcuffing in all cases without regard to such problems, Henderson had no compelling reason to refuse to adjust the handcuffs.

*Henderson Contends:*

An arrested person is handcuffed per policy for officer safety and safety of others. There is no excessive force claim alleged by Plaintiffs. Plaintiffs do not cite to the proper standard or claim. Henderson did not act in a grossly negligent manner by keeping the handcuffs in place. Further, Henderson is entitled to qualified immunity.

Issue #17: Whether Henderson showed reckless indifference to the likelihood that the handcuffs were injuring Mr. Frimmel.

*Frimmel Contends*:

Despite Mr. Frimmel's complaints and the lack of exigent circumstances, Henderson made no effort to even investigate why Mr. Frimmel was reporting pain from the handcuffing.

*Henderson Contends:*

Plaintiffs do not cite to the proper standard or claim as they pled. Plaintiffs pled gross negligence. An arrested person is handcuffed per policy for officer safety and

safety of others. Henderson did not act in a grossly negligent manner by keeping the handcuffs in place. There is no excessive force claim. Further, Henderson is entitled to qualified immunity.

Issue # 18: Whether the use of handcuffs was an actionable use of excessive force in violation of the Fourth Amendment.

*Frimmel Contends*:

No reasonable person with Henderson's knowledge of the relevant circumstances at the time, including the symptoms reported by Mr. Frimmel, would have subjected Mr. Frimmel to continued handcuffing without making an effort to adjust or remove the handcuffs.

*Henderson Contends*:

Plaintiffs do not cite to the proper standard or claim as they pled. Plaintiffs pled gross negligence. An arrested person is handcuffed per policy for officer safety and safety of others. Henderson did not act in a grossly negligent manner by keeping the handcuffs in place. There is no excessive force claim. Further, Henderson is entitled to qualified immunity.

Issue #19: Whether Arpaio knew of and specifically made a deliberate choice to approve Henderson's plans to conduct the raids and later to arrest Mr. Frimmel and Mrs. Norton.

*Plaintiffs Contend*:

Arpaio closely followed and had the final say on MCSO Criminal Employment Unit operations and in this case met with Henderson to review and approve his plans prior to both the raids and the arrests of Mr. Frimmel and Mrs. Norton.

*Defendants Contend*:

27

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

There is no failure to supervise or train claim alleged by Plaintiffs. Sheriff Arpaio did not engage in the investigation, application for warrants and/or arrests. Further Sheriff Arpaio did not approve the plan and/or order arrests. He left those decisions to the case agent based on the evidence available. Sheriff Arpaio is entitled to immunity.

Issue #20: Whether Arpaio's public statements stating or implying that Mr. Frimmel and Mrs. Norton: (1) knowingly hired employees with fake social security numbers; (2) assisted undocumented workers in obtaining false documents; and (3) intentionally solicited unauthorized aliens to work at Uncle Sam's, are actionable defamation per se.

*Plaintiffs Contend*:

Arpaio's public statements that Mr. Frimmel and Mrs. Norton: (1) committed criminal offenses; (2) knowingly hiring employees with fake social security numbers; (3) assisted undocumented workers in obtaining false documents; and (4) intentionally solicited unauthorized aliens to work at Uncle Sam's are actionable defamation per se because they are false, impute criminal conduct and ascribe conduct that adversely affects their fitness for the proper conduct of their lawful business and professions.

*Defendants Contend*:

Truth is an absolute defense. There is no defamation. Plaintiffs did not allege a claim of defamation per se. Arpaio is entitled to qualified immunity.

Issue #21: Whether Arpaio is responsible for MCSO officers' wrongful acts in applying for, obtaining and executing the search warrants.

*Plaintiffs Contend:*

28

Arpaio is responsible because he:

(1) directed Henderson to proceed with the operations;

(2) should not have approved the operations without personally reviewing the evidence or having a supervisor do so;

(3) showed reckless indifference to the risk that his officers would be overly zealous and sloppy, especially given the lead detective's (Henderson's) lack of experience; and

(4) put pressure on the Criminal Employment Unit to charge an employer with identity theft.

*Defendants Contend*:

There is no failure to supervise or train claim alleged by Plaintiffs. Sheriff Arpaio did not engage in the investigation, application for warrants and/or arrests. Further Sheriff Arpaio did not approve the plan and/or order arrests. He left those decisions to the case agent based on the evidence available. Sheriff Arpaio is entitled to immunity.

Issue #22: Whether Arpaio's and the other Individual Defendants' conduct was the proximate cause of Mr. Frimmel and Pishka's economic injuries.

*Plaintiffs Contend*:

The foreseeable and natural consequence of conducting searches and seizures without properly obtained warrants and making defamatory statements that MCSO had evidence that the owner and manager of Uncle Sam's had provided false identification documents to workers and committed forgery would be a loss of business and profits at Uncle Sam's.

*Defendants Contend*:

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Sheriff Arpaio and the other Individual Defendants were not the proximate cause. Plaintiffs were investigated for criminal offenses as a result of their own actions. Uncle Sam's, although enticing when it opened, thereafter lost its popularity due to owners <u>never</u> redecorating, updating the décor, and never improving/updating the food. Defendants are entitled to immunity.

<u>Issue #23</u>: Whether Arpaio's and the other Individual Defendant's conduct was the proximate cause of Mrs. Norton's damages.

*Plaintiffs Contend*:

The foreseeable and natural consequence of conducting searches and seizures without properly obtained warrants and making defamatory statements that MCSO had was evidence that Mrs. Norton had provided false identification documents to workers would be severe emotional distress, anxiety, sleeplessness and physical manifestations of those injuries.

*Defendants Contend*:

Arpaio and the other Individual Defendants were not the proximate cause. Plaintiffs were investigated for criminal offenses as a result of their own actions. Uncle Sam's, although enticing when it opened, thereafter lost its popularity due to owners <u>never</u> redecorating, updating the décor, and never improving/updating the food. Defendants are entitled to immunity. Plaintiff Norton did not suffer any out-of-pocket damages.

<u>Issue #24</u>: Whether Arpaio's and the other Individual Defendant's conduct was the proximate cause of Mr. Frimmel's damages.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

*Plaintiffs Contend*: The foreseeable and natural consequence of conducting searches and seizures without properly obtained warrants and making defamatory statements that MCSO had evidence that Mr. Frimmel had provided false identification documents to workers and committed forgery  would be severe emotional distress, anxiety, sleeplessness and physical manifestations of those injuries.

*Defendants Contend*:

Sheriff Arpaio and the other Individual Defendants were not the proximate cause. Plaintiffs were investigated for criminal offenses as a result of their own actions. Uncle Sam's, although enticing when it opened, thereafter lost its popularity due to owners <u>never </u>redecorating, updating the décor, and never improving/updating the food.  Defendants are entitled to immunity.

<u>Issue #25</u>: What type and amount of damages will adequately and properly compensate each of the plaintiffs for the defendants' conduct?

*Plaintiffs Contend*:Mrs. Norton is entitled to compensatory damages for the cost of her therapy treatments and general and punitive damages arising from the actions complained of herein in amounts to be determined by the jury. Defendants conduct is estimated to have caused Pishka, Inc., dba Uncle Sam's business loss damages in the amount of $6,501,981,- plus  the expenses incurred defending its owner and manager of the criminal charges.  Mr. Frimmel is entitled to compensatory, general and punitive damages in amounts to be determined by the jury.

*Defendants Contend*:

Sheriff Arpaio and the other Individual Defendants were not the proximate cause. Plaintiffs were investigated for criminal offenses as a result of their own actions. Uncle Sam's, although enticing when it opened, thereafter lost its popularity due to owners <u>never </u>redecorating, updating the décor, and never improving/updating the

31

food. Defendants are entitled to immunity. Plaintiff Frimmel's expert will be refuted by Defendants' expert.

Issue #26: Whether the allegations against Maricopa County stem from acts committed pursuant to a formal policy of Maricopa County, or, if the acts were so pervasive that they were the functional equivalent of a policy.

*Plaintiffs Contend*:

The allegations against Maricopa County stem from *Monell* liability based on liability of Sheriff Arpaio in his official capacity. The decision to replace trained detectives with deputies such as Henderson reflects a policy and practice of placing publicity for Arpaio ahead of protecting basic civil rights.

*Defendants Contend:*

The acts for which Plaintiffs seek to hold Maricopa County liable were not committed pursuant to a formal or informal policy.

**B.** The following are the issues of law to be determined:

Issue #1: Whether Arpaio's statements were defamatory.

*Plaintiff Frimmel Contends*:

By providing specific allegations – not just enumerating the charges – Arpaio falsely implied that there was evidence supporting those specific allegations when there was not. *See Martin v. Hearst Corp.*, 777 F. 3d 546, 552 (2nd Cir. 2015) ("even a technically true statement can be so constructed as to carry a false and defamatory meaning by implication or innuendo"); *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) ("[I]n reviewing a defamation claim, a court must ask as a threshold matter "whether a reasonable factfinder could conclude that the contested statement 'impl[ies] an assertion of objective fact.'") (*quoting Unelko Corp. v. Rooney*, 912

32

F.2d 1049, 1053 (9th Cir. 1990); *Martin v. Hearst Corp.*, 777 F.3d 546, 552 (2nd Cir. 2015) ("recognizing that "even technically true statement can be so construed as to carry a false and defamatory meaning by implication or innuendo"); *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978), (explaining that a defamatory meaning is found not by looking at what was omitted but from the "clear implication" what was said).

*Defendants Contend*:

Plaintiffs did not plead defamation per se. Arpaio's statements were believed to be true when stated. Defendant Arpaio is entitled to immunity.

Issue #2: Whether the MCSO press release is actionable defamation.

*Plaintiffs Contend*:

The MCSO press release makes a false statement because it falsely stated that MCSO had identified witnesses who stated that Mr. Frimmel or Mrs. Norton acquired or provided false identity documents. Defendant Arpaio is liable for this defamatory press release because (1) it was a statement by MCSO, (2) Arpaio portrayed himself as having knowledge of the facts supporting the press release when it was issued (he gave interviews on the subject that same day), and (3) Arpaio had authority to ensure MCSO's press releases were truthful. *Cf. Restatement (Second) of Torts* § 577(2) ("one who intentionally and unreasonably fails to remove defamatory matter that he knows to be exhibited on … chattels under his possession or control is subject to liability for its continued publication."). The statements are defamation *per se.*

*Defendants Contend*:

Arpaio did not "authorize" the press releases nor did he author the press releases. Truth is a complete defense. The authors believed the statements to be true. There

is one quote by Arpaio in the news release attributed to Arpaio—which is true. Defendant Arpaio is entitled to immunity.

Issue #3: Whether an investigators deliberate fabrication of evidence is sufficiently outrageous to warrant punitive damages and in what amount.

*Plaintiffs Contend*:

Outrageousness is determined by considering the degree of intention to cause extreme emotional distress and the likelihood that it would result – both of which were substantial here. *See Ford v. Revlon, Inc.*, 153 Ariz. 38, 43, 734 P.2d 580, 585 (1987); *see also Spencer v. Peters*, 857 F.3d 789, 801 (9th Cir. 2017) (rejecting the argument "that, when probable cause exists, an investigator's deliberate fabrication of evidence does not shock the conscience.") "The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position … which gives him actual or apparent authority over the other, or power to affect his interests." *Restatement (Second) of Torts* § 46, cmt. e (1965). "In particular police officers … have been held liable for extreme abuse of their position." *Id.* Surely then, it is "utterly intolerable in a civilized community," *id.* at cmt. d, that a law enforcement officer would make the kind of gross misrepresentations of material evidence made by Henderson that were intended to result in plaintiffs having to defend criminal charges that carried potentially long sentences.

*Defendants Contend*:

Despite Plaintiffs' attempt to reword this issue, they simply continue to argue Intentional Infliction of Emotional Distress and judicial deception. The IIED claim was dismissed by this Court. Plaintiffs never pled judicial deception and no such claim exists. Probable cause existed at the time of the execution of the search

warrants and the arrests. Punitive damages are not supported where probable cause existed for the officers' actions.

Issue #4: Whether the existence of probable cause that a crime was committed, provides qualified immunity for the arresting officer's falsification of evidence in violation of the 14th Amendment.

*Plaintiffs Contend*:

Falsification of evidence is not protected by qualified immunity even if there was probable cause for an arrest. *See Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir.1995) ("[I]f an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth, ... he cannot be said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost.") (internal quotations and citation omitted); *Spencer v. Peters*, 857 F.3d 789, 801 (9th Cir. 2017) (rejecting the argument "that, when probable cause exists, an investigator's deliberate fabrication of evidence does not shock the conscience.");*Chism v. Washington*, 661 F.3d 380, 393 (9th Cir. 2011) ("governmental employees are not entitled to qualified immunity on judicial deception claims"); *id.* ("[S]ummary judgment on the ground of qualified immunity is not appropriate once a plaintiff has made out a judicial deception claim.").

*Defendants Contend*:

There is no malicious prosecution claim. It was dismissed as to the Individual Defendants by this Court. There is no Fourteenth Amendment claim and none was ever pled. Again, there is no judicial deception claim and none was ever pled. There was probable cause for the searches and the arrests. If Plaintiffs prove a violation of a Constitutional right, Defendants are then entitled to immunity.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Issue #5: Whether Mr. Frimmel and Mrs. Norton are entitled to damages including nominal damages, for unreasonable searches in violation of the 4th Amendment or falsification of evidence in violation of the 14th Amendment.

*Plaintiffs Contend*:

"If the jury finds a constitutional violation, an award of nominal damages is mandatory, not permissive. That a jury might choose to award zero actual damages is irrelevant to the legal question of whether, on the basis of the jury's verdict, the plaintiff was entitled to judgment and nominal damages." *Floyd v. Laws*, 929 F.2d 1390, 1402-03 (9th Cir. 1991) "A seizure conducted pursuant to a warrant obtained by judicial deception violates the Fourth Amendment." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007), citing *Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir.2002) (per curiam)). There is no qualified immunity for such claims. *Greene v. Camreta*, 588 F. 3d 1011, 1034 (9th Cir. 2009).

*Defendants Contend*:

There is no judicial deception claim. It was not pled by Plaintiffs. Instead, they asserted a Fourth Amendment violation. Judicial deception requires different elements that were not noticed or pled. There is no malicious prosecution claim. It was dismissed as to the Individual Defendants by this Court. There is no Fourteenth Amendment claim and none was ever pled. Again, there is no judicial deception claim and none was ever pled. There was probable cause for the searches and the arrests. If Plaintiffs prove a violation of a Constitutional right, Defendants are then entitled to immunity.

Issue #6: Whether the § 1983 claims support the imposition of punitive damages.

*Plaintiffs Contend*:

36

Punitive damages are appropriate because Henderson's and Arpaio's conduct showed a reckless or callous indifference to Plaintiffs' constitutional rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

*Defendants Contend*:

Plaintiffs are not entitled to punitive damages. Neither Arpaio nor Deputy Henderson (nor any other defendant) showed reckless or callous disregard. There is no evidence of evil motive. There is no judicial deception claim. It was not pled by Plaintiffs. Instead, they asserted a Fourth Amendment violation. Judicial deception requires different elements that were not noticed or pled. There is no malicious prosecution claim. It was dismissed as to the Individual Defendants by this Court. There is no Fourteenth Amendment claim and none was ever pled. Again, there is no judicial deception claim and none was ever pled. There was probable cause for the searches and the arrests. If Plaintiffs prove a violation of a Constitutional right, Defendants are then entitled to immunity.

Issue #7: Whether the defamation and excessive force claims should be treated as § 1983 claims.

*Plaintiffs Contend*:

Plaintiffs' state law defamation and excessive force claims should be treated as § 1983 claims because they are closely associated with constitutional violations actionable under § 1983. *See Herb Hallman Chevrolet, Inc. v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999). (holding that a "cognizable § 1983 claim for defamation-plus" can be stated by pleading defamation "in connection with

37

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

indictments and arrests for which there was no probable cause."). In more general terms, "[a] § 1983 'defamation-plus' claim requires an allegation of injury to a plaintiff's reputation from defamation accompanied by an allegation of injury to a recognizable property or liberty interest." *Crowe v. County of San Diego*, 593 F.3d 841, 879 (9th Cir. 2010).

 "There are two ways to state a cognizable § 1983 claim for defamation-plus: (1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury to reputation caused the denial of a federally protected right." *Herb Hallman Chevrolet*, 169 F.3d at 645. There is no requirement to cite to § 1983 in the pleadings. *See Johnson v. City of Shelby, Miss.*, 135 S.Ct. 346, 347 (2014) (per curiam) ("no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim."). The same reasoning should apply to excessive force (handcuffing) claims because it also occurred in connection with § 1983 violations.

*Defendants Contend*:

There is neither an Intentional infliction of emotional distress claim nor excessive force claim remaining in this case (nor was an excessive force claim ever pled). Plaintiffs pled the defamation claim as a state claim. They are not and should not be "treated" as § 1983 claims, and the court has already ruled on this issue.


Issue #8: Whether the defamation and excessive force claims entitle plaintiffs to punitive damages

*Plaintiffs Contend*:

Because these claims are treated as § 1983 claims, punitive damages can be evaluated under under federal standards and are appropriate because Henderson's and Arpaio's

38

conduct showed a reckless or callous indifference to Plaintiffs' constitutional rights. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) ("a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.").

*Defendants Contend*:

There is neither an Intentional infliction of emotional distress claim nor excessive force claim remaining in this case (nor was an excessive force claim ever pled). Plaintiffs pled the defamation claim as a state claim. They are not and should not be "treated" as § 1983 claims, and the court has already ruled on this issue. Therefore, Plaintiffs are not entitled to punitive damages or any damages resulting from these claims that are not in this case.

Issue #9: Whether Maricopa County is jointly liable with Arpaio for any damages awarded against Arpaio for civil rights violations pursuant to 42 U.S.C. § 1983.

*Plaintiffs Contend*:

Arpaio was acting under color of law and was the final decision maker for criminal investigation and enforcement for Maricopa County.

*Defendants Contend*:

Maricopa County can only be held liable for the acts of Arpaio and others if certain circumstances are proven to exist. Defendants contend that none of those circumstances can be proven to exist.

Issue #10: Whether the searches and seizures conducted at the Uncle Sam's restaurant and Mr. Frimmel's personal residence were unreasonable if the search warrants

would not have been issued had the sworn affidavits been corrected for materials omissions and misstatements.

*Plaintiffs Contend:*

A search made pursuant to a warrant obtained by judicial deception is never reasonable. *See KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir. 2004) ("It is clearly established that judicial deception may not be employed to obtain a search warrant."); *Perlman v. City of Chicago,* 801 F.2d 262, 264 (7th Cir. 1986) (applying the standard "established by Franks to a civil action for damages based on an allegation that a police officer deliberately misrepresented facts in a warrant affidavit").

*Defendants Contend*:

There is no judicial deception claim. It was not pled by Plaintiffs. Instead, they asserted a Fourth Amendment violation. Judicial deception requires different elements that were not noticed or pled. There was probable cause for the searches and the arrests. If Plaintiffs prove a violation of a Constitutional right, Defendants are then entitled to immunity.

Issue #11: Whether the searches and seizures of Mr. Frimmel's and Mrs. Norton's cellular telephone were unreasonable if the search warrants would not have been issued had the sworn affidavits been corrected for material omissions and misstatements.

*Plaintiffs Contend:*

A search made pursuant to a warrant obtained by judicial deception is never reasonable. *See KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir. 2004) ("It is clearly established that judicial deception may not be employed to obtain a search warrant."); *Perlman v. City of Chicago,* 801 F.2d 262, 264 (7th Cir. 1986) (applying the standard

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

"established by *Franks* to a civil action for damages based on an allegation that a police officer deliberately misrepresented facts in a warrant affidavit").

*Defendants Contend*:

There is no judicial deception claim. It was not pled by Plaintiffs. Instead, they asserted a Fourth Amendment violation. Judicial deception requires different elements that were not noticed or pled. There was probable cause for the searches and the arrests. If Plaintiffs prove a violation of a Constitutional right, Defendants are then entitled to immunity.

Issue 12: Whether any of the following accusations are defamation per se if factually false: (a) that someone committed forgery; (b) that MCSO had evidence that someone committed forgery; (c) that someone obtained or provided false identification documents to another; or (d) that MCSO had evidence that someone obtained or provided false identification documents to another.

*Plaintiffs Contend:*

There is no need to prove special harm from defamation that imputes a criminal offense or matter incompatible with a person's trade or profession. Restatement (Second) of Torts §§ 570, 571, 573.

*Defendants Contend:*

Plaintiffs did not plead defamation per se. Arpaio's statements were believed to be true when stated. Defendant Arpaio is entitled to immunity.

Issue 13: Whether, in all relevant contexts, the Defendants Arpaio, Henderson, Gandara, Locksa, and Hechavarria acted under color of state law.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

*Plaintiffs' Contend:* Until January 2017, Gandara, Locksa, and Hechavarria were acting under color of State law.

*Defendants' Position:*

This is a "new issue" added on November 1, 2019. It is unclear what Plaintiffs mean by "in all relevant contexts." Defendants already agreed they were acting under color of state law. Gandara is no longer a Defendant in this matter.[2]

Issue 14: Whether, in all relevant contexts, Arpaio had final policymaking authority for Maricopa County.

*Plaintiffs' Contend:* Arpaio was acting under color of law and was the final decision maker for criminal investigation and enforcement for Maricopa County.

*Defendants' Position:*

This is a "new issue" added on November 1, 2019. It is unclear what Plaintiffs mean by "in all relevant contexts." Defendants already agreed they were acting under color of state law.

Issue 15: Whether, in all relevant contexts, Arpaio was acting as a final policymaker for Maricopa County.

*Plaintiffs' Contend:* Arpaio was acting under color of law and was the final decision maker for criminal investigation and enforcement for Maricopa County.

*Defendants' Position:*

_____

[2] Plaintiffs respond that issues 14-20 were in fact included in the Joint Proposed Pre-Trial Order submitted on September 9, 2019 (Doc. 263).

42

This is a "new issue" added on November 1, 2019. It is unclear what Plaintiffs mean by "in all relevant contexts." Defendants already agreed they were acting under color of state law.

<u>Issue 16</u>: Whether the searches and seizures conducted at the Uncle Sam's restaurants and Mr. Frimmel's personal residence were unreasonable if the search warrants would not have been issued had the sworn affidavits been corrected for materials omissions and misstatements.

*Plaintiffs' Contend:*

A search made pursuant to a warrant obtained by judicial deception is never reasonable. *See KRL v. Moore,* 384 F.3d 1105, 1117 (9th Cir. 2004) ("It is clearly established that judicial deception may not be employed to obtain a search warrant."); *Perlman v. City of Chicago,* 801 F.2d 262, 264 (7th Cir. 1986) (applying the standard "established by Franks to a civil action for damages based on an allegation that a police officer deliberately misrepresented facts in a warrant affidavit").

*Defendants' Position:*

This is a "new issue" added on November 1, 2019. As previously stated, there is no judicial deception claim. Regardless of the contents of the search warrant affidavits, there was probable cause for the searches and the arrests. If Plaintiffs can prove a Constitutional violation, Defendants are entitled to immunity.

<u>Issue 18</u>: Whether a false statement that MCSO questioned witnesses who claimed to have first-hand knowledge that Mr. Frimmel and Mrs. Norton colluded together to acquire false identification documents in order to provide those IDs to undocumented workers is defamation per se.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

*Plaintiffs' Contend:* Arpaio's public statements that Mr. Frimmel and Mrs. Norton: (1) committed criminal offenses; (2) knowingly hiring employees with fake social security numbers; (3) assisted undocumented workers in obtaining false documents; and (4) intentionally solicited unauthorized aliens to work at Uncle Sam's are actionable defamation per se because they are false, impute criminal conduct and ascribe conduct that adversely affects their fitness for the proper conduct of their lawful business and professions.

*Defendants' Position:*

This is a "new issue" added on November 1, 2019. As previously stated, Plaintiffs did not plead defamation per se: therefore, this issue is irrelevant as pled by Plaintiffs. Arpaio did not commit defamation. Arpaio is entitled to immunity.

Issue 19: Whether a false accusation that MCSO learned that Mr. Frimmel and Mrs. Norton were providing stolen IDs mainly social security cards to their employees is defamation per se.

*Plaintiffs' Contend:* Arpaio's public statements that Mr. Frimmel and Mrs. Norton: (1) committed criminal offenses; (2) knowingly hiring employees with fake social security numbers; (3) assisted undocumented workers in obtaining false documents; and (4) intentionally solicited unauthorized aliens to work at Uncle Sam's are actionable defamation per se because they are false, impute criminal conduct and ascribe conduct that adversely affects their fitness for the proper conduct of their lawful business and professions.

*Defendants' Position:*

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

This is a "new issue" added on November 1, 2019. As previously stated, Plaintiffs did not plead defamation per se: therefore, this issue is irrelevant as pled by Plaintiffs. Arpaio did not commit defamation. Arpaio is entitled to immunity.

Issue 20: Whether the statement by the head of a police agency that a person was arrested for specific crimes is an implicit statement that the agency has substantial evidence that the person did commit those crimes.

*Plaintiffs' Contend:* The only reasonable interpretation of a statement by the head of a police agency that a person was arrested for specific crimes is that the agency has substantial evidence that the person did commit those crimes.

*Defendants' Position:*

This is a "new issue" added on November 1, 2019. It is unclear why Plaintiffs list this as an issue. Plaintiffs have the burden to prove the elements for defamation. "Reasonable interpretations" may be argued to the jury, but are not an issue of fact or law.

# 6. LIST OF WITNESSES

    **A.**    Plaintiffs' Witnesses

        (1)  witnesses who shall be called at trial

            • Bret Frimmel

        c/o GORDON REES

        Fact witness who will testify as to his knowledge of the raids on the Uncle Sam's restaurants and his residence, the search and seizure of his cellular telephone and records, the operation of the restaurants, the criminal trial, economic losses of the restaurants, and his personal injuries.

            • Lisa Norton

        c/o GORDON REES

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Fact witness who will testify as to her knowledge of the raids on the Uncle Sam's restaurants, the search and seizure of her cellular telephone and records, the operation of the restaurants, the criminal trial, economic losses of the restaurants, and her personal injuries.

- Bruce Norton

c/o GORDON REES

Fact witness who will testify as to his knowledge of Mrs. Norton's personal injuries.

- Joshua Henderson

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as to his knowledge of the raids on the Uncle Sam's restaurants, the search and seizure of Plaintiffs' cellular telephones and records, the operation of the restaurants, the investigation leading to the arrest of Mr. Frimmel and Mrs. Norton, various written reports concerning that investigation, his communication with the Maricopa County Attorney Office and its attorneys, the events of arresting and handcuffing Mr. Frimmel, and sworn affidavits and testimony he gave in this and the related criminal case.

- Sean Locksa

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as to his knowledge of the raids on the Uncle Sam's restaurants, the search and seizure of Plaintiffs' cellular telephones and records, the operation of the restaurants, the investigation leading to the arrest of Mr. Frimmel and Mrs. Norton, various written reports concerning that investigation, and sworn testimony and affidavits he gave in this and the related criminal case.

46

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

- Christopher Hechavarria

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as to his knowledge of the raids on the Uncle Sam's restaurants, the search and seizure of Plaintiffs' cellular telephones and records, the operation of the restaurants, the investigation leading to the arrest of Mr. Frimmel and Mrs. Norton, various written reports concerning that investigation, and sworn testimony and affidavits he gave in this and the related criminal case.

- Joseph Arpaio

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as to his knowledge of the operation of the Criminal Employment Unit of the MCSO, his communications with deputies and officers working in or with the Criminal Employment Unit, the raids on the Uncle Sam's restaurants and Mr. Frimmel's residence, the investigation leading to the arrest of Mr. Frimmel and Mrs. Norton, public statements he made or approved concerning those arrests, various written reports concerning that investigation, meeting he attending concerning that investigation,  his knowledge of communications with the Maricopa County Attorney Office and its attorneys, and sworn testimony and statements he gave in this and the related criminal case and other matters.

- Paul Penzone

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as to his knowledge of the operation of the Criminal Employment Unit of the MCSO, including standards for supervising investigating officers and for establishing probable cause and any facts he may have relevant to these claims.

47

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

- Paul Charlton

DENTONS USA
2575 E. Camelback Road
Phoenix, AZ 85016

Fact witness who will testify as to his first hand knowledge of plaintiffs'

emotional state during the criminal case."

- Wade Voeltz

2050 E Indigo Dr
Chandler, AZ 85286

Fact witness who will testify as his knowledge of the investigative

procedures and standards of the Criminal Employment Unit while he was

assigned to that unit and his role in the investigation regarding plaintiffs.

- Cesar Brockman

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as to communications he received from

superiors and Sheriff Arpaio, his supervision of Mr. Henderson, his

knowledge of the raids on the Uncle Sam's restaurants, the search and

seizure of the cellular telephones and records, the operation of the

restaurants, the investigation leading to the arrest of Mr. Frimmel and

Mrs. Norton, various written reports concerning that investigation, his

communication with the Maricopa County Attorney Office and its

attorneys, and sworn testimony he gave in this and the related criminal

case.

Objection. This witness is irrelevant. There are no malicious prosecution

claims remaining regarding the Individual Defendants.

- Dmitrius Whalen-Gonzales

c/o IAFRATE & ASSOCIATES

Fact witness and Rule 30(b)(6) witness for MCSO who will testify as to his knowledge of the raids on the Uncle Sam's restaurants, the search and seizure of the cellular telephones and records, the operation of the restaurants, the investigation leading to the arrest of Mr. Frimmel and Mrs. Norton, various written reports concerning that investigation, his communication with the Maricopa County Attorney Office and its attorneys, MCSO's knowledge concerning the training and experience of Mr. Henderson and meetings attending by Henderson, Arpaio and others prior to the raids and arrests at issue, and sworn testimony he gave in this and the related criminal case.

- Jaimee Oliver

OFFICE OF THE ATTORNEY GENERAL
2005 N Central Ave
Phoenix, AZ, 85004-1592

Fact witness who will testify as to her experience as a s prosecuting attorney, the support she received in the underlying criminal prosecution, the events of that prosecution, information she received from MCSO concerning the investigation leading to the arrest of Mr. Frimmel and Mrs. Norton, her personal knowledge of evidence collected in that investigation, her reliance on the veracity of reports provided to her by MCSO, her decision to file felony charges against Plaintiffs and sworn testimony she gave in this case.

- Christopher Jefferys

c/o IAFRATE & ASSOCIATES

49

Rule 30(b)(6) witness who will testify as to MCSO's knowledge of the training and experience of Mr. Henderson and sworn testimony he gave in this case.

- Michael Lipton, M.D.

9225 N. 3rd Street
Phoenix, AZ 85020

Fact witness who will testify as to his findings, diagnosis, prognosis, and treatment of Mr. Frimmel's injuries.

- Heidi Brouelette

6232 N. 7th Street, Ste. 209
Phoenix, AZ 85014

Fact witness who will testify as to her findings, diagnosis, prognosis, and treatment of Mrs. Norton's injuries.

- Dennis Minchella

463 Mariners Drive
Kemah, Texas, 77565

Fact witness who will testify as to his assessment of the potential of franchising the Uncle Sam's restaurants prior to and following the arrests and criminal prosecution of Mr. Frimmel.

- Greg Curry

c/o GORDON REES

Expert witness who will testify as to economic damages suffered by the Uncle Sam's restaurants.

- Sandra Lines

6200 E. Cholla Lane
Paradise Valley, AZ  85253

Expert witness who will testify as to the kinds of forensic analysis that should be performed on a document when investigating possible alteration of same.

- Brett Palmer

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as his experiences with Mr. Arpaio ordering him to detain person's in violation of a court order, so as to allow time for the press to arrive.  Objection:  Pursuant to the Court's Order regarding the Motion in Limine, Plaintiffs may not illicit testimony from Brett Palmer regarding "Melendres for the truth of the matter in the case."  Oct. 1, 2019 Transcript p. 67:4-7.

- Brian Jakowinicz

c/o IAFRATE & ASSOCIATES

Fact witness who will testify as his experiences with Mr. Arpaio closely supervising the operations of the Criminal Employment Unit and related activities involving undocumented immigrants

Objection: Pursuant to the Court's Order re the Motion in Limine, Plaintiffs may not illicit testimony from Brian Jakowinicz regarding "Melendres for the truth of the matter in the case." Oct. 1, 2019 Transcript p. 67:4-7.

- Brian Sands

c/o Craig Murdy
LEWIS BRISBOIS BISGAARD & SMITH, LLP
2929 N. Central Avenue
Suite 1700
Phoenix, AZ  85012

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Fact witness who will testify as to his knowledge of how the Criminal

Employment Unit operated and how Sheriff Arpaio regarded publicity as

more important that good police work.

Objection:  Pursuant to the Court's Order re the Motion in Limine,

Plaintiffs may not illicit testimony from Brian Sands regarding

"Melendres for the truth of the matter in the case."  Oct. 1, 2019

Transcript p. 67:4-7.

    (2)       witnesses who may be called at trial

        • Randy Murray
    631 N. 1st Avenue, Suite 101
    Phoenix, AZ 85003

Fact witness who may be called if needed to lay foundation for clips of

the film "The Joe Show."

    (3)       witnesses who are unlikely to be called at trial


   **B.**    Defendants' Witnesses

    (1)       witnesses who shall be called at trial
        Bret Frimmel
        c/o Leon Silver
        Andrew S. Jacob
        Gordon & Rees LLP
        111 W. Monroe Street, Suite 1600
        Phoenix, Arizona  85003

   (Lay Witness) Plaintiff Frimmel is expected to testify regarding: the

operation of his business ventures and Uncle Sam's restaurants; personal and business

financial accounting and information; general operations at Uncle Sam's restaurants,

including but not limited to the hiring process, retention, and treatment of employees;

and his claims against Defendants.  (Plaintiffs object to this anticipated testimony as

violative of the ruling on Plaintiffs' Motion in Limine.)

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Lisa Norton
c/o Leon Silver
Andrew S. Jacob
Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, Arizona 85003

(Lay Witness) Plaintiff Lisa Norton ("Plaintiff Norton") is expected to testify regarding: the operation of Uncle Sam's restaurants; person and business financial accounting and information; job duties and responsibilities as they pertain to employment at Uncle Sam's restaurants; general operations at Uncle Sam's restaurants, including but not limited to the hiring process, retention, and treatment of employees; and her claims against Defendants. (Plaintiffs object to this anticipated testimony as violative of the ruling on Plaintiffs' Motion in Limine.)

Bruce Norton
c/o Leon Silver
Andrew S. Jacob
Gordon & Rees LLP
111 W. Monroe Street, Suite 1600
Phoenix, Arizona 85003

(Lay Witness) Plaintiff Bruce Norton ("Bruce Norton") is expected to testify regarding his claims against Defendants.

Sheriff Joseph M. Arpaio
c/o Michele M. Iafrate
Iafrate & Associates
649 N. 2nd Avenue
Phoenix, Arizona 85003

(Lay Witness) Sheriff Arpaio is expected to testify regarding his duties and responsibilities as Sheriff of Maricopa County, his participation in Plaintiffs' criminal investigation, any public statements made in relation to Plaintiffs' criminal case, and the goals and objections of the Maricopa County Sheriff's Office.

53

Joshua Henderson
c/o Michele M. Iafrate
Iafrate & Associates
649 N. 2nd Avenue
Phoenix, Arizona  85003

(Lay Witness) Detective Henderson #S1458 is employed by the Maricopa County Sheriff's Office and is expected to testify regarding his investigations into Plaintiff Brett Frimmel and Plaintiff Lisa Norton, as well as Plaintiff Bret Frimmel's restaurants and business ventures.  Detective Henderson's expected testimony includes but is not limited to the arrests of individual employees and of Plaintiffs, Plaintiff Frimmel's business and employment records, and interviews conducted with defendants and witnesses. (Plaintiffs object to any anticipated testimony regarding evidence obtained after January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Sean Locksa
c/o Michele M. Iafrate
Iafrate & Associates
649 N. 2nd Avenue
Phoenix, Arizona  85003

(Lay Witness) Detective Locksa #S1312 is employed by the Maricopa County Sheriff's Office and is expected to testify regarding his participation in Plaintiffs' criminal investigation, including any search warrants he authored related to the investigation.

Christopher Hechavarria
c/o Michele M. Iafrate
Iafrate & Associates
649 N. 2nd Avenue
Phoenix, Arizona  85003

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

(Lay Witness) Detective Hechavarria #S1851 is employed by the Maricopa County Sheriff's Office and is expected to testify regarding his participation in Plaintiffs' criminal investigation, including any search warrants he authored related to the investigation.

        H. Martinez
        c/o Michele M. Iafrate
        Iafrate & Associates
        649 N. 2nd Avenue
        Phoenix, Arizona 85003

(Lay Witness) Detective Martinez #1593 is employed by the Maricopa County Sheriff's Office and is expected to testify regarding his participation in Plaintiffs' criminal investigation, including his interview of Roberto Moran Vargas from November 22, 2013, and interview of Sabrina Stark on July 17, 2013.

        D. Whelan-Gonzales
        c/o Michele M. Iafrate
        Iafrate & Associates
        649 N. 2nd Avenue
        Phoenix, Arizona 85003

(Lay Witness) Sergeant Whelan-Gonzales #1789 is employed by the Maricopa County Sheriff's Office and is expected to testify regarding his participation in Plaintiffs' criminal investigation, including any supervisory activities and his assistance or supervision of any search warrants. Sergeant Whelan-Gonzales will also testify regarding policies and procedures of the MCSO.

        Christina Hopkins
        1460 E. Bell Rd.
        Phoenix, AZ 85022

(Lay Witness) Ms. Hopkins is expected to testify regarding her experience as an employee at Uncle Sam's, record management at the restaurant, payments made to employees, the hiring process, and Plaintiff Frimmel and Plaintiff Norton's treatment of

employees, including but not limited to statements made by Plaintiff Frimmel and Plaintiff Norton regarding the hiring of employees and statements made regarding immigration, documentation, and race or ethnicity. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Christina J. Wagner
c/o Clifford P. Bendau, II
The Bendau Law Firm PLLC
P.O. Box 97066
Phoenix, Arizona 85018
Telephone: (480) 382-5176

(Lay Witness) Ms. Wagner is expected to testify regarding her experience as an employee at Uncle Sam's, wage practices, hiring process, Plaintiffs Frimmel and Norton's treatment of employees, including but not limited to statements made regarding immigration, documentation, and race or ethnicity of individuals. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Lieutenant Chris Jefferys
c/o Michele M. Iafrate
Iafrate & Associates
649 N. 2nd Avenue
Phoenix, Arizona 85003

(Lay Witness) Lieutenant Chris Jefferys is employed by Maricopa County Sheriff's Office and is expected to testify regarding training provided to Sergeant Henderson prior to July 18, 2013 regarding probable cause and drafting search warrant applications. He is also expected to testify regarding the nature and substance of all information and instruction provided to or available to Sergeant Henderson prior to January 23, 2014 explaining probable cause in relation to employer identity theft crimes.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Sergeant John Little
c/o Michele M. Iafrate
Iafrate & Associates
649 N. 2nd Avenue
Phoenix, Arizona  85003

(Lay Witness) Sergeant Little was employed by the Maricopa County Sheriff's Office in the General Investigations Division.  Sergeant Little instructed MCSO's Search and Seizure course and is expected to testify regarding course content and teaching methods he employed to assist officers' understanding.

Dwight J. Duncan
EconLit LLC
3200 N. Central Avenue, Suite 1850
Phoenix, Arizona  85012

(Expert Witness) Mr. Duncan is an Economist.  Mr. Duncan will testify in conformance with his report and rebuttal report (Bates stamped 3435 003539-003597; 3435 009615-009652).  Mr. Duncan will testify that the present value of Pishka's lost profit damages are approximately $772,000.

Alex Rodrigeuz
Seattle, Washington
(206) 225-3476

(Lay Witness) Mr. Rodrigeuz is expected to testify regarding his experience as an employee at Uncle Sam's, record management at the restaurant, payments made to employees, the hiring process, and Plaintiff Frimmel and Plaintiff Norton's treatment of employees, including but not limited to statements made by Plaintiff Frimmel and Plaintiff Norton regarding the hiring of employees and statements made regarding immigration, documentation, and race or ethnicity of individuals. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Victor Moran Vargas
15801 N. 29th Street, #7
Phoenix, Arizona  85032

(Lay Witness) Mr. Vargas is expected to testify regarding his experience as an employee at Uncle Sam's, record management at the restaurant, payments made to employees, the hiring process, and Plaintiff Frimmel and Plaintiff Norton's treatment of employees, including but not limited to statements made by Plaintiff Frimmel and Plaintiff Norton regarding the hiring of employees and statements made regarding immigration, documentation, and race or ethnicity of individuals. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Roberto Moran Vargas
15826 N. 32nd St. #1049
Phoenix, Arizona  85032

(Lay Witness) Mr. Vargas is expected to testify regarding his experience as an employee at Uncle Sam's, record management at the restaurant, payments made to employees, the hiring process, and Plaintiff Frimmel and Plaintiff Norton's treatment of employees, including but not limited to statements made by Plaintiff Frimmel and Plaintiff Norton regarding the hiring of employees and statements made regarding immigration, documentation, and race or ethnicity of individuals. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Emigdio Munoz Gonzalez
11229 N. 79th Drive
Peoria, Arizona  85345

(Lay Witness) Mr. Gonzalez is expected to testify regarding his experience as an employee at Uncle Sam's, including the hiring process and statements made by Plaintiff Frimmel and Plaintiff Norton. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Valentin Villanueva-Fernandez
3004 E. Almeria Road, #1
Phoenix, Arizona 85008

(Lay Witness) Mr. Villanueva-Fernandez is expected to testify regarding his experience as an employee at Uncle Sam's, including the hiring process and statements made by Plaintiff Frimmel and Plaintiff Norton. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

Fernando Abundez Gonzalez
3230 E. Roosevelt St., #148
Phoenix, Arizona 85008

(Lay Witness) Mr. Gonzalez is expected to testify regarding his experience as an employee at Uncle Sam's, including the hiring process and statements made by Plaintiff Frimmel and Plaintiff Norton. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

(2)     witnesses who may be called at trial

Sabrina Michelle Stark
Address Unknown

59

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

(Lay Witness) Ms. Stark is expected to testify regarding her experience as an employee at Uncle Sam's, record management at the restaurant, payments made to employees, the hiring process, and Plaintiff Frimmel and Plaintiff Norton's treatment of employees, including but not limited to statements made by Plaintiff Frimmel and Plaintiff Norton regarding the hiring of employees and statements made regarding immigration, documentation, and race or ethnicity of individuals. (Plaintiffs object to any evidence from thus witness that was not known to MCSO by January 22, 2014 as violative of the ruling on Plaintiffs' Motion in Limine.)

        (3)        witnesses who are unlikely to be called at trial

        Brandon Jones
        c/o Michele M. Iafrate
        Iafrate & Associates
        649 N. 2nd Avenue
        Phoenix, Arizona  85003

(Lay Witness) Media Relations Officer Jones #A7823 is an employee of the Maricopa County Sheriff's Office and is expected to testify regarding his involvement in Plaintiffs' criminal matter, specifically the creation and publication of news releases and media issued by the Maricopa County Sheriff's Office as it was related to Plaintiffs' criminal investigations and prosecution.

        Christopher Hegstrom
        c/o Michele M. Iafrate
        Iafrate & Associates
        649 N. 2nd Avenue
        Phoenix, Arizona  85003

(Lay Witness) Media Relations Officer Hegstrom #B1798 is an employee of the Maricopa County Sheriff's Office and is expected to testify regarding his involvement in Plaintiffs' criminal matter, specifically the creation and publication of news releases and media issued by the Maricopa County Sheriff's Office as it was related to Plaintiffs' criminal investigations and prosecution.

Rosemary Irving
Address Unknown

(Lay Witness) Ms. Irving will testify regarding the protest against Uncle Sam's.

Kevin Westover
c/o J. Arthur Eaves
Sanders & Parks
3030 N. Third Street, Ste. 1300
Phoenix, Arizona 85012

(Lay Witness) Mr. Westover is employed by Maricopa County. He is expected to testify regarding how Maricopa County preserves e-mails pursuant to preservation of evidence letters and how it conducted searches of e-mails in this case.

**C.** Acknowledgement Statement

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that it is responsible for ensuring that the witnesses it wishes to call to testify are subpoenaed. Each party further understands that any witness a party wishes to call shall be listed on that party's list of witnesses; the party cannot rely on the witness having been listed or subpoenaed by another party.

# 7. LIST OF EXHIBITS

**A.** The following exhibits are admissible in evidence and may be marked in evidence by the Courtroom Deputy:

<u>Plaintiffs' Exhibits:</u>

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Exhibit 7: Docket Charges Against Witnesses (GR000094-95)

Exhibit 11: Frimmel Indictment (GR000102 - 109)

Exhibit 12: Norton Indictment (GR000110 -117)

Exhibit 38: Henderson Training Materials (3435 002450-2465)


Defendants' Exhibits:


104. CR2013-004698 002 Emigdio Munoz Gonzalez Waiver of Preliminary Hearing with Plea Agreement (Bates Stamped 3435 000027-000032).

105. CR2013-004698 003 Fernando Gonzalez Waiver of Preliminary Hearing with Plea Agreement (Bates Stamped 3435 000033-000038).

106. CR2013-004698 001 Valentin Villanueva Fernandez Waiver of Preliminary Hearing with Plea Agreement (Bates Stamped 3435 000039-000044).

107. CR2013-004698 004 Victor Moran Vargas Waiver of Preliminary Hearing with Plea Agreement (Bates Stamped 3435 000045-000050).

108. Law Enforcement Agency Certification for Significant Public Benefit Parole for Roberto Moran Vargas (Bates Stamped 3435 000051).

109. LEA Significant Public Benefit Parole Authorization Form for Roberto Moran Vargas (Bates Stamped 3435 000052-000055).

116. Personnel Records for Christopher Hechavarria (Bates Stamped 3435 001530-001816).

117. Personnel Records for Christopher Hegstrom (Bates Stamped 3435 001817-002049).

118. Personnel Records for Joshua Henderson (Bates Stamped 3435 002050-002465).

119. Personnel Records for Brandon Jones (Bates Stamped 3435 002466-002825).

120. Personnel Records for Sean Locksa (Bates Stamped 002826-002985).

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

121. Personnel Records for Dmitrius Whelan Gonzales (Bates Stamped 3435 002986-003256).

143. Criminal Employment Unit Flow Chart (Bates Stamped MELC659975).

144. Criminal Employment Unit Operations Manual (Bates Stamped MELC659976-MELC659981).

145. Criminal Employment Unit Power Point (Bates Stamped MELC659982-MELC660008).

154. MCSO Policy and Procedure GJ-3 regarding Search and Seizure (Bates Stamped 3435 003335-003339).

**B.** As to the following exhibits, the parties have reached the following stipulations:

Plaintiffs' Exhibits:

Defendants' Exhibits:

**C.** As to the following exhibits, the party against whom the exhibit is to be offered objects to the admission of the exhibit and offers the objection as stated below:

Plaintiffs' Exhibits:

Exhibit 1: 3217 E. Shea Blvd. Search Warrant (GR000001 - 20)  Hearsay

Exhibit 2: 13325 E. Cochise Rd. Search Warrant (GR000021 - 40) Hearsay

Exhibit 3: 18913 N. 83rd Ave., Search Warrant (GR000041 - 56) Hearsay

Exhibit 4: Norton Cell Records, Search Warrant (GR000061-70) Hearsay

Exhibit 5: Frimmel Cell Records, Search Warrant (GR000071-78) Hearsay

Exhibit 6: Cell Data, Search Warrant (GR000083-93) Hearsay.

Exhibit 8: Release Questionnaire with Probable Cause Statement Addendum (GR000096-99) Hearsay

Exhibit 9: MCSO Press Release (July 17, 2013) Hearsay

Exhibit 10: MCSO Press Release (Jan. 22, 2014) (GR000100-101) Hearsay

63

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Exhibit 14: Fernando Gonzalez, Free-Talk Transcript (GR000165-198) Hearsay, Foundation, Not authenticated.

Exhibit 15: Emigdio Munoz Gonzalez, Free-Talk Supp. Report (GR000199-204) Hearsay, Foundation, Not authenticated.

Exhibit 16: Victor Vargas, Free-Talk (GR000205-242) Hearsay, Foundation, Not authenticated.

Exhibit 17: Manuel Arredondo, Free-Talk (GR000243-302) Hearsay, Foundation, Not authenticated.

Exhibit 18: Audio and Transcript of July 23, 2017 Interview of Jose Armando Nava Lara Hearsay, Foundation, Not authenticated.

Exhibit 19: MCSO Supplemental Report Charging Summary (July 17, 2013) (002723-2732) Hearsay.

Exhibit 20: MCSO Supplemental Report Charging Summary (Jan. 22, 2014) (002406-2416) Hearsay.

Exhibit 21: MCSO Shift Summary (Jan. 22, 2014) (000742-744) Hearsay.

Exhibit 22: Medical Records, Michael Lipton (GR008607-8612) Relevance

Exhibit 23: Medical Records Heidi Brouelette (GR008794-8811) Relevance

Exhibit 24: Whelan-Gonzales email to Moran, Lopez, Henderson, and Locksa re Notes for This Week (Jan. 2, 2014) (002534) Foundation, Hearsay

Exhibit 25: *Melendres* Evid. Hrng. Trans., Day 2 (390:2 to 390:6; 493:24 to 494:2) (Apr. 22, 2015) Hearsay, Foundation, Subject of Motion in Limine, prejudice greatly outweighs probable value, subject to Motion in Limine ruling.

Exhibit 26: *Melendres* Evid. Hrng. Trans., Day 3 (626:25 to 627:2) (Apr. 23, 2015) Hearsay, Foundation, Subject of Motion in Limine, prejudice greatly outweighs probable value, subject to Motion in Limine ruling.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Exhibit 27: *Melendres* Evid. Hrng. Trans. Day 1 (185:1 to 185:11) (Apr. 21, 2015) Hearsay, Foundation, Subject of Motion in Limine, prejudice greatly outweighs probable value, subject to Motion in Limine ruling.

Exhibit 28: 01/22/14 ABC 15 article "Uncle Sam's Restaurant Owner Bret Frimmel Arrested for Identity Theft, according to MCSO"  Hearsay, Foundation, Relevance.

Exhibit 29: 01/22/14 Arizona Newszap article titled "Sheriff's Office Arrests Uncle Sam's Owner" Hearsay, Foundation, Relevance.

Exhibit 30: 01/23/14 Arizona Daily Independent article "Uncle Sam's Owner Arrested for Identity Theft" Hearsay, Foundation, Relevance.

Exhibit 31: 01/23/14 Arizona Central article titled "Records: Info from Uncle Sam's Restaurant Workers Led to Owner's Peoria Arrest" Hearsay, Foundation, Relevance.

Exhibit 32: AZfamily.com article "Uncle Sam's Owner Appears in Court, Released on Own Recognizance" Hearsay, Foundation, Relevance.

Exhibit 33: 01/23/14 AZfamily.com article "Uncle Sam's restaurant owner arrested for ID Theft" Hearsay, Foundation, Relevance.

Exhibit 34: 01/23/14 My Fox Phoenix article "Uncle Sam's Owner Arrested for Alleged ID Trafficking" Hearsay, Foundation, Relevance.

Exhibit 35: 01/23/14 New Times article "Joe Arpaio's Workplace Raid of Uncle Sam's Results in First Arrest of Business Owner" Hearsay, Foundation, Relevance.

Exhibit 36: 01/23/14 KPHO, Channel 5 article "AZ Restaurant Owner Accused of Forging IDs for Employees" Hearsay, Foundation, Relevance.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Exhibit 37: 01/23/14 Video from Channel 3 of Coverage of Frimmel Arrest https://www.youtube.com/watch?v=BbDEKExbvxs; Hearsay, Foundation, Relevance.

Exhibit 39: Gregg Curry Expert Report Hearsay

Exhibit 40: Gregg Curry Expert Rebuttal Report Hearsay

Exhibit 41: Gregg Curry present-value supplement Hearsay, late disclosure, subject to Motion to Strike.

Exhibit 42: Reporter's transcript of proceedings, March 6, 2015 Hon. Sam Myers. Hearsay, Foundation, Prejudicial value greatly outweighs probable value, subject to Motion in Limine ruling.

Exhibit 43: Tape recording of call from Sarah Lopez Hearsay, Foundation.

Exhibit 44: Video of "The Joe Show" Relevance, Hearsay.

Exhibit 45: Notice of Claim of Bret Frimmel for Defamation Hearsay, Relevance, Prejudicial Value greatly outweighs probable value.

Exhibit 46: Notice of Claim of Brett Frimmel for Wrongful Arrest Hearsay, Relevance, Prejudicial Value greatly outweighs probable value.

Exhibit 47: Notice of Claim of Lisa Norton for Defamation Hearsay, Relevance, Prejudicial Value greatly outweighs probable value.

Exhibit 48: Notice of Claim of Lisa Norton for Wrongful Arrest Hearsay, Relevance, Prejudicial Value greatly outweighs probable value.

Exhibit 49: Video of Interview of Bret Frimmel by Deputy Henderson taken on January 22, 2014 Hearsay, Relevance.

Exhibit 50: 01/22/14 6PM Video from Channel 3 of Coverage of Frimmel Arrest: 54341 KTVK 2014-01-22 1800 Uncle Sams 02m26s Hearsay, Relevance

Exhibit 51: September 5, 2019 Facebook Post on Moon Valley, AZ

66

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

1   Facebook Page (GR008812) Subject to Motion to Strike, Late Disclosure of

2   9/8/19, Hearsay, Foundation.

3   Exhibit 52: April 15, 2015 Minute Entry from Judge Myers in CR2014-103633, State

4   v. Frimmel

5   Objection. Non-disclosure. Plaintiffs submitted their first disclosure on February 5, 2016.

6   From that date until today, Plaintiffs never disclosed. Subject to Motion in Limine Ruling.

7   Hearsay.

8   Exhibit 53: Maricopa County Sheriff's Office Supplemental Report Regarding Free

9   Talk Interview of Valentin Villanueva Fernandez, September 30, 2013

10  Objection. Non-disclosure. Plaintiffs submitted their first disclosure on February 5, 2016.

11  From that date until today, Plaintiffs never disclosed. Hearsay. Foundation not

12  authenticated.

13  Exhibit 54: Transcript of Interview of Valentin Villanueva Fernandez, September 30,

14  2013

15  Objection. Non-disclosure. Plaintiffs submitted their first disclosure on February 5, 2016.

16  From that date until today, Plaintiffs never disclosed. Hearsay. Foundation not

17  authenticated.

18  Defendants' Exhibits:

19  Exhibit 100 - Uncle Sam's ADP Legal Contract (Bates Stamped 3435 000001-
20  000014).

21  Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in
    this case – whether Defendants Arpaio and Henderson misrepresented what
22  information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton
23  were arrested, see FRE 401 and 402. There is no claim that Defendants
    misrepresented what was in this exhibit. Plaintiffs further object on the basis of
24  hearsay and lack of foundation. See also Plaintiffs' Motion in Limine No. 3.

25  Exhibit 101 - DR13-008988 Supplement Follow-up Interview of Alex Rodriguez
26  dated 7-18-13 (Bates Stamped 3435 000015-000016).

27

28

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 102 - DR13-189120 Supplement Interview of Alex Rodriguez dated 9-13-13 (Bates Stamped 3435 000017-000019).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 103 - DR13-189120 Supplement Interview of Christina Hopkins dated 11-19-13 (Bates Stamped 3435 000020-000026).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* F

RE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation.

*See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 110. DR13-189120 Supplement Interview of Roberto Moran Vargas dated 11-22-13 (Bates Stamped 3435 000056-000057).

Exhibit 111 - DR13-189120 Supplement regarding Roberto Moran Vargas dated 12-17-13 (Bates Stamped 3435 000058-000059).

Objection. Best evidence is the transcript of this interview. *Seiler v. Lucas Films,* 808 F.2d 1316 (9th Cir. 1986). Further, the report is inadmissible hearsay. *See also* Plaintiffs' Motion in Limine No. 2.

Exhibit 112 - DR13-008988 Supplement Interview of Sabrina Stark dated 10-30-12 (Bates Stamped 3435 000060-000061).

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 113 - Attorney General Office's Correspondence to Maricopa County Sheriff's Office regarding Declining Prosecution of Deputy Henderson (Bates Stamped 3435 000922).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation.

Exhibit 114 - CR2014-103633 State v. Frimmel, et al., Josh Henderson Deposition Transcript (Bates Stamped 3435 000923-001086).

Objection. Plaintiffs object on the basis that Defendant Henderson's prior testimony is hearsay unless offered by the opposing party.

Exhibit 115 - DR13-189120 Continued Interview of Jose Manuel Arredondo-Paramo dated 1-15-14 (Bates Stamped 3435 001147-001153).

Objection. Plaintiffs object as the best evidence is the transcript of this interview. *Seiler v. Lucas Films,* 808 F.2d 1316 (9th Cir. 1986). Further, the report is inadmissible hearsay. *See also* Plaintiffs' Motion in Limine No. 2.

Exhibit 122 - Audio from Uncle Sam's workplace investigation regarding C. Anthony (Bates Stamped MELC628269).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 123 - Audio from Uncle Sam's workplace investigation regarding Marcial Gonzales (Bates Stamped MELC628270).

69

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 124 - Audio from Uncle Sam's workplace investigation regarding E. Savala (Bates Stamped MELC628271).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 125 - Audio from Uncle Sam's workplace investigation regarding Emigdio Munoz (Bates Stamped MELC628272).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 126 - Audio from Uncle Sam's workplace investigation regarding J. Armando Nava Lazas (Bates Stamped MELC628273; MELC628273).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 127 - Audio from Uncle Sam's workplace investigation regarding Rene' Ramirez (Bates Stamped MELC628274)

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

<u>Exhibit 128</u> - Audio from Uncle Sam's workplace investigation regarding Valentin Villanueva (Bates Stamped MELC628275; MELC628291-MELC628292).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

<u>Exhibit 129</u> - Audio from Uncle Sam's workplace investigation regarding Victor Moran Vargas (Bates Stamped MELC628276; MELC628293).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

<u>Exhibit 130</u> - Audio from Uncle Sam's workplace investigation regarding J. Aguilar (Bates Stamped MELC628277).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

<u>Exhibit 131</u> - Audio from Uncle Sam's workplace investigation regarding Fernando Gonzalez (Bates Stamped MELC628278).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

<u>Exhibit 132 </u>- Audio from Uncle Sam's workplace investigation regarding Christina Hopkins (Bates Stamped MELC628279-MELC628280).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton

were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 133 - Audio from Uncle Sam's workplace investigation regarding D. Porter (Bates Stamped MELC628281).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 134 - Audio from Uncle Sam's workplace investigation regarding free talk Emigdio Gonzalez (Bates Stamped MELC628282).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 135 - Audio from Uncle Sam's workplace investigation regarding free talk Fernando Abundez Gonzalez (Bates Stamped MELC628283).

Exhibit 136 - Audio from Uncle Sam's workplace investigation regarding Jade Gardner (Bates Stamped MELC628284).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

137. Audio from Uncle Sam's workplace investigation regarding free talk Jose Manuel Arredondo-Perramo (Bates Stamped MELC628286-MELC628286).

Exhibit 138 - Audio from Uncle Sam's workplace investigation regarding Marcie Zestrijan (Bates Stamped MELC628287).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 139 - Audio from Uncle Sam's workplace investigation regarding Rene Ramirez (Bates Stamped MELC628288).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

140. Audio from Uncle Sam's workplace investigation regarding R. Moran Vargas (Bates Stamped MELC628289).

Exhibit 141 - Audio from Uncle Sam's workplace investigation regarding Sabrina Stark (Bates Stamped MELC628290).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 142 - Criminal Employment Unit Tips redacted (Bates Stamped MELC630938-MELC657815).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine Nos. 2 and 3.

Exhibit 146 - News Videos regarding Uncle Sam's Investigation – Civil Suit- Channel 13 (Bates Stamped 3435 003285).

Objection. Hearsay not subject to an exception.

73

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Exhibit 147 - News Videos regarding Uncle Sam's Investigation (Bates Stamped 3435 003286).

Objection. Plaintiffs object on the basis of hearsay not subject to an exception.

Exhibit 148 - News Videos regarding Uncle Sam's Investigation – Carrie Lake (Bates Stamped 3435 003287).

Objection. Plaintiffs object on the basis of hearsay not subject to an exception.

Exhibit 149 - Pleadings and other documents in the United States Department of Justice, Executive Office for Immigration Review Before the Office of the Chief Administrative Hearing Officer, case # 15A00073, United States of America v. Frimmel Management, LLC. (Bates Stamped 3435 003292-003305).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Also prejudicial under FRE 403. Plaintiffs further object on the basis of hearsay and lack of foundation. *See also* Plaintiffs' Motion in Limine No 3. Plaintiffs further object to the listing of the entire file related to this matter as one exhibit, which may include documents which are objectionable on a number of different bases.

Exhibit 150 - Redacted Version of Workplace investigation re Uncle Sam's Investigation (Bate Stamped MELC606455-606500; MELC0606507; MELC606510-607776; MELC607796-607814; MELC607834-607917; MELC607937-607960; MELC607971-607984; MELC607991-607997; MELC6080116-608018; MELC608025-608027; MELC608034-609536).

Objection. Plaintiffs object hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2.

Exhibit 150-1 JWI Reports and Accurint Reports (Bates Stamped MELC606914-607394)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 150-1 is a compilation of some 481 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

Exhibit 150-2 Accurint and JWI reports (Bates Stamped MELC607395-60776,

74

MELC607796-607841)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 150-2 is a compilation of some 428 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

Exhibit 150-3 Incident Reports, supplemental reports, Arizona Corporation Commission Documents, Surveillance Reports, Photos, Search Warrants, DES documents, Social Security Requests, Victim Contact Reports, Victim Request Waiver Forms, and Search Logs (Bates Stamped MELC607842-607917, MELC607937-607960, MELC607971-607984, MELC607991—607997, MELC608016-608018, MELC608025-608027; MELC608034-608251).
Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 150-3 is a compilation of some 345 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

Exhibit 150-4 Supplements, Pre-booking Information Sheets, ADP documents, Search Logs, W-4s, Employment Applications, Time Schedules, JWI Reports, Accurint Reports (Bates Stamped MELC608252-608691)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 150-4 is a compilation of some 440 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

Exhibit 150-5 JWI Reports and Accurint Reports (Bates Stamped MELC608692-609112)

Objection. Plaintiffs object hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 150-5 is a compilation of some 421 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

Exhibit 150-6 JWI Reports, Accurint Reports, Search Warrants, Booking Records, Homeland Security Documents, Tips, and Photos (Bates Stamped MELC609113-609536)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 150-6 is a compilation of some 428 pages of various documents from various sources, and therefore

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

<u>Exhibit 151</u> - Redacted Version of Workplace investigation re Uncle Sam's Owner-Brett Frimmel Investigation (Bate Stamped MELC629330-630937).

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2.

<u>Exhibit 151-1</u>- Search Warrants, Response to Search Warrant, Supplemental Reports, Briefing Summaries, Homeland Security Documents, LEA Authorization Forms, and Interviews (Bates Stamped MELC629639-630066).

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 151-1 is a compilation of some 428 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

<u>Exhibit 151-2</u> – Interviews, Supplements, Unemployment Wage Reports, W2s, and ADP documents (Bates Stamped MELC630067-630532)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 151-2 is a compilation of some 466 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

<u>Exhibit 151-3</u> – W2, Supplemental Reports, Wage Inquiry, Food Inspection Reports, Food Handler Cards, Court of Appeals Special Action Opinion, Photos (Bates Stamped MELC63053-630937)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception. *See also* Plaintiffs' Motion in Limine No. 2. Exhibit No. 151-3 is a compilation of some 404 pages of various documents, and therefore Plaintiffs object on the basis of relevance, prejudice, lack of foundation, cumulative evidence, and overbreadth.

<u>Exhibit 152</u> - Frimmel Smoke Shop Protest Photo (Bates Stamped 3435 003314).

Objection. Plaintiffs object on the basis that this exhibit is irrelevant to the issues in this case – whether Defendants Arpaio and Henderson misrepresented what information MCSO had on January 22, 2014 when Mr. Frimmel and Mrs. Norton were arrested, *see* FRE 401 and 402. Plaintiffs further object on the basis of hearsay and lack of foundation. See also Plaintiffs' Motion in Limine No. 3.

Exhibit 153 - Redacted Search Warrant 2014 000711 (Bates Stamped 3435 003315-003325).

Exhibit 155 – December 31, 2009 DES Quarterly Wage Reports (Bates Stamped MELC607998-608015)

Exhibit 156 – March 31, 2012 DES Quarterly Wage Reports (Bates Stamped MELC607961-607970)

Exhibit 157-September 30, 2012 US Tax and Wage Reports (Bates Stamped MELC607895-607990)

Exhibit 158-December 31, 2012 US Tax and Wage Reports (Bates Stamped MELC608019-608024)

Exhibit 159-March 31, 2013 US Tax and Wage Reports (Bates Stamped MELC608028-608033)

Exhibit 160-Social Security Administration Verification (Bates Stamped MELC606501-606506)

Exhibit 161-Match no Match (Bates Stamped MELC606508-606509)

Exhibit 162-Search Warrant 2013-006575 (Bates Stamped MELC607777-607795)

Exhibit 163-Search Warrant 2013-006574 (Bates Stamped MELC607815-607833)

Exhibit 164-Search Warrant 2013-0006576 (Bates Stamped MELC607918-607936)

Exhibit 165-EconLit Expert Report (Bates Stamped 3435 003559-003597)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception.

Exhibit 166-EconLit Rebuttal Expert Report (Bates Stamped 3435 009615-009652)

Objection. Plaintiffs object on the basis of hearsay not subject to an exception.

## 8. LIST OF DEPOSITIONS

**A.** Depositions that may be used at trial. Portions to be read or submitted at trial and counter designations are identified by page and line number.

See Exhibit A hereto

See Exhibit A regarding objections to the designations.

**B.**    Acknowledgement Statement

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that any deposition not listed as provided herein will not be allowed at trial, absent showing of good cause.

## 9. MOTIONS IN LIMINE

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that Motions in Limine have been filed separately and responded to in accordance with the Order Setting Final Pretrial Conference.

## 10.    LIST OF PENDING MOTIONS

*N/A*

## 11.    JURY DEMAND

The parties stipulate that the request for a jury trial was timely and properly made.

## 12.    JURY TRIAL PLEADINGS

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that Joint Proposed Jury Instructions, Joint Proposed Voir Dire Questions and Lists, and Joint Proposed Forms of Verdict have been filed separately in accordance with the Order Setting Final Pretrial Conference and are incorporated herein by reference.

## 13.    BENCH TRIAL

Not applicable.

## 14.    ESTIMATED LENGTH OF TRIAL

Jury Selection –  9 hours

Opening Statements – 1.0 hour for Plaintiffs, 1 hours. for Defendants

Plaintiffs' Case (including rebuttal, if any – 30 hours

Defendants' Case –  20 hours

Closing arguments – 2.0 hours for Plaintiffs;  2 hours for Defendants

78

Total – 65 hours

## 15. PROPOSED TRIAL DATES

March 17 – March 20, 2020

March 24 – March 27, 2020

March 31 – April 3, 2020

## 16. PROCEDURES FOR EXPEDITING TRIAL

1. Read / provide list of stipulated facts to jury.

## 17. CERTIFICATIONS

By signing this Joint Proposed Final Pretrial Order, the undersigned counsel for each of the parties in this action do hereby certify and acknowledge the following:

**1.** All discovery has been completed.

**2.** The identity of each witness has been disclosed to opposing counsel.

**3.** Each exhibit list herein: (1) is in existence; (2) is numbered; and (3) has been disclosed and shown to opposing counsel.

**4**. The parties have complied in all respects with the mandates of the Court's Rule 16 Case Management Order and the Order Setting Final Pretrial Conference.

**5.** The parties have made all of the disclosures required by the Federal Rules of Civil Procedure (unless otherwise previously ordered to the contrary).

**6.** The parties acknowledge that once this Joint Proposed Final Pretrial Order has been signed and lodged by the parties, no amendments to the Order can be made without leave of Court.

## 18. MODIFICATION OF FINAL PRETRIAL ORDER

Each party hereby acknowledges by signing this Joint Proposed Final Pretrial Order that the Court may, in order to prevent manifest injustice or for good cause shown, at the trial of the action or prior thereto upon application of

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004

counsel for either party, made in good faith, or upon the motion of the Court, modify the Final Pretrial Order upon such conditions as the Court may deem just and proper.

**APPROVED AS TO FORM AND CONTENT:**

_/s/ Leon B. Silver_____

    Attorney for Plaintiffs

_/s/ J. Arthur Eaves_____                  _/s/ Michele Iafrate_____

    Attorney for Defendant             Attorney for Individual Defendants
    Maricopa County                     (Arpaio, Henderson,
                                  Hechavarria, and Locksa)

# CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Michele M. Iafrate (miafrate@iafratelaw.com)
Attorney for Individual Defendants

J. Arthur Eaves (artie.eaves@sandersparks.com)
Robin E. Burgess (robin.burgess@sandersparks.com)
Attorneys for Maricopa County

*By: Angelina Chavez*

Gordon Rees Scully Mansukhani, LPP
2 N. Central Avenue, Suite 2200
Phoenix, AZ 85004